**EXHIBIT 9 – PART 1 OF 4**

| UNITED STATES BANKRUPTCY COURT DISTRICT OF DELAWARE | | PROOF OF CLAIM |
|---|---|---|
| Name of Debtor<br>Kaiser Aluminum and Chemical Corp. | Case Numbers:<br>02-10430(JKF)<br>(Jointly Administered under Case No. 02-10429(JKF)) | |

KAISER ALUMINUM CORP.
B.C.D.D.
02-10429 THRU 02-10443
CLAIM NO.: 3122

| Name of Creditor (The person or other entity to whom the debtor owes money or property):<br><br>Public Utility District No. 1 of Clark County d/b/a Clark Public Utilities<br><br>602125 | ☐ Check box if you are aware anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars<br>☐ Check box if you have ever received any notices from the bankruptcy court in this case.<br>☐ Check box if the address differs from the address on the envelope sent to you by the Court. | THIS SPACE IS FOR COURT USE ONLY |
| Name and address where notices should be sent:<br>Thacher Proffitt & Wood    Attn:    Christopher F. Graham, Esq.<br>11 West 42nd Street                    Deirdre A. Dillon, Esq<br>New York, New York 10036<br>Tel: (212) 789-1200<br>Fax: (212) 789-3500 | | |
| Account or other number by which creditor identifies debtor: | Check here if this claim ☐ replaces ☐ amends a previously filed claim<br>(where applicable, date prior claim filed _____) | |

1. **Basis for Claim**
   ☐ Goods sold
   ☐ Services performed
   ☐ Money loaned
   ☐ Personal injury/wrongful death
   ☐ Taxes
   ☒ Other (Describe Briefly) (See Attachment A)

   ☐ Retiree benefits as defined in 11 U.S.C § 1114(a)
   ☐ Wages, salaries, and compensation (fill out below)
      Your SS# _____
      Unpaid compensation for services performed
      from _____ to _____
              (date)       (date)

2. Date debt was incurred:
   (See Attachment A)

3. If court judgment, date obtained: N/A

4. Total Amount of Claim at Time Case Filed:
   _____ (See Attachment A) _____
   If all or part of your claim is secured or entitled to priority, also complete Item 5 or 6 below.
   ☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges

5. **Secured Claim:**
   ☐ Check this box if your claim is secured by collateral (including a right of setoff)
   Brief Description of Collateral:
   ☐ Real Estate    ☐ Motor Vehicle
   ☐ Other
   Value of Collateral:    $_____
   Amount of arrearage and other charges at time case filed included in secured claim, if any:

6. **Unsecured Priority Claim.**
   ☐ Check this box if you have an unsecured priority claim
   Amount entitled to priority $_____
   Specify the priority of the claim:
   ☐ Wages, Salaries, or commissions (up to $4000),* earned within 90 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C § 507(a)(3).
   ☐ Contribution to an employee benefit plan 11 U.S.C § 507(a)(4)
   ☐ Up to $1,800* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C § 507(a)(6).
   ☐ Alimony, maintenance, or support owed to a spouse, former spouse, or child - 11 U.S.C § 507(a)(7)
   ☐ Taxes or penalties owed to governmental units - 11 U.S.C § 507(a)(8)
   ☐ Other Specify applicable paragraph of 11 U.S.C § 507(a)(__)
   *Amounts are subject to adjustment on _____ and every 3 years thereafter with respect to cases commenced on or after the date of adjustment

   THIS SPACE IS FOR COURT USE ONLY
   RECEIVED 2003 JAN 30 PM 1:53

7. Credits: The amounts of all payments on this claim has been credited and deducted for making this proof of claim
8. Supporting Documents: Attach copies of supporting documents, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contract, court judgments, mortgages, security agreements, and evidence of perfection of lien DO NOT SEND ORIGINAL DOCUMENTS. If documents are not available, explain. If the documents are voluminous, attach a summary See Attachment A and Exhibits thereto.
9. Date-Stamped Copy: To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

Date: January 28, 2003
Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any):
Wayne Nelson
Chief Executive Officer
Clark Public Utilities    /s/ Wayne Nelson

Penalty for presenting fraudulent claims: Fine of up to $500,000 or imprisonment for up to 5 years, or both 18 U.S.C §§ 152 and 3571

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) |
| | ) |
| | ) Case No. 02-10430 (JKF) |
| KAISER ALUMINUM AND CHEMICAL | ) |
| CORPORATION, | ) |
| | ) Chapter 11 |
| | ) |
| Debtor. | ) |

### ATTACHMENT A TO PROOF OF CLAIM OF
### PUBLIC UTILITY DISTRICT NO. 1 OF CLARK COUNTY

Public Utility District No 1 of Clark County d/b/a Clark Public Utilities ("Clark Public Utilities") files this Proof of Claim against Kaiser Aluminum and Chemical Corporation ("Kaiser" or "Debtor").[1]

1. **Claim and Grounds for Liability**

Clark Public Utilities is a customer-owned municipal corporation operating under the laws of the State of Washington and providing electricity to approximately 160,000 customers throughout Clark County, Washington.

