**EXHIBIT 9 – PART 4 OF 4**

in the Pacific Northwest during other months.  The Company may request that BPA remarket the remainder of its Excess Firm Energy at the best available price for additional energy, or the Company may arrange to store the Excess Firm Energy for sale at another time.  BPA shall not discriminate against the Company in the storage or disposal of such remaining Excess Firm Energy.

(F)  There are no additional transmission charges for Excess Firm Energy except when:

(i)  BPA incurs incremental transfer costs, including losses,

(ii)  the Qualified Purchaser receiving delivery would have paid a charge for low-voltage delivery higher than the charge, if any, paid by the Company.

The Company shall pay such incremental costs.  Any deliveries of Excess Firm Energy over BPA's interties shall be charged BPA's standard intertie tariffs.  Losses will be valued at the price of the remarketed power.

19.  **LOAD REGULATION, UNBUNDLED PRODUCTS, AND OTHER TRANSMISSION PRODUCTS**

(a)  **Purchase of Load Regulation**
If the Company is within BPA's Control Area, or if BPA provides load regulation services to the Company through a third party, the Company shall purchase load regulation from BPA.  The charge for load regulation shall be as specified in Exhibit C.

Contract No. 95MS-94861

@021



**Department of Energy**

Bonneville Power Administration
P.O Box 3621
Portland, Oregon 97208-3621

*POWER BUSINESS LINE*

March 23, 1998

In reply refer to: PSB/Spokane

Amendatory Agreement No. 1 to
Contract No. 95MS-94861

Mr. Peter Forsyth
Vice President, NW External Affairs
Kaiser Aluminum & Chemical Corporation
825 NE. Multnomah, Suite 960
Portland, OR 97232

Dear Mr Forsyth:

This letter agreement (Amendatory Agreement) constitutes an amendment to Contract No. 95MS-94861 (Power Sales Agreement) between the Bonneville Power Administration (BPA) and Kaiser Aluminum & Chemical Corporation (Company). BPA and the Company are hereinafter sometimes referred to individually as "Party" and collectively as "Parties." BPA and the Company have executed an interim transmission services agreement (hereinafter referred to as "Interim PTP Service Agreement") under which BPA has provided Point-to-Point Transmission Service over the Federal Columbia River Transmission System (FCRTS) pursuant to the terms and conditions of the Point-to-Point Transmission Services tariff and the 1996 Point-to-Point Firm Transmission Rate Schedule (PTP-96). The Parties are negotiating the terms and conditions of a final transmission service agreement (Final PTP Service Agreement) which will supersede the Interim PTP Service Agreement. The Parties have agreed to amend the Power Sales Agreement as follows:

1.     **EFFECTIVE DATE.** This Amendatory Agreement, when executed, shall become effective as of the date that the Interim PTP Service Agreement becomes effective.

2.     **DEFINITIONS.** All capitalized terms used herein shall be as defined in the Power Sales Agreement or, if not defined in the Power Sales Agreement, as defined in the General Rate Schedule Provisions, unless otherwise specified in this Amendatory Agreement.

"PTP Service Agreement" shall mean the Interim or Final PTP Service Agreement, as applicable.

3.     **AMENDMENT OF POWER SALES AGREEMENT.** The Power Sales Agreement is amended as follows:

(a)     Section 8(b)(2) is deleted and replaced by the following:

☑022

4

section 14, minus the Measured Energy for Firm Power delivered under this Agreement."

(k)     A new section 18(b)(1)(C) is added as follows:

"(C)    the assignment to BPA of that portion of its rights under the PTP Service Agreement, associated with the energy to be remarketed and necessary to allow BPA to use such assigned rights to remarket Excess Firm Energy for the Company, subject to the assignment provisions of the Point-to-Point Transmission Services tariff and the terms of section 18(b)(4)(F)."

(l)     Section 19(d) is deleted and replaced by the following:

"(d)    Unbundled Products and Other Transmission Services.  BPA shall offer to the Company the ancillary services, the network integration transmission product, the point-to-point transmission product, and the intertie transmission products that BPA offers to its utility customers.  BPA may offer to the Company other unbundled services. If the Company elects to purchase such products, the Parties agree to amend the appropriate provisions of this Agreement and/or the PTP Service Agreement."

(m)     Section 19(f) is deleted in its entirety.

(n)     Section 20(a) is deleted and replaced by the following:

"(a)    Delivery to Company's Firm Load.  BPA shall make available Firm Power at the points of interconnection specified in Exhibit C-1 of the PTP Service Agreement. Delivery of such Firm Power over the Network to the Company's Plant Load shall be as provided for in the PTP Service Agreement."

(o)     Section 20(b) is deleted and replaced by the following:

"(b)    Other Provisions Relating to Delivery.  Other provisions applicable to delivery (1) at the points of interconnection specified in Exhibit C-1 of the PTP Service Agreement shall be as specified in Exhibit A of this Agreement, and (2) over the Network to the Company's Plant Load shall be as specified in the PTP Service Agreement."

(p)     Section 26 is deleted and replaced by the following:

"26.    DAMAGES FOR FAILURE BY BPA TO DELIVER.  In the event BPA fails to deliver the hourly amounts of Firm Energy scheduled by the Company under this Agreement to the plant's Point of Delivery, and such delivery is not restricted by BPA pursuant to its Reserve rights under this Agreement, or pursuant to the curtailment rights under the PTP Service Agreement, or such delivery is not excused by section 4(f) of Exhibit A, BPA shall pay the Company (on the date payment by the Company for the Firm Energy would otherwise have been due under this Agreement):

Contract No. 95MS-94861

[POOR QUALITY ORIGINAL(S)]



**Department of Energy**
Bonneville Power
Administration
P.O. Box 3621
Portland, OR 97208-3621

**POWER BUSINESS LINE**
Trader and Scheduling Phones

| | | | |
|---|---|---|---|
| Date: | February 06, 2001 | Brenda Anderson | (503) 230-5610 |
| To: | Clark Public Utilities | Dan Le | (503) 230-3144 |
| | 1200 Ft Vancouver | Young Linn | (503) 230-3183 |
| | Vancouver, WA 98668 | Bill Lamb | (503) 230-3135 |
| | | Mark Miller | (503) 230-4003 |
| Attn: | James Sanders | David Mills | (503) 230-7588 |
| Phone: | 360-992-3452 | BPA Trading Floor Fax | (503) 230-7463 |
| Fax: | 360-992-3140 | BPA Preschedule Fax | (503) 230-3039 |
| | | BPA SW Preschedule | (503) 230-3615 |
| Presch: | 503-251-5196 | BPA NW Preschedule | (503) 230-3613 |
| Real Time: | 503-251-5224 | BPA S. Idaho Presch. | (503) 230-4311 |
| PS/RT | 503-251-5201 | BPA Real Time | (503) 230-3341 |
| FAX: | | | or 230-4194 |

## CONFIRMATION AGREEMENT

The following memorializes the terms of a transaction agreed to by Bonneville Power Administration (BPA) and Clark Public Utilities (CPU). Transactions hereunder are in accordance with reference contract or enabling agreement DE-MS79-81BP90489.

Transaction Date: 2/6/01     Traders:  Mark Miller (BPA) and James Sanders (CPU)

BPA Contract:     01PB-24068

| Seller of Energy: | BPA |
|---|---|
| Buyer of Energy: | Clark Public Utilities |
| Product: | Surplus firm power |
| Point of Delivery: | Alcoa Substation |
| Alternate Point of Delivery: | Where the Federal generating system interconnects with BPA's transmission network. Customer will provide transmission from the Federal generating system. Energy taken to an alternate POD is take-or-pay and liquidated damages do not apply. Customer is responsible for payment of energy if transmission is curtailed to APOD. |

| Start of Term | End of Term | Demand Limit | Hours | Amount (MWH/hr) | Total MWh | Price | Holiday Excluded | Revenue / Cost |
|---|---|---|---|---|---|---|---|---|
| 8/1/01 | 8/31/01 | 140 | ALL | 140 | 104,160 | $325.00 | | |
| 9/1/01 | 9/30/01 | 140 | ALL | 140 | 100,800 | $325.00 | | |

Energy Transaction Total:                    See Additional Provisions below

Page 1 of 2 CPU 01PB-24068

**Additional Provisions**
Transmission will be provided under Kaiser Aluminum & Chemical Corp. (KACS) Contract No. 96MS-96107. Payment for transmission will remain with KACS.

CPU shall pay to BPA $64,060,605.00 on March 28, 2001, which represents net payment/NPV of full payment for all energy purchased under this agreement. This confirmation agreement shall be modified on or before March 15, 2001, if a change to the payment date is required.

**Scheduling**
All energy will be shown in Pacific Prevailing Time.
~ HLHs are defined as HE 0700 – HE 2200, Monday through Saturday (excludes Sundays and NERC holidays)
~ LLHs are defined as HE 0100 – HE 0600, HE 2300 and HE 2400, Monday through Saturday and all day Sundays and NERC holidays
– All or FLH is defined as HE 0100 – HE 2400.

Energy shall be prescheduled, with source and sink identified, by 1000, or as mutually agreed, on the day that both parties observe as a workday preceding the date of delivery. Schedules may only be changed due to uncontrollable forces as defined by the reference contract or by mutual agreement of both parties.

**Billing**
Billing and payment under this agreement shall be made consistent with and as a specific item in the Wholesale Power Bill.

Unless otherwise specified in this Agreement, all administrative and operational provisions required to perform this Agreement shall be those described in the reference contract, including provisions related to delivery, scheduling (if applicable), billing, payments, metering, access to facilities, dispute resolution, uncontrollable forces, continuity of services, and contract interpretation.

This confirmation agreement contains all of the terms and conditions of this transaction and expressly limits acceptance to the terms stated herein, and any additional or different terms proposed by Clark Public Utilities are rejected unless expressly agreed to in writing by BPA.

If the above accurately reflects your understanding of our agreement, please indicate your approval by signing a copy of this agreement and returning via fax to BPA.

AGREED AND ACCEPTED

Bonneville Power Administration

David E Mills
Manager, Trading Floor
Date: 2/8/01

Clark Public Utilities

Name: Wayne _____
Title: General Manager/CEO
Date: 2-8-01

Page 2 of 2 CPU 01PB-24068



'POOR QUALITY ORIGINAL(S)

**BONNEVILLE**

Department of Energy
Bonneville Power
Administration
P.O. Box 3621
Portland, OR 97208-3621

**POWER BUSINESS LINE**
**Trader and Scheduling Phones**

| | |
|---|---|
| Date: February 06, 2001 | Brenda Anderson (503) 230-5610 |
| To: Kaiser Aluminum & Chemical Corporation | Dan Le (503) 230-3144 |
| 534 East Trent Avenue, Suite 300 | Young Linn (503) 230-3183 |
| Spokane, WA 99202 | Bill Lamb (503) 230-5135 |
| | Mark Miller (503) 230-4003 |
| Attn: Joseph Hoerner | David Mills (503) 230-7588 |
| Fax: 509-242-1098 | BPA Trading Floor Fax (503) 230-7463 |
| | BPA Preschedule Fax (503) 230-5039 |
| Presch: 509-495-4011 | BPA SW Preschedule (503) 230-3915 |
| Real Time: 509-495-8534 | BPA NW Preschedule (503) 230-3813 |
| PS/RT FAX: 509-495-8976 | BPA S. Idaho Presch. (503) 230-4311 |
| | BPA Real Time (503) 230-3341 |
| | or 230-4194 |

## CONFIRMATION AGREEMENT

The following memorializes the terms of a transaction agreed to by Bonneville Power Administration (BPA) and Kaiser Aluminum & Chemical Corporation (KACS). Transactions hereunder are in accordance with reference contract or enabling agreement 96MS-94861

**Transaction Date:** 2/6/01        **Traders:** Mark Miller (BPA) and Joseph Hoerner (KACS)
**BPA Contract:** 01PB 24067

---

**Seller of Energy:** Kaiser Aluminum & Chemical Corporation
**Buyer of Energy:** BPA
**Product:** Firm power
**Point of Delivery:** Mid-Columbia

| Start of Term | End of Term | Demand Limit | Hours | Amount (MWH/hr) | Total MWh | Price | Holiday Excluded | Revenue / Cost |
|---|---|---|---|---|---|---|---|---|
| 8/1/01 | 8/31/01 | 140 | ALL | 140 | 104,160 | $325.00 | | $33,852,000.00 |
| 9/1/01 | 9/30/01 | 110 | ALL | 140 | 100,800 | $325.00 | | $32,760,000.00 |

**Energy Transaction Total:**                                                      **$59,542,404.00**
                                                                         See Additional Provisions

**Additional Provisions**
Energy Transaction Total to be paid to KACS upon receipt of payment from Clark Public Utilities for corresponding sale of remarketed energy (Contract 01PB-24068).

BPA shall pay to KACS $59,842,404 on March 30, 2001, which represents the net payment to KACS (NPV of this purchase of 140 MW equalling $61,080,603 less NPV of IP 96 rate pro billing $1,238,199) This confirmation agreement shall be modified on or before March 15, 2001, if a change to the payment date is required

This contract books out sale to Sale to KACS under contract 96MS-94861.

                            Page 1 of 2 KACS 01PB-24067      2

FEB-09-01 14:13  From:KAISER AL HW EXT AFFAIRS

**Scheduling**
All energy will be shown in Pacific Prevailing Time.
~ HLHs are defined as HE 0700 – HE 2200, Monday through Saturday (excludes Sundays and NERC holidays).
~ LLHs are defined as HE 0100 – HE 0600, HE 2300 and HE 2400, Monday through Saturday and all day Sundays and NERC holidays.
~ All or FLH is defined as HE 0100 – HE 2400.

Energy shall be prescheduled, with source and sink identified, by 1000, or as mutually agreed, on the day that both parties observe as a workday preceding the date of delivery. Schedules may only be changed due to uncontrollable forces as defined by the reference contract or by mutual agreement of both parties.

**Billing**
Billing and payment under this agreement shall be made consistent with and as a specific item in the Wholesale Power Bill

Unless otherwise specified in this Agreement, all administrative and operational provisions required to perform this Agreement shall be those described in the reference contract, including provisions related to delivery, scheduling (if applicable), billing, payments, metering, access to facilities, dispute resolution, uncontrollable forces, continuity of service, and contract interpretation.

This confirmation agreement contains all of the terms and conditions of this transaction and expressly limits acceptance to the terms stated herein, and any additional or different terms proposed by Kaiser Aluminum & Chemical Corporation are rejected unless expressly agreed to in writing by BPA.

If the above accurately reflects your understanding of our agreement, please indicate your approval by signing a copy of this agreement and returning via fax to BPA

**AGREED AND ACCEPTED**

Bonneville Power Administration

David E. Mills
Manager, Trading Floor
Date 2/8/01

Kaiser Aluminum & Chemical Corporation

Name: S. P. Fraziff
Title: V.P. Premium Metals
Date: 2/9/01

Page 2 of 2 KACS 01PB-24067

UNITED STATES OF AMERICA
FEDERAL ENERGY REGULATORY COMMISSION

Puget Sound Energy, Inc.,
   Complainant,

            **Docket Nos. EL01-10-000**
            **EL01-10-001**

     v.

All Jurisdictional Sellers of Energy and/or Capacity
at Wholesale Into Electric Energy
and/or Capacity Markets in the Pacific
Northwest, Including Parties to the
Western Systems Power Pool Agreement,
     Respondents.

ORDER GRANTING MOTIONS TO INTERVENE OUT OF TIME
(Issued August 21, 2001)

A number of motions for leave to intervene have been filed in this proceeding.[1]
The claim for late filing is that the July 25, Commission Order[2] expanded the scope,
changed the interests of the parties, or was the first notice that they would have a
significant interest in the outcome of this proceeding  Movants assert that they have a
direct interest in the case which cannot be protected by any one else in the proceeding.  In
their motions these parties claim that there is good cause for granting the late
interventions, since the proceeding just started and will not be disrupted by the late
interventions, and the parties will not be prejudiced.  The parties filing late interventions
state that they will take the record as it now stands

---

[1] Arizona Electric Power Cooperative, Inc ; Salt River Project Agriculture
Improvement and Power District; Express Pipeline Partnership; Public Utility Districts
No 1 of Benton, Franklin and Grays Harbor Counties In Washington; Clark Public
Utilities; Northern California Power Agency; IdaCorp Energy, LP; Morgan Stanley
Capital Group, Inc ; Clatskanie People's Utility District; Tenaska Power Services Co  and
PG&E Energy Trading Power, LP.

[2] *San Diego Gas & Electric Company,* 96 FERC ▯ 61, 120 (2001)("July 25
Order")

Docket Nos  EL01-10-000          2
            EL01-10-001

Pinnacle West Capital Corporation, Arizona Public Service Company, Puget Sound Energy, Inc  Coral Power, LC, Kaiser Aluminum & Chemical Corporation, Morgan Stanley Capital Group, Inc , Enron Power Marketing, Inc  and Enron Energy Services, Inc  ("Joint Parties") oppose the motion to intervene filed by Clark Public Utilities ("Clark")  The Joint Parties assert that Clark has no legitimate basis to intervene because Clark alluded to one power purchase transaction which will be delivered outside the relevant time period determined by the Commission

Clark filed a motion for permission to submit response to objection to motion to intervene  According to Clark, its transaction occurred in the forward market, and payment was made before delivery, its contract was for a single transaction executed in February 2001, with payment made in March 2001, both within the Commission's refund period  Although power was not delivered until August and September, Clark maintains that the transaction occurred when payment was made.

## DISCUSSION

Replies to answers are normally not allowed   *See generally*, Rule 213 of the Commission's Rules, 18 C F R  ⦿ 385 213 (a)(2).  However, I find that good cause has been established to allow Clark to respond to the Joint Parties objection.  Accordingly, Clark's motion for permission to submit response to objection to motion to intervene is GRANTED.

I find that the argument raised by Joint Parties are merciless.  Clark's arguments are persuasive, this proceeding is about price and to exclude transactions based on the delivery date misses the point of the proceeding  Clark paid its price during the relevant refund period   In  the July 25 Order an evidentiary proceeding was established to facilitate development of a factual record concerning the reasonableness of charges for spot market bilateral sales in the Pacific Northwest for the period beginning December 25, 2001 through June 20, 2001.  *San Diego Gas & Electric*, 96 FERC ⦿ 61, 120 slip op  at 43 (2001)   Therefore, I find that Clark's transaction gives it standing to intervene in this proceeding

Additionally, based on the guidelines established in the July 25 Commission Order, and pursuant to Rule 214 (d), 18 C.F.R. ⦿ 385 214(d), I find that there is good cause for granting the late interventions filed in this proceeding  Movants represent interests which may be directly affected by the outcome of this proceeding  Moreover, movants interests cannot be adequately represented by other parties in the proceeding. Grant of the motions will not disrupt or delay, or cause any prejudice to, or additional

Docket Nos  EL01-10-000                    3
            EL01-10-001

burdens upon, the existing parties to the proceeding   Accordingly, **IT IS ORDERED,** that the oppositions are **DENIED** and the motions to intervene out of time, **ARE GRANTED   IT IS FURTHER ORDERED,** that intervenors must accept the record that was developed prior to the late interventions

SO ORDERED.


                              **Carmen A. Cintron**
                         **Presiding Administrative Law Judge**

# Thacher Proffitt

Thacher Proffitt & Wood
11 West 42nd Street
New York, New York 10036
212 789 1200

Fax: 212 789 3500
www tpwlaw com

Direct Dial· 212 789 1468
lcurcio@tpwlaw com

January 29, 2003

**BY FEDERAL EXPRESS**

Kaiser Aluminum Claims Processing Department
Logan & Company, Inc
546 Valley Road
Upper Montclair, New Jersey 07043

> Re:   *In re Kaiser Aluminum and Chemical Corporation*
> Case No. 02-10430(JKF)
> Proof of Claim of Clark Public Utilities (Claim #1)

To Whom It May Concern:

    With respect to the above referenced matter, enclosed for filing please find one original and one copy of Clark Public Utilities' Proof of Claim (Claim #1) against the debtor Kaiser Aluminum and Chemical Corporation   Kindly file the original Proof of Claim, and file-stamp and return the copy to the undersigned in the enclosed self-addressed, prepaid Federal Express envelope   In addition, please note that this Proof of Claim relates to one of Clark Public Utilities' two claims against Kaiser   The Proof of Claim for Clark Public Utilities' other claim (Claim #2) will be sent simultaneously under separate cover.

    If you have any questions, please do not hesitate to contact me   Thank you in advance for your assistance.

                              Very truly yours,

                              Louis A  Curcio

Enclosures