Proceeding. Further, the Unreasonable Rate Claim, which is related to the Puget Sound Proceeding, remains in prospect for recovery because the Puget Sound Proceeding is on appeal, which will proceed and be binding upon Clark even without its presence.

Liquidation of both claims thus requires substantial and material consideration of non-bankruptcy Federal law -- the FPA -- which must be performed by the District Court as set forth in 28 U.S.C. § 157(d). Clark, therefore, filed the Motion to Withdraw on October 24, 2005. (Docket No. 7572.) Briefing for the Motion to Withdraw has been completed and the file was transmitted to the District Court on December 5, 2005. (Docket No. 7845.)

D.   The Bankruptcy Court's Refusal to Grant a Stay.

On October 25, 2005 Clark filed an emergency motion in the Bankruptcy Court requesting a stay of the adjudication of the Claims Objection pending the District Court's hearing and resolving the Motion to Withdraw the Reference. At the omnibus hearing on November 14, 2005, the Bankruptcy Court disregarded, or at least failed to address, the appropriate standard for determining whether to grant a stay while a motion to withdraw the reference is pending. The Bankruptcy Court explained:

> I'm not going to stay the hearing. I don't see what the emergency is. If the basis to stay it is the fact that the District Court may withdraw the reference, it may, but the process is that unless and until the District Court does, the Bankruptcy Court continues to march, and so, I'm continuing the march, and I'm not going to stay the proceeding on that basis until that gets appropriately adjudicated. So even if the District Court has it under consideration, I'm not staying this proceeding.

*Tr.* at 15. The Bankruptcy Court further explained that:

> unless and until the District Court physically does an order that withdraws the reference, I keep going. So you're not going to get a stay, and I am going to keep going, and if I give you a discovery schedule and the District Court withdraw (*sic.*) the reference the District Court will either agree with it or change it.

15784                                    12

*Tr. at 18-19.* An order denying the stay was entered on November 21, 2005. The Bankruptcy Court subsequently set a summary judgment briefing schedule for the Claims Objection, with oral argument set for January 12, 2006.[11]

### III.
### RELIEF REQUESTED

By this Motion, in accordance with Federal Rule of Bankruptcy Procedure 5011(c), Clark seeks an Order from this Court staying the adjudication of the Claims Objection pending the District Court's hearing and resolution of Clark's Motion to Withdraw the Reference to the Bankruptcy Court.

### IV.
### BASIS FOR RELIEF

Rule 5011(c) of the Federal Rules of Bankruptcy Procedure provides:

> The filing of a motion for withdrawal of a case or proceeding or for abstention pursuant to 28 U.S.C. § 1334(c) shall not stay the administration of the case or any proceeding therein before the bankruptcy judge except that the bankruptcy judge may stay, on such terms and conditions as are proper, proceedings pending disposition of the motion. A motion for a stay ordinarily shall be presented first to the bankruptcy judge. A motion for a stay or relief from a stay filed in the district court shall state why it has not been presented to or obtained from the bankruptcy judge. Relief granted by the district judge shall be on such terms and conditions as the judge deems proper.

Bankruptcy Rule 5011(c). As contemplated by Rule 5011(c), Clark first moved for a stay in Bankruptcy Court, which was denied for the reasons cited above. However, based on the Bankruptcy Court's explanation -- that "the process is that unless and until the District Court does, the Bankruptcy Court continues to march, and so, I'm continuing the march" (*Tr.* at 15) -- it was not acknowledged (in spite of Clark's submitting a brief on the issue) that the Bankruptcy

---

[11] Kaiser filed its Motion for Summary Judgment (Docket No. 7841) on December 2, 2005. Clark's Response is due on December 22, 2005 and Kaiser's Reply is due on December 29, 2005. Oral argument is scheduled for a telephonic conference on January 12, 2006.

15784                                                                 13

Court <u>may</u> stay the proceedings while the motion to withdraw the reference is pending. It is therefore necessary to request that the District Court stay the Claims Objection proceedings while the Motion to Withdraw the Reference is pending.

A.  <u>The District Court Should Stay the Claims Objection</u>

Within the Third Circuit, Rule 5011(c) "provides explicitly that proceedings are not stayed when a motion to withdraw the reference is filed unless the court so orders." *In re Eagle Enterprises, Inc.*, 259 B.R. 83, 86 (Bankr. E.D. Pa. 2001) (*citing In re Perfect Home, LLC*, 231 B.R. 358, 360 (Bankr. N.D. Ala. 1999)). As such, a motion for a stay is examined "in terms of whether the Bankruptcy Court <u>should</u> stay the proceedings pending the district court's decision." *Id.* (emphasis added) (*citing In re Interco, Inc.*, 135 B.R. 359, 361 (Bankr. E.D. Mo. 1991)).

A party moving for a stay pending District Court adjudication on a Motion to Withdraw the Reference must demonstrate the following:

(1) the likelihood of prevailing on the merits (*i.e.* that the pending motion will be granted);

(2) that the movant will suffer irreparable harm if the stay is denied;

(3) that the other party will not be substantially harmed by the stay; and

(4) that the public interest will be served by granting the stay.

*In re Eagle Enterprises, Inc.*, 259 B.R. at 86-87 (*citing* 9 *Collier on Bankruptcy*, ¶ 5011.03[2][a], 5011-16, 17 (Matthew Bender 15th Ed. Revised 2000) (*quoting In re Interco*, 135 B.R. at 361)). As set forth below, Clark submits that each of these factors are present and that a stay should be granted.

15784                                                                  14

1.  **The District Court Will Likely Grant Clark's Motion to Withdraw the Reference**

The District Court will likely grant Clark's Motion to Withdraw the Reference because the resolution of Clark's claims and Kaiser's Claims Objection requires substantial and material consideration of the FPA and FERC opinions and regulations.

Section 157(d) of title 28 provides for both mandatory and permissive withdrawal of the reference. Under the mandatory standard, section 157(d) provides that "[t]he district court *shall*, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." 28 U.S.C. § 157(d) (emphasis added). Section 157(d) also provides for permissive withdrawal: the "district court *may* withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown." 28 U.S.C. § 157(d) (emphasis added).

(a)   *The Motion Was Timely Filed*

Timeliness of a motion to withdraw a reference is governed from the point of time when the debtor filed its objection to Clark's claims. *See In re CM Holdings, Inc.*, 221 B.R. 715, 720 (D. Del. 1998); *In re Oil Co., Inc.*, 140 B.R. 30, 33 (E.D.N.Y. 1992) (finding that motion for withdrawal of reference made six weeks from time debtor filed its objection was timely filed). Kaiser filed its Claims Objection on October 10, 2005, and Clark responded on October 25, 2005. The Motion to Withdraw was filed on October 24, 2005, prior to the response deadline; as such, the Motion to Withdraw was filed in a timely manner within the meaning of 28 U.S.C. § 157(d).

(b)     *Withdrawal is Mandatory Under Section 157(d)*

Withdrawal of the reference over the Claims Objection is mandated by section 157(d). This Court has noted that the mandatory withdrawal provision "requires . . . the withdrawal of a case or proceeding if resolution of that action necessitates consideration of Title 11 and non-Bankruptcy Code law which affects interstate commerce." *Hatzel & Buehler, Inc. v. Orange & Rockland Utilities, Inc.*, 107 B.R. 34, 37 (D. Del. 1989) (mandatory withdrawal was required where the bankruptcy court would have been required to interpret provisions of OSHA and EPA regulations). This district has adopted the standard that withdrawal is mandatory if two conditions are met: (1) "consideration of non-Bankruptcy Code law is necessary for the *resolution* of a case or proceeding" and (2) "that substantial and material consideration of those non-bankruptcy statutes must be involved to resolve the proceeding." *Id.* at 38 (citing *In re White Motor Corp.*, 42 B.R. 693, 704 (N.D. Ohio 1984)). This Court has recognized that "[a]pplication of this standard furthers the underlying policy of Section 157(d), which is to withdraw matters requiring the application of non-bankruptcy law from the relatively less experienced bankruptcy court to the more experienced district court." *In re Smith Corona Corp., SCM*, 205 B.R. 712, 714 (D. Del. 1996) (*citing In re St. Mary Hosp.*, 115 B.R. 495, 497 (E.D. Pa. 1990)).

(i)     Resolution of Clark's Claims Requires Consideration of the FPA

In order to meet the first condition for mandatory withdrawal, "all that is required is a necessary consideration of Federal law outside the Bankruptcy Code to resolve the proceeding." *In re CM Holdings, Inc.* 221 B.R. at 721. Section 157(d) requires that the non-bankruptcy law regulate organizations or activities affecting interstate commerce. 28 U.S.C. § 157(d). For example, in the case of *In re CM Holdings*, the IRS moved to withdraw the reference of a claims objection filed against the IRS because the IRS' claims involved the applicability of two sections

of the Federal Tax Code. 221 B.R. at 721. The *CM Holdings* court found that the first condition for mandatory withdrawal was met simply because "the Federal Tax Code must be consulted in order to determine the validity of the IRS' claims." *Id.*

Similarly here, both the Unauthorized Sale Claim and the Unreasonable Rate Claim can only be resolved after consulting the FPA and FERC decisions and regulations. Indeed, whether Kaiser was a "seller," whether Kaiser was authorized to sell power, and whether the rate charged by Kaiser was "just and reasonable" are all issues that can only be decided after interpreting and considering the FPA and FERC opinions and regulations. FERC has developed a substantial body of case law on what constitutes a sale under the Federal Power Act. Interpretation of that case law is not a matter of bankruptcy law. As the Bankruptcy Court has reasoned: "the appropriate place to take a look at whether this transaction is within the FERC 's jurisdiction and whether it really is a bilateral sales contract is [FERC's]. They're the regulatory agency with the expertise and I really think the issue belongs there." *Transcript of* March 17, 2003 Hearing at 21-22. There is no question that the FPA is a non-bankruptcy law of the United States regulating interstate commerce within the meaning of 28 U.S.C. § 157(d). The FPA applies to the "transmission of electric energy in interstate commerce and to the sale of electric energy at wholesale in interstate commerce." 16 U.S.C. § 824(b)(1). Thus, resolution of the claims objection meets the prima facie requirement of section 157(d).

(ii) Consideration of the Federal Power Act Is Substantial and Material

The reference must be withdrawn if consideration of the FPA is "substantial and material, such that there is a meaningful consideration of the federal law and not just a straightforward simple application of federal law to the facts of the case." *In re CM Holdings, Inc.* 221 B.R. at 721. Courts have recognized that "[t]he ambiguity of the phrase 'substantial and material consideration' leaves it open to dispute in each withdrawal of the reference proceeding." *In re*

15784                                    17

*Texaco, Inc.*, 84 B.R. 911, 921 (S.D.N.Y. 1988). As such, this Court has required that the consideration of federal law be substantial and material for "issues requiring significant *interpretation* of federal laws that Congress would have intended to have decided by a district judge rather than by a bankruptcy judge." *Hatzel & Buehler, Inc.*, 107 B.R. at 38 (citing *In re Johns-Manville Corp.*, 63 B.R. 600, 602 (S.D.N.Y. 1986)). In *Hatzel & Buehler*, this Court granted a motion to withdraw the reference where the moving party demonstrated that the debtor violated applicable provisions of the Occupational Safety and Health Act and regulations of the Environmental Protection Agency. 107 B.R. at 39 ("in order to determine whether the [movant's] termination of the contract and subcontracts was not wrongful, this Court must necessarily interpret the OSHA and EPA regulations").

In this case, resolution of the Claims Objection rests solely on Clark and Kaiser's factual and legal arguments under the FPA and related FERC regulations. Pursuant to repeated FERC rulings, the remarketing of power is a "sale" within the jurisdiction of FERC. *See Removing Obstacles to Increased Electric Generation and Natural Gas Supply in the Western United States*, 94 FERC ¶ 61,272 (March 14, 2001), *order on rehearing*, 95 FERC ¶ 61,225 (May 16, 2001), *order on rehearing*, 96 FERC ¶ 61,155, at 678-79 (July 27, 2001) (collectively, all three orders are referred to as the "Removing Obstacle Orders"). FERC has also held that the entity that designates the buyer of power and determines the terms and conditions of the transaction is the jurisdictional seller of power at issue. *See Automated Power Exchange, Inc.*, 82 FERC ¶ 61,287 ("APX"), *reh. denied* 84 FERC ¶ 61,020 (1998), *aff'd, Automated Power Exchange, Inc. v. FERC*, 204 F.3d 1144 (D.C. Cir. 2000).[12] Here, Kaiser designated the purchaser, Clark,

---

[12] As noted previously, Kaiser has vigorously argued that it was not a "seller" of power within the meaning of the FPA because it merely remarketed the BPA's power and obtained a "credit" from the BPA for doing so. However, the issue whether Kaiser was a seller of power under the FPA has never been addressed by FERC in the Puget Sound Proceeding. FERC has not ruled on whether Kaiser was an authorized seller of power in the Puget

15784                                    18

determined the terms and conditions (price, delivery etc.) under which the power sale would be made, *and* realized a $59 million profit for such sale. Consequently, Kaiser's assignment and release of the power due to it under the BPA/Kaiser PSA to Clark constituted a "sale" under the FPA subject to FERC's jurisdiction in which Kaiser is the seller. *See Notice of Interim Procedures to Support Industry Reliability Efforts and Request for Comments,* 91 FERC ¶ 61,189 (2000) and the Removing Obstacles Orders, (specifically 94 FERC at 61,972), (secondary market releases [involving a sale by a customer of the right to receive power] are subject to FERC's jurisdiction).[13] Although Clark believes there is no doubt that Kaiser was a seller of power within the meaning of the FPA, this factual and legal decision can be made only after the FPA is interpreted in light of FERC's decisions set forth above. Clark submits that such interpretation will be "substantial and material" as set forth in *In re CM Holdings, Inc.* and *Hatzel & Buehler, Inc.*

Resolution of Clark's Unauthorized Sale Claim also requires interpretation and application of Section 205(c) of the FPA, which requires "public utilities" to file schedules showing all rates and charges for any . . . or sale subject to the jurisdiction of FERC, and the classifications, practices, and regulations affecting such rates and charges, together with all contracts which in any manner affect or relate to such rates, charges, and services. 16 U.S.C. § 824(c) (1994). Because Kaiser sold power that was subject to FERC jurisdiction, Kaiser is a "public utility" and therefore required to file rates and schedules for power sales transactions --

---

Sound Proceeding because that proceeding focused on the determination of just and reasonable rates for the interested parties.

[13] Kaiser has also admitted it "sold" power in the Pacific Northwest. *See* Kaiser's Statement of Consolidated Income issued on April 12, 2002 which reports $229.2 million in "net gains from power *sales*" during 2001 (emphasis added) (copy attached as Exh. 11); *see also* Kaiser's 2000 annual report on page 4 which states in part "Recognizing the opportunity provided by skyrocketing energy prices in western North America, the company aggressively curtailed smelting capacity in the Pacific Northwest, executed power *sales* amounting to $208 million, and received those proceeds in 2000 and early 2001. During the first quarter of 2001, we *sold* the majority of our remaining Northwest power for an additional $260 million." (copy attached as Exh. 12) (emphasis added).

15784                                                                 19

which it did not do. *See* 16 U.S.C. § 824(e)-(f) (2004). The issue of whether Kaiser engaged in an unauthorized sale depends on the interpretation and application of the FPA, but it has not and will not be decided in the Puget Sound Proceeding.

Further, Clark's Unreasonable Rate Claim may only be resolved after substantial and material consideration of Section 205(a) of the FPA, which requires that sales be at rates determined by FERC to be "just and reasonable." 16 U.S.C. § 824d(a) (1994). The FPA requires that FERC determine whether rates are just and reasonable in advance of the sale because

> [Section 205] must be read in light of the FPA's primary purpose of protecting the utility's customers. The wholesale purchasers of electricity cannot plan their activities unless they know the cost of what they are receiving, particularly if they are retailers, who must calculate their appropriate resale rates, but also if they are large-scale purchasers-users. Providing the necessary predictability is the whole purpose of the well established "filed rate" doctrine which forbids a regulated entity to charge rates for its services other than those properly filed with the appropriate federal regulatory authority.

*Electrical District No. 1 v. FERC*, 774 F.2d 490, 493 (D.C. Cir. 1985) (*citing Arkansas Louisiana Gas Co. v. Hall*, 453 U.S. 571, 577, 101 S.Ct. 2925, 2930, 69 L. Ed. 2d 856 (1981)) (citations omitted). *See also* Order No. 888-A, [1996-2000 Regs. Preambles] FERC Stats. & Regs. ¶ 31,048 at 30,306 ("Electricity is not just any commercial good or service. Rather, Congress in the Federal Power Act has charged [FERC] with ensuring that sales for resale or transmission of electricity in interstate commerce by public utilities take place under terms and conditions that are just and reasonable"). If FERC finds that prices are unjust and unreasonable, FERC "shall determine the just and reasonable rate . . . to be thereafter observed and in force." 16 U.S.C. § 824e(a). Clark submits that the congressional policy is clear and supports its claims under the FPA.

In summary, resolution of the Claims Objection requires substantial and material interpretation of the FPA, a law of the United States affecting interstate commerce. Therefore, it is likely that this Court will withdraw the reference pursuant to 28 U.S.C. § 157(d). Thus, Clark submits that the first prong of the test for a stay under Bankruptcy Rule 5011(c) is satisfied.

    (c)    *The District Court May Also Exercise Discretion and Withdraw the Reference*

In the alternative, this Court may permissively withdraw the reference. As noted earlier, Section 157(d) also provides that the "district court *may* withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for *cause shown*." 28 U.S.C. § 157(d) (emphasis added). Section 157(d) does not define or provide examples of "cause shown," but the United States Court of Appeals for the Third Circuit has advised that the district court should consider the goals of:

> (1) promoting uniformity in bankruptcy administration;
> (2) reducing forum shopping and confusion;
> (3) fostering the economical use of the debtors' resources; and
> (4) expanding the bankruptcy process.

*See In re Pruitt*, 910 F.3d 1160, 1168 (3d Cir. 1990) (*citing Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 999 (5th Cir. 1985)). This has subsequently included "a number of other factors, stressing that an initial determination should be whether the claim is a core bankruptcy proceeding or whether it is non-core.[14]" *In re NDEP Corp.*, 203 B.R. 905, 908 (D. Del. 1996) (withdrawing the reference because the movant's adversary claim for breach of contract and negligent misrepresentation was non-core and because judicial economy favored withdrawing the reference) (*citing In re Orion Pictures Corp.*, 4 F.3d 1095, 1101 (2d Cir. 1993)).[15]

---

[14] Here, the Bankruptcy Court has determined that the Claims Objection is a core proceeding. *See* Order dated November 28, 2005 (Docket No. 7804).

[15] In connection with the Motion to Withdraw, Clark filed a motion to determine whether the resolution of

15784                       21

But whether a proceeding is core or non-core does not end the inquiry. District courts have also considered whether the nature of the dispute concerns matters "included in the typical administration of a bankrupt estate." *In re Leedy Mortgage Co., Inc.*, 62 B.R. 303, 306 (E.D. Pa. 1986). In such cases, the reference may be withdrawn for core proceedings "but for the filing of the bankruptcy petition, [the proceeding] could have been brought . . . in the district court." *Id.* In *Leedy*, the District Court for the Eastern District of Pennsylvania withdrew the reference to the bankruptcy court for a core adversary proceeding brought by the bankruptcy trustee against the debtor's former accountants (who were also creditors of the bankruptcy estate). *Id.* at 305-6.

Further, this Court may withdraw the reference for both core and non-core proceedings when doing so would be "essential to preserve a higher interest." *In re Pittsburgh Corning Corp.*, 277 B.R. 74, 78 (Bankr. W.D. Pa. 2002); *In re Pan Am Corp., et al.*, 163 B.R. 41, 43 (S.D.N.Y. 1993) (*quoting In re DeLorean Motor Co.*, 49 B.R. 900, 912 (Bankr. E.D. Mich. 1985)). In *Pittsburgh Corning*, the Bankruptcy Court for the Western District of Pennsylvania recommended that the district court withdraw the reference to the debtor's claims objection in order to determine the validity and value of a creditor's age discrimination claim that had not been adjudicated prior to the debtor filing for bankruptcy. *Id.* at 78. These decisions follow the general policy outlined by the Fifth Circuit, which has noted that

> The cumulative effect of the grant of original jurisdiction to the district court and its right to withdraw the reference in a bankruptcy case or related matter . . . leaves little doubt that the

---

the Claims Objection is a core or non-core proceeding (Docket No. 7582). Courts in this district have determined that for purposes of a motion to withdraw the reference of jurisdiction, the Bankruptcy Court should determine whether the contested issue is core or non-core. *See Mellon v. Del. & Hudson Ry. Co. (In re Del & Hudson Ry. Co.)*, 122 B.R. 887, 892 (D. Del. 1991). Clark believes that, while allowance of disallowance of its proofs of claim is a core matter, the substantive determination of the underlying legal issues -- which require substantial and material consideration of the FPA -- does not fall within the Bankruptcy Court's jurisdiction over core matters. As the Bankruptcy Court reasoned: "the appropriate place to take a look at whether this transaction is within the FERC's jurisdiction and whether it really is a bilateral sales contract is [FERC's]. They're the regulatory agency with the expertise and I really think the issue belongs there." *Transcript of* March 17, 2003 Hearing at 21-22.

> district court may exercise jurisdiction broadly, even over "core" bankruptcy matters.

*Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 998 (5th Cir. 1985).

As in *Leedy* and *Pittsburgh Corning*, this Court should exercise discretion to withdraw the reference here because the substantive issues underlying Clark's claims are not normally considered in the administration of a bankruptcy proceeding. Indeed, Clark's claims against Kaiser (like those in *Leedy*) are in no way connected to bankruptcy law or Kaiser's role as a debtor in the bankruptcy proceedings. Moreover, the validity and value of Clark's claims against Kaiser require the interpretation of specific sections of the FPA. In *Leedy*, the District Court determined that the reference should be withdrawn in part because bankruptcy courts do not typically determine accounting malpractice claims. *Leedy*, 62 B.R. at 306. Similarly, bankruptcy courts do not consider violations of Sections 824 and 825 of the FPA. Furthermore, permissive withdrawal of the reference is appropriate because withdrawal will promote judicial efficiency. Resolution of the issues underlying Clark's claims will require substantial consideration of non-Bankruptcy Code federal statutory law. The District Court -- and, indeed even FERC (as the Bankruptcy Court has noted earlier in this dispute) -- are better positioned to take up these discrete, yet material issues and are accustomed to handling these issues outside the bankruptcy process. Also, by removing determination of these claims from the Bankruptcy Court's docket, it will be have more time to devote to resolution of those bankruptcy matters well within its purview. Withdrawal of the reference will not result in any duplication of effort for the Bankruptcy Court, the Debtor or Clark. Based on consideration of these factors, Clark believes that this Court will exercise its discretion and withdraw the reference to the Bankruptcy Court for Clark's claims (if it is not required to do so).

2.  Clark Will Suffer Irreparable Harm if the Stay is Not Granted

A moving party will suffer irreparable harm if it will be forced to engage in duplicative litigation -- with the potential for inconsistent rulings -- if a stay is not granted. *See In re Eagle Enterprises*, 259 B.R. at 88. In *Eagle Enterprises* a party moved to withdraw the reference to the District Court and the Bankruptcy Court for the Eastern District of Pennsylvania granted a stay because the moving party would "suffer harm in the form of duplicative costs of litigating." *Id*. A primary concern with duplicative litigation is the potential for inconsistent rulings. *See e.g. Roth v. Bank of the Commonwealth*, 583 F.2d 527, 531 (6th Cir. 1978) (if numerous actions are permitted absent an injunction, it could "lead to an unacceptable likelihood of inconsistent judgments").

In *In re Hughes-Bechtol, Inc.*, the potential for irreparable harm prompted the Bankruptcy Court for the Southern District of Ohio to stay an adversary proceeding while a motion to withdraw the reference was pending because any further proceedings "could effectively moot, or at least unduly complicate and burden, the determination of the claims and defenses of the various parties prior to . . . the district court's own determination of the motion to withdraw the reference." 1989 WL 222726, * 13 (Bankr. S.D. Ohio Oct. 6 1989). The *Hughes-Bechtol* Court noted that failure to enjoin other proceedings would "clearly be contrary to the congressional intention of reserving for the district court final determinations of motions to withdraw the reference." *Id.*

Kaiser filed the Claims Objection on October 10, 2005, and Clark's Response was filed on October 25, 2005 (Docket No. 7593). Clark then moved to Withdraw the Reference to the District Court. While Clark's Motion to Withdraw the Reference is pending before the District Court, the proceedings related to the Claims Objection should be stayed because failure to do so would result in: (1) Clark litigating the substance of its claims before the Bankruptcy Court in

15784                                      24

response to the Claims Objection and then litigating them again before the District Court (provided that the Motion to Withdraw is granted) and (2) the potential for the Bankruptcy Court to rule on the Claims Objection before this Court has had the opportunity to rule on Clark's Motion to Withdraw the Reference, which could moot this Court's adjudication of the merits of Clark's claims.

3.     Kaiser Will Not be Substantially Harmed By the Stay

Neither Kaiser nor any of its creditors will be harmed by a stay pending resolution of the Motion to Withdraw. According to the Plan <u>all</u> general unsecured creditors that are members of "Class 9B" will receive a pro-rata number of shares of Kaiser "New Common Stock" (the "Stock") provided their claims are "Allowed Claims". (Plan at § 7.8(a)-(b).) Further, Kaiser anticipates that not all claims will be adjudicated by the time the Plan is confirmed and has devised a reserve procedure to withhold shares pending resolution of disputed claims. (Plan at § 7.1(b).) Thus, staying the Claims Objection will not delay distributions to creditors if the Plan is confirmed.

4.     The Public Interest Will be Served By Granting the Stay

The United State District Court for the District of New Jersey has explained that mandatory withdrawal under Section 157(d) "represented a Congressional preference, as opposed to a constitutional requirement, that district courts hear certain cases involving both Title 11 and non-Code federal law." *In re Tammaro, Inc.*, 56 B.R. 999, 1003 (D.N.J. 1986). Indeed, the first court to interpret Section 157(d) relied on the Senate Report that the "district court thus retains . . . full power to withdraw or limit the reference of a bankruptcy case or proceeding to the bankruptcy court at any time for any reason, and is further required to recall any *Marathon* issue if requested to do so." *In re White Motor Corp.*, 42 B.R. at 699 (*citing* Senate Report No. 55, 98th Cong., 1st Sess. 16 (1983)). The District of New Jersey also noted

15784                                                           25

that "§ 157(d) mandatory withdrawal should be limited to those cases involving laws in areas in which Congress has found more than a *de minimis* effect on interstate commerce." *In re Tammaro, Inc.*, 56 B.R. at 1006 (*citing* colloquy between Rep. Kramer and Rep. Kastenmeier at 130 Cong.Rec. H1849-50 (daily ed. March 21, 1984), *reprinted in In re White Motor*, 42 B.R. at 700).

The public interest, as expressed by Congress, strongly favors this Court adjudicating the purely non-bankruptcy Federal law issue raised in Clark's claims. To stay this proceeding and not expend judicial resources that could potentially render this Court's adjudication moot would therefore be in the public interest.

## V.
## CONCLUSION

For all of the foregoing reasons, Clark respectfully requests entry of an Order: (i) staying all further proceedings in Kaiser's bankruptcy case related to its Claims Objection; and (ii) granting such other relief as is just and proper.

Dated: Wilmington, Delaware
       December 5, 2005

JASPAN SCHLESINGER & HOFFMAN LLP

/s/ *Frederick B. Rosner*
Frederick B. Rosner (ID No. 3995)
913 North Market Street 12th Floor
Wilmington, DE 19801
Tel: (302) 351-8000
Fax: (302) 351-8010

and

15784                                   26

William A. Wood, III, Esq.
BRACEWELL & GUILIANI LLP
711 Louisiana Street
Suite 2300
Houston, Texas 77002-2781
Tel: (713) 223-2300
Fax: (713) 221-1212

and

George H. Williams, Esq.
2000 K Street, N.W.
Suite 500
Washington, DC 20006
Phone: (202) 828-5800
Fax: (202) 223-1225

and

THACHER PROFFITT & WOOD LLP

Christopher F. Graham, Esq.
Louis A. Curcio, Esq.
Philip I. Bezanson, Esq.
Two World Financial Center
New York, New York 10281
Tel: (212) 912-7400
Fax: (212) 912-7751

*Counsel to Public Utility District No. 1 of Clark County d/b/a Clark Public Utilities*

Case 1:05-cv-00836-JJF   Document 7-2   Filed 12/05/2005   Page 17 of 17