In 1981, Clark Public Utilities entered into a power contract with the Bonneville Power Administration ("BPA") that expired on June 30, 2001. In 2000, when Clark Public Utilities sought to purchase power from BPA under its long-term subscription process beyond June 30, 2001, BPA would only offer Clark Public Utilities a net requirements contract beginning on October 1, 2001 because BPA had decided to change its standard contract expiration date from

---

1   Clark Public Utilities is also filing another separate proof of claim to preserve its rights against Kaiser resulting from Kaiser's sale of power to Clark Public Utilities in violation of the Federal Power Act, as explained more fully in the other proof of claim

June 30 to September 30 to coincide with BPA's fiscal year. This change in the effective commencement date of the new BPA contract created a two-month gap, *i.e.*, August and September 2001, in Clark Public Utilities' supply portfolio.

Because of the well-publicized and documented extreme volatility in the market in early 2001, as well as the prospect that the rates for electrical power could go even higher in August and September 2001, Clark Public Utilities, like any prudent public utility, was compelled to fill this gap as soon as possible. Consequently, on February 2, 2001, Clark Public Utilities entered into a remarketing letter agreement (the "February 2nd Remarketing Agreement," copy attached as Exhibit 1) with Kaiser to purchase from Kaiser 140 Megawatts of power for the period August 1, 2001 through September 30, 2001, at the rate of $325 per Megawatt hour.

The electrical power that Kaiser committed to sell to Clark Public Utilities was to be obtained by Kaiser assigning some of its rights to jurisdictional power (*i.e.*, power subject to FERC's jurisdiction) under a contract with BPA (the "BPA/Kaiser PSA," copy attached as Exhibit 2). Under Section 18(b)(2) of the BPA/Kaiser PSA, Kaiser had the right to elect to remarket excess power it did not use by finding its own purchaser for such excess power or by requesting that BPA find a purchaser. (*See* BPA/Kaiser PSA at § 18(b)(2)). If Kaiser found its own purchaser -- as it did in finding Clark Public Utilities -- BPA had a first option to remarket the power. (*Id* at § 18(b)(4)(B)). However, if BPA did not exercise that option, BPA was required to deliver the power to Kaiser's purchaser on Kaiser's terms and conditions. BPA did not exercise its option of remarketing Kaiser's excess power, but instead delivered Kaiser's power to Clark Public Utilities, pursuant to Kaiser's direction and under terms and condition set by Kaiser.

2

Following the February 2nd Remarketing Agreement, BPA entered into two confirmation agreements, one with Clark Public Utilities (the "Clark Confirmation Agreement," copy attached as Exhibit 3) and another with Kaiser (the "Kaiser Confirmation Agreement," copy attached as Exhibit 4) confirming the terms agreed to by Kaiser and Clark Public Utilities in the February 2nd Remarketing Agreement. The Clark Confirmation Agreement stipulated that Clark Public Utilities would pay $64,080,603 to BPA on March 28, 2001 for the remarketed Kaiser power (*See* Exh. 3). Thereafter, in accordance with the Kaiser Confirmation Agreement, BPA would transfer $59,842,404 to Kaiser, with the balance of $4,238,199 to be retained by BPA to cover the costs of the remarketed Kaiser power (*See* Exh. 4) Further, Kaiser, not the BPA, was responsible for the costs of transmitting the remarketed Kaiser power to Clark Public Utilities (*See* Exh. 3).

In consequence of the extraordinarily high price Clark Public Utilities paid for the remarketed Kaiser power, Clark Public Utilities was forced to raise rates to its customers by twenty percent

On or about October 26, 2000, Puget Sound Energy Inc., another utility company affected by electrical power market volatility, filed a complaint with the Federal Energy Regulatory Commission ("FERC") pursuant to Section 206 of the Federal Power Act ("FPA") for an order capping the prices for power and capacity sales in the Pacific Northwest during the period of December 1, 2000 through June 20, 2001. This action is captioned *Puget Sound Energy, Inc v All Jurisdictional Sellers of Energy and/or Capacity at Wholesale Into Electric Energy and/or Capacity Markets in the Pacific Northwest, Including Parties to the Western Pool Agreement,* Docket No EL01-10-000, *et al* In response to this Complaint, FERC instituted a

3

generic FERC proceeding (the "Puget Sound Proceeding") to determine whether sellers of electrical power in the Pacific Northwest charged buyers unjust and unreasonable rates for such power and to determine the just and reasonable rate (a so called "ceiling price") for all spot market sales in the Pacific Northwest from December 2000 through June 2001

Clark Public Utilities intervened in the Puget Sound Proceeding (which it was authorized to do by an Order of the Administrative Law Judge presiding over the Puget Sound Proceeding issued on August 21, 2001 (*see* Exh. 5)) and alleged that Kaiser charged Clark Public Utilities unjust and unreasonable rates for the power it purchased from Kaiser pursuant to the February 2nd Remarketing Agreement.[2] Clark Public Utilities sought an order from FERC requiring Kaiser to pay to Clark Public Utilities a refund in an amount equal to the excess price charged by Kaiser over just and reasonable electricity rates  Since Kaiser filed for relief under the

---

2   Kaiser has vigorously argued in related proceedings that it was not a "seller" of power within the meaning of the FPA because it merely remarketed power and obtained a "credit" for doing so. As of the date of this proof of claim, FERC has not ruled on the issue of whether Kaiser was a seller of power in the Puget Sound Proceeding  However, pursuant to repeated FERC rulings, the remarketing of power is within the jurisdiction of FERC  See *infra*  Thus, FERC in the Puget Sound Proceeding has authority to order a refund in favor of Clark and against Kaiser  See *Removing Obstacles to Increased Electric Generation and Natural Gas Supply in the Western United States*, 94 FERC ¶ 61,272 (March 14, 2001), *order on rehearing,* 95 FERC ¶ 61,225 (May 16, 2001), *order on rehearing,* 96 FERC ¶ 61,155, at 678-79 (July 27, 2001) (collectively, all three orders are referred to as the "Removing Obstacle Orders").  See also *Automated Power Exchange, Inc* , 82 FERC ¶ 61,287 ("APX"), *reh denied* 84 FERC ¶ 61,020 (1998), *aff'd, Automated Power Exchange, Inc v. FERC,* 204 F.3d 1144 (D.C Cir. 2000), where the Commission relied on who designated the buyer and determined the terms and conditions of a purchase to identify the jurisdictional seller of the power at issue.
In the transaction at issue, Kaiser designated the purchaser, Clark Public Utilities, and determined the terms and conditions under which the power sale would be made  Further, Kaiser's assignment and release of the power due to it under the BPA/Kaiser PSA to Clark Public Utilities constituted a sale subject to FERC's jurisdiction. See *Notice of Interim Procedures to Support Industry Reliability Efforts and Request for Comments,* 91 FERC ¶ 61,189 (2000) and the Removing Obstacles Orders, specifically 94 FERC at 61,972, all of which make clear that secondary market releases [involving a sale by a customer of the right to receive power] are subject to FERC's jurisdiction
In addition, Kaiser has admitted it "sold" power in the Pacific Northwest  See Kaiser's Statement of Consolidated Income issued on April 12, 2002 which reports $229.2 million in "net gains from power *sales*" during 2001 (emphasis added); *see also* Kaiser's 2000 annual report on page 4 which states in part "Recognizing the opportunity provided by skyrocketing energy prices in western North America, the company aggressively curtailed smelting capacity in the Pacific Northwest, executed power *sales* amounting to $208 million, and received those proceeds in 2000 and early 2001. During the first quarter of 2001, we *sold* the majority of our remaining Northwest power for an additional $260 million " (emphasis added)

Bankruptcy Code, Clark Public Utilities has not proceeded in the Puget Sound Proceeding against Kaiser

In 2001, FERC ordered "a preliminary evidentiary proceeding" to explore settlement and to establish "the extent of potential refunds."[3] On December 19, 2002, the Commissioners of FERC issued an Order on Motions to Reopen Evidentiary Record (the "December 19th Order") in the Puget Sound Proceeding, which reopened that proceeding for the submission of additional evidence. FERC issued the December 19th Order because new information regarding alleged intentional manipulation of the western power markets had come to light since the record in the Puget Sound Proceeding was closed by the Administrative Law Judge. Clark Public Utilities requested relief from the automatic stay to participate in the reopened Puget Sound Proceeding, but such request was denied by the Bankruptcy Court

A possible outcome of the Puget Sound Proceeding is that FERC will establish a ceiling price for all electricity spot market sales in the western United States, other than California, for the period December 2000 through June 2001. Upon setting such a price cap, FERC would then order all sellers, such as Kaiser, to refund any amounts paid in excess of such ceiling price. Because the February 2nd Remarketing Agreement for the sale of power by Kaiser to Clark Public Utilities was entered into on February 2, 2001 (i.e., within the December 2000 through June 2001 period covered by the Puget Sound Proceeding), Clark Public Utilities may be entitled to relief as a net purchaser of power should FERC act in the Puget Sound Proceeding to order refunds of amounts paid in excess of just and reasonable rates

---

3 San Diego Gas & Electric, 96 FERC ¶61,120 at 61,520 (July 25, 2002)

5

Clark Public Utilities files this Proof of Claim to preserve its right (i) to claim a refund, if ordered by FERC in the Puget Sound Proceeding, from Kaiser or (ii) for a judicial determination of a just and reasonable rate for the electrical power sold by Kaiser to Clark Public Utilities if FERC does not do so in the Puget Sound Proceeding. Because FERC has not set the just and reasonable rates for the power Clark Public Utilities purchased from Kaiser, Clark Public Utilities cannot specify an exact amount in this Proof of Claim ("Claim") at this point in time. However, Clark Public Utilities will file an amended Proof of Claim (and specifically reserves the right to do so) if FERC issues a decision in the newly reopened Puget Sound Proceeding and orders Kaiser to refund to Clark Public Utilities the amount paid by Clark Public Utilities in excess of the just and reasonable rate established by FERC. In the event that FERC does not set a just and reasonable rate for the electrical power Kaiser sold to Clark Public Utilities in the Puget Sound Proceeding, Clark Public Utilities will seek a judicial determination as to the just and reasonable rate for such power as part of the allowance of this claim.

The basis for the Claim was determined after diligent efforts of Clark Public Utilities and its attorneys and after their investigation and analysis of the Claim. This Proof of Claim is filed with full reservation of rights as set forth herein, including the right to assert additional or amended proofs of claim based on information and/or documents subsequently discovered or subsequently obtained.

2.  **No Judgment**

No judgment has been rendered on the Claim set forth herein as of the date of this Proof of Claim.

3. <u>Credits</u>

The amount of all known payments or credits with respect to the Claim set forth in this Proof of Claim have been credited and deducted from the amounts owed as set forth herein

4. <u>Setoff</u>

The Claim set forth in this Proof of Claim (or any other claims Clark Public Utilities may have against the Debtor) is not subject to any known setoffs or counterclaims.

5. <u>Recoupment</u>

Clark Public Utilities reserves all recoupment rights with respect to the Claim set forth herein or any other claims

6. **<u>Non-Waiver and Reservation of Rights</u>**

This Proof of Claim is filed pursuant to the order (the "Bar Date Order") entered by the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") requiring certain proofs of claim against the Debtor to be filed by January 31, 2003 (the "Bar Date") Clark Public Utilities is filing this claim to protect its rights, claims and interests.

Clark Public Utilities specifically reserves the right to amend, modify and supplement this Proof of Claim in any manner whatsoever, including, without limitation, the right to assert administrative claims and priority claims under Bankruptcy Code Sections 503 or 507 (or alternatively, Clark Public Utilities hereby asserts such priority to the fullest extent permitted by law), to file additional proofs of claim for additional claims, and to assert, without limitation, any claim to which Clark Public Utilities might be entitled, at law or in equity, or to show any further or additional payments, credits or setoffs which may occur or be discovered after the date hereof with respect to the Claim set forth herein or any other claims  Clark Public Utilities further specifically reserves the right to amend and supplement this Proof of Claim to account for

additional discovered facts after full disclosure of all relevant facts in this bankruptcy or in the Puget Sound Proceeding including any decisions or rulings rendered by FERC in such proceeding Clark Public Utilities reserves all rights accruing to it, and the filing of this Proof of Claim is not intended to be and shall not be construed as:

    i)    an election of a remedy;

    ii)    a waiver of any past, present or future defaults or events of default;

    iii)    a waiver or limitation of any rights, claims or defenses of Clark Public Utilities, including, but not limited to, the right to challenge the Bankruptcy Court's jurisdiction to hear any disputes arising out of the Claim or to make any motions to have such disputes resolved in a forum other than the Bankruptcy Court[4];

    iv)    a waiver of any of Clark Public Utilities' claims against any other parties liable to Clark Public Utilities; or

    v)    a submission to the jurisdiction of the Bankruptcy Court.

7. **Notices**

All notices concerning this Proof of Claim should be sent to:

    Lee C Goldstein, Esq.
    THE LAW OFFICES OF LEE C GOLDSTEIN, ESQ.
    615 West 18th Street
    Wilmington, DE 19802
    (302) 654-2632

with copies to:

---

[4] As determination of this Claim requires the interpretation of another federal statute, the FPA, in addition to the Bankruptcy Code, the amount of the Claim most likely will be determined by the United States District Court See 28 U.S.C § 157(d)

8

Christopher F. Graham, Esq.
Deirdre A. Dillon, Esq.
THACHER PROFFITT & WOOD
11 West 42nd Street
New York, NY 10036
(212) 789-1200

George H. Williams, Esq
Robert C. Platt, Esq.
CAMERON MCKENNA LLP
2175 K Street, NW, Fifth Fl
Washington, D.C. 20037
(202) 466-0060

and

Mr. Wayne Nelson
Chief Executive Officer
Clark Public Utilities
1200 Fort Vancouver Way
Vancouver, WA 98663