**EXHIBIT 7**

| UNITED STATES BANKRUPTCY COURT DISTRICT OF DELAWARE | | PROOF OF CLAIM |
|---|---|---|
| Name of Debtor<br><br>Kaiser Aluminum and Chemical Corp. | Case Numbers:<br><br>02-10430(JKF)<br><br>(Jointly Administered under Case No. 02-10429(JKF)) | |

**Note:** This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A Request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

| Name of Creditor (The person or other entity to whom the debtor owes money or property):<br><br>Public Utility District No. 1 of Clark County d/b/a Clark Public Utilities<br><br>662080 | ☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim Attach copy of statement giving particulars<br>☐ Check box if you have ever received any notices from the bankruptcy court in this case.<br>☐ Check box if the address differs from the address on the envelope sent to you by the Court. | THIS SPACE IS FOR COURT USE ONLY |
|---|---|---|
| Name and address where notices should be sent:<br>Thacher Proffitt & Wood    Attn:    Christopher F. Graham, Esq.<br>11 West 42nd Street                              Deirdre A. Dillon, Esq.<br>New York, New York 10036<br>Tel: (212) 789-1200<br>Fax: (212) 789-3500 | DEBTOR: KAISER ALUMINUM CORP<br>FILED: U.S.B.C D.D.<br>CASE NO : 02-10429 THRU 02-10443<br><br>**CLAIM NO.: 7245** | |
| Account or other number by which creditor identifies debtor: | Check here if this claim ☐ replaces ☐ amends a previously filed claim<br>(where applicable, date prior claim filed _____ ) | |

| 1. | Basis for Claim<br>☐ Goods sold<br>☐ Services performed<br>☐ Money loaned<br>☐ Personal injury/wrongful death<br>☐ Taxes<br>☒ Other (Describe Briefly) (See Attachment A) | ☐ Retiree benefits as defined in 11 U.S.C § 1114(a)<br>☐ Wages, salaries, and compensation (fill out below)<br>Your SS# _____<br><br>Unpaid compensation for services performed<br><br>from _____ to _____<br>           (date)             (date) |
|---|---|---|
| 2. | Date debt was incurred:<br><br>(See Attachment A) | 3. If court judgment, date obtained: N/A |
| 4. | Total Amount of Claim at Time Case Filed:<br>                         $63,716,317.21 plus post-petition interest (See Attachment A)<br>If all or part of your claim is secured or entitled to priority, also complete Item 5 or 6 below.<br>☒ Check this box if claim includes interest or other charges in addition to the principal amount of the claim Attach itemized statement of all interest or additional charges. (See Attachment A) | |

| 5. | Secured Claim:<br>☐ Check this box if your claim is secured by collateral (including a right of setoff)<br><br>Brief Description of Collateral:<br>☐ Real Estate    ☐ Motor Vehicle<br>☐ Other<br><br>Value of Collateral:    $_____<br><br>Amount of arrearage and other charges at time case filed included in secured claim, if any: | 6. | Unsecured Priority Claim.<br>☐ Check this box if you have an unsecured priority claim<br>Amount entitled to priority $_____<br>Specify the priority of the claim:<br>☐ Wages, Salaries, or commissions (up to $4000),* earned within 90 days before filing of the bankruptcy petition or cessation of the debtor's business whichever is earlier - 11 U S C § 507(a)(3).<br>☐ Contribution to an employee benefit plan - 11 U S C § 507(a)(4)<br>☐ Up to $1,800* of deposits toward purchase, lease, or rental of property or services for personal, family or household use - 11 U S C § 507(a)(6).<br>☐ Alimony, maintenance, or support owed to a spouse, former spouse or child - 11 U S C § 507(a)(7).<br>☐ Taxes or penalties owed to governmental units - 11 U S C § 507(a)(8).<br>☐ Other Specify applicable paragraph of 11 U S C § 507(a)(___).<br>*Amounts are subject to adjustment on _____ and every 3 years thereafter with respect to cases commenced on or after the date of adjustment |
|---|---|---|---|

| 7. | Credits: The amounts of all payments on this claim has been credited and deducted for making this proof of claim | THIS SPACE IS FOR COURT USE ONLY |
|---|---|---|
| 8. | Supporting Documents: Attach copies of supporting documents, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contract, court judgments, mortgages, security agreements, and evidence of perfection of lien DO NOT SEND ORIGINAL DOCUMENTS. If documents are not available, explain If the documents are voluminous, attach a summary See Attachment A and Exhibits thereto | RECEIVED 2003 JAN 30 PM 12:26 LOGAN & COMPANY, INC. |
| 9. | Date-Stamped Copy: To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim. | |
| Date<br><br>January 28th 2003 | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any):<br>Wayne Nelson<br>Chief Executive Officer<br>Clark Public Utilities     [signature] | |

*Penalty for presenting fraudulent claims:* Fine of up to $500,000 or imprisonment for up to 5 years, or both 18 U S C §§ 152 and 3571

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | |
| | ) | Case No. 02-10430 (JKF) |
| KAISER ALUMINUM AND CHEMICAL | ) | |
| CORPORATION, | ) | |
| | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |

ATTACHMENT A TO PROOF OF CLAIM OF
PUBLIC UTILITY DISTRICT NO. 1 OF CLARK COUNTY

Public Utility District No. 1 of Clark County d/b/a Clark Public Utilities ("Clark Public Utilities") files this Proof of Claim against Kaiser Aluminum and Chemical Corporation ("Kaiser" or "Debtor")[1] Kaiser filed for Chapter 11 protection on February 12, 2002 (the "Petition Date").

1. **Claim and Grounds for Liability**

Clark Public Utilities is a customer-owned municipal corporation operating under the laws of the State of Washington and providing electricity to approximately 160,000 customers throughout Clark County, Washington.

In 1981, Clark Public Utilities entered into a power contract with the Bonneville Power Administration ("BPA") that expired on June 30, 2001. In 2000, when Clark Public Utilities sought to purchase power from BPA under its long-term subscription process beyond June 30,

---

[1] Clark Public Utilities is also filing another separate proof of claim to preserve its rights to claim refunds that may be ordered by the Federal Energy Regulatory Commission ("FERC") in a generic proceeding captioned *Puget Sound Energy, Inc v All Jurisdictional Sellers of Energy and/or Capacity at Wholesale Into Electric Energy and/or Capacity Markets in the Pacific Northwest, Including Parties to the Western Pool Agreement*, Docket No EL01-10-000, *et al* (the "Puget Sound Proceeding") or for a judicial determination of a just and reasonable rate for the power Kaiser sold to Clark Public Utilities, as more fully explained in the other proof of claim This Proof of Claim, however, unlike the proof of claim based on the generic proceeding, is based upon a different remedy and theory of liability that would have not been available to Clark Public Utilities in the generic proceeding

1

2001, BPA would only offer Clark Public Utilities a net requirements contract beginning on October 1, 2001 because BPA had decided to change its standard contract expiration date from June 30 to September 30 to coincide with BPA's fiscal year. This change in the effective commencement date of the new BPA contract created a two-month gap, *i.e.*, August and September 2001, in Clark Public Utilities' supply portfolio.

Because of the well-publicized and documented extreme volatility in the market in early 2001, as well as the prospect that the rates for electrical power could go even higher in August and September 2001, Clark Public Utilities, like any prudent public utility, was compelled to fill this gap as soon as possible. Consequently, on February 2, 2001, Clark Public Utilities entered into a remarketing letter agreement (the "February 2nd Remarketing Agreement," copy attached as Exhibit 1) with Kaiser to purchase from Kaiser 140 Megawatts of power for the period August 1, 2001 through September 30, 2001, at the rate of $325 per Megawatt hour.

The electrical power that Kaiser committed to sell to Clark Public Utilities was to be obtained by Kaiser assigning some of its rights to jurisdictional power (*i.e.*, power subject to FERC's jurisdiction) under a contract with BPA (the "BPA/Kaiser PSA," copy attached as Exhibit 2). Under Section 18(b)(2) of the BPA/Kaiser PSA, Kaiser had the right to elect to remarket excess power it did not use by finding its own purchaser for such excess power or by requesting that BPA find a purchaser (*See* BPA/Kaiser PSA at § 18(b)(2)). If Kaiser found its own purchaser -- as it did in finding Clark Public Utilities -- BPA had a first option to remarket the power. (*Id* at § 18(b)(4)(B)). However, if BPA did not exercise that option, BPA was required to deliver the power to Kaiser's purchaser on Kaiser's terms and conditions. BPA did not exercise its option of remarketing Kaiser's excess power, but instead delivered Kaiser's

2

power to Clark Public Utilities, pursuant to Kaiser's direction and under terms and condition set by Kaiser.

Following the February 2nd Remarketing Agreement, BPA entered into two confirmation agreements, one with Clark Public Utilities (the "Clark Confirmation Agreement," copy attached as Exhibit 3) and another with Kaiser (the "Kaiser Confirmation Agreement," copy attached as Exhibit 4) confirming the terms agreed to by Kaiser and Clark Public Utilities in the February 2nd Remarketing Agreement. The Clark Confirmation Agreement stipulated that Clark Public Utilities would pay $64,080,603 to BPA on March 28, 2001 for the remarketed Kaiser power. (*See* Exh. 3) Thereafter, in accordance with the Kaiser Confirmation Agreement, BPA would transfer $59,842,404 to Kaiser, with the balance of $4,238,199 to be retained by BPA to cover the costs of the remarketed Kaiser power. (*See* Exh. 4) Further, Kaiser, not the BPA, was responsible for the costs of transmitting the remarketed Kaiser power to Clark Public Utilities (*See* Exh. 3).

In consequence of the extraordinarily high price Clark Public Utilities paid for the remarketed Kaiser power, Clark Public Utilities was forced to raise rates to its customers by twenty percent.

The sale of power by Kaiser to Clark Public Utilities violated the Federal Power Act (the "FPA") because Kaiser made a jurisdictional sale of power (*i.e.*, a sale subject to FERC's jurisdiction) to Clark Public Utilities under Section 201(b)(1) of the FPA without any notification to the Federal Energy Regulatory Commission ("FERC") and without proper prior authorization from FERC. First, Kaiser sold the remarketed Kaiser power to Clark Public Utilities by assigning its rights to receive BPA power to Clark Public Utilities. According to

3

FERC, a customer, such as Kaiser, makes a jurisdictional sale of power when such customer reduces its power purchases from one party, such as the BPA, and then redirects that jurisdictional power (or assigns the rights to such jurisdictional power) to another party, such as Clark Public Utilities, under terms and conditions set by such customer -- in this case -- Kaiser.[2] Indeed, Kaiser has made numerous public statements admitting that it sold power at a profit.[3] Second, Kaiser never notified FERC of the power sale it made to Clark Public Utilities nor did Kaiser file with FERC any schedules of rates and charges or contracts relating to rates and charges as required by Section 205(c) of the FPA.[4] Further, Kaiser did not seek FERC's authority to sell power prior to making the sale to Clark Public Utilities as required by Section 205 of the FPA, 16 U.S.C. § 824d.

The remedy for such an unauthorized sale is to require the offending seller to disgorge and refund to the buyer all revenues in excess of costs.[5] In this case, the cost to Kaiser of the

---

[2] See *Removing Obstacles to Increased Electric Generation and Natural Gas Supply in the Western United States*, 94 FERC ¶ 61,272 (March 14, 2001), *order on rehearing*, 95 FERC ¶ 61,225 (May 16, 2001), *order on rehearing*, 96 FERC ¶ 61,155, at 678-79 (July 27, 2001) (collectively, all three orders are referred to, as the "Removing Obstacle Orders"). See also *Automated Power Exchange, Inc.*, 82 FERC ¶ 61,287 ("APX"), *reh denied* 84 FERC ¶ 61,020 (1998), *aff'd, Automated Power Exchange, Inc v FERC*, 204 F 3d 1144 (D.C. Cir 2000), where the Commission relied on who designated the buyer and determined the terms and conditions of a purchase to identify the jurisdictional seller of the power at issue. Further, Kaiser's assignment and release of the power due to it under the BPA/Kaiser PSA to Clark Public Utilities constituted a sale subject to FERC's jurisdiction. See *Notice of Interim Procedures to Support Industry Reliability Efforts and Request for Comments*, 91 FERC ¶ 61,189 (2000) and the Removing Obstacles Orders, specifically 94 FERC at 61,972, all of which make clear that secondary market releases [involving a sale by a customer of the right to receive power] are subject to FERC jurisdiction.

[3] See Kaiser's Statement of Consolidated Income issued on April 12, 2002 which reports $229.2 million in "net gains from *power sales*" during 2001 (emphasis added); *see also* Kaiser's 2000 annual report on page 4 which states in part "Recognizing the opportunity provided by skyrocketing energy prices in western North America, the company aggressively curtailed smelting capacity in the Pacific Northwest, executed *power sales* amounting to $208 million, and received those proceeds in 2000 and early 2001. During the first quarter of 2001, *we sold* the majority of our remaining Northwest power for an additional $260 million." (emphasis added)

[4] Section 205(c) of the FPA requires, in part, "public utilities" to file "schedules showing all rates and charges for any ... sale subject to the jurisdiction of the Commission ... together with all contracts which in any manner affect or relate to such rates, charges, classifications, and services." Under Section 201(e) of the FPA, 16 U.S.C § 824(e), a "public utility" is an entity (not otherwise exempt, such as a state or federal instrumentality) that engages in jurisdictional activity under the FPA. Since Kaiser is not an exempt entity, it meets the definition of a public utility for purposes of Section 205 of the FPA, 16 U.S.C §824d.

[5] See *Central Maine Power Co.*, 56 FERC ¶ 61,200 *rehearing denied in part*, 57 FERC ¶ 61,083 1991); *see also Prior Notice and Filing Requirements Under Part II of the Federal Power Act*, 64 FERC ¶ 61,139 (1993),

remarketed power it sold to Clark Public Utilities was approximately $4.2 million, but market conditions allowed Kaiser to sell that power to Clark for approximately $64 million. Thus, the disgorgement remedy would amount to $59,706,317 million, plus interest of $4,010,000.21[6] as of the Petition Date for a total of $63,716,317.21 (the "Claim"). The Claim continues to accrue interest at the prime rate in accordance with FERC regulations, 18 C.F.R. § 35.19a(a)(2).

The basis for the Claim and the amount thereof was determined after diligent efforts of Clark Public Utilities and its attorneys and after their investigation and analysis of the Claim. This Proof of Claim is filed with full reservation of rights as set forth herein, including the right to assert additional or amended proofs of claim based on information, testimony and/or documents subsequently discovered or subsequently obtained.

2.  **No Judgment**

No judgment has been rendered on the Claim set forth herein as of the date of this Proof of Claim.

3.  **Credits**

The amount of all known payments or credits with respect to the Claim set forth in this Proof of Claim have been credited and deducted from the amounts owed as set forth herein.

4.  **Setoff**

The Claim set forth in this Proof of Claim (or any other claims Clark Public Utilities may have against the Debtor) is not subject to any known setoffs or counterclaims.

---

*order on rehearing,* 65 FERC ¶ 61,081 (1993)
6    See Exhibit 5 for the interest calculations

5. <u>Recoupment</u>

Clark Public Utilities reserves all recoupment rights with respect to the Claim set forth herein or any other claims

6. <u>Non-Waiver and Reservation of Rights</u>

This Proof of Claim is filed pursuant to the order (the "Bar Date Order") entered by the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") requiring certain proofs of claim against the Debtor to be filed by January 31, 2003 (the "Bar Date") Clark Public Utilities is filing this claim to protect its rights, claims and interests

Clark Public Utilities specifically reserves the right to amend, modify and supplement this Proof of Claim in any manner whatsoever, including, without limitation, the right to assert administrative claims and priority claims under Bankruptcy Code Sections 503 or 507 (or alternatively, Clark Public Utilities hereby asserts such priority to the fullest extent permitted by law), to file additional proofs of claim for additional claims, and to assert, without limitation, any claim to which Clark Public Utilities might be entitled, at law or in equity, or to show any further or additional payments, credits or setoffs which may occur or be discovered after the date hereof with respect to the Claim set forth herein or any other claims. Clark Public Utilities further specifically reserves the right to amend and supplement this Proof of Claim to account for additional discovered facts after full disclosure of all relevant facts in this bankruptcy or in the Puget Sound Proceeding including any decisions rendered by FERC in such proceeding Clark Public Utilities reserves all rights accruing to it, and the filing of this Proof of Claim is not intended to be and shall not be construed as:

i) an election of a remedy;

ii) a waiver of any past, present or future defaults or events of default;

iii)   a waiver or limitation of any rights, claims or defenses of Clark Public Utilities, including, but not limited to, the right to challenge the Bankruptcy Court's jurisdiction to hear any disputes arising out of the Claim or to make any motions to have such dispute resolved in a forum other than the Bankruptcy Court7;

iv)   a waiver of any of Clark Public Utilities' claims against any other parties liable to Clark Public Utilities; or

v)   a submission to the jurisdiction of the Bankruptcy Court.

7.   **Notices**

All notices concerning this Proof of Claim should be sent to:

>   Lee C. Goldstein, Esq.
>   THE LAW OFFICES OF LEE C. GOLDSTEIN, ESQ.
>   615 West 18th Street
>   Wilmington, DE 19802
>   (302) 654-2632

with copies to:

>   Christopher F. Graham, Esq.
>   Deirdre A. Dillon, Esq.
>   THACHER PROFFITT & WOOD
>   11 West 42nd Street
>   New York, NY 10036
>   (212) 789-1200
>
>   George H. Williams, Esq.
>   Robert C. Platt, Esq.
>   CAMERON MCKENNA LLP
>   2175 K Street, NW, Fifth Fl.
>   Washington, D.C. 20037
>   (202) 466-0060
>
>   and

---

7   As determination of this Claim involves the interpretation of another federal statute, the FPA, in addition to the Bankruptcy Code, the amount of this Claim most likely will be determined by the United States District Court. See 11 U.S.C. § 157(d).

7

Mr Wayne Nelson
Chief Executive Officer
Clark Public Utilities
1200 Fort Vancouver Way
Vancouver, WA 98663

# KAISER ALUMINUM & CHEMICAL CORPORATION
## NORTHWEST REGIONAL HEADQUARTERS

554 EAST TRENT AVENUE, SUITE 300 • SPOKANE, WA 99202
PHONE: (509) 242-1007 • FAX (509) 242-1098

**FACSIMILE TRANSMITTAL SHEET**

| | |
|---|---|
| TO: Wayne Nelson | FROM: Joe Hasenaur |
| FAX NUMBER: (360) 992-3204 | DATE: Feb. 2, 2001 |
| COMPANY: Clark County PUD | TOTAL NO. OF PAGES INCLUDING COVER: 5 |
| PHONE NUMBER: | PHONE NUMBER: (509) 242-1074 |
| RE: | |

☐ URGENT   ☐ FOR REVIEW   ☐ PLEASE COMMENT   ☐ PLEASE REPLY

WAYNE – LETTER STATING OUR CONVERSATION TODAY. IF YOU HAVE ANY QUESTIONS FEEL FREE TO CALL ME THIS WEEKEND CELL # (509) 995-1487 OR THROUGH DANA.

THANKS,
JOE

CC: DANA ZENTZ
252-5093

**IMPORTANT**
The information contained in this facsimile message is privileged and confidential information intended only for the use of the individual named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please destroy it immediately and notify us by telephone. Thank you.

**KAISER ALUMINUM**
NORTHWEST REGIONAL HEADQUARTERS

February 2, 2001

VIA FAX

Mr. Wayne Nelson
General Manager
Clark County PUD
(360) 992-3204

Re: Kaiser's Remarketing Agreement

Dear Mr. Nelson:

This letter will confirm our conversations on February 2, 2001 with you and Mr. Dana Zentz of EES Consulting regarding Kaiser's right to remarket energy under its 1996 Power Sales Contract with BPA. Under the contract, Kaiser may request remarketing by submitting a notice to BPA stating the Qualifying Purchaser (which would be Clark County PUD (PUD) in this instance), the start and end date of the sale, the price, the delivery point, and any other terms. BPA may either implement the sale to the PUD or, at its option, may choose to purchase the energy for its own use at the same terms and conditions. If the sale is for one month or less, BPA has 24 hours after Kaiser's notice to decide if it wants to purchase the energy; if the sale is for more than one month but no greater than 6 months, then BPA has 2 days to decide.

If the sale to the PUD is implemented by BPA, then BPA will contract with the PUD for the sale of the energy at the price, terms and conditions stated in

1

534 EAST TRENT, SUITE 300 SPOKANE WA 99202 (509) 342-1050

Kaiser's notice and other standard terms that BPA may request. The energy purchased by the PUD will be federal energy and the PUD's payment will be made to BPA. The energy will be delivered under Kaiser's PTP agreement with BPA. The POI will be the "BPA's System POI" and the point of delivery will be moved from Kaiser's facilities on a non-firm basis to the point of delivery named in Kaiser's notice and the PUD's contract with BPA. BPA will pay Kaiser for the remarketed energy under the terms of Kaiser's 1996 Power Sales Contract and a separate Confirmation Agreement with BPA consistent with the terms of Kaiser's notice. Therefore, pursuant to our discussions, the PUD and Kaiser (Parties) have agreed to the following:

Kaiser will submit a request to BPA on Friday, February 2, 2001 at approximately 4:30 p.m. PST to remarket 140 Mw of energy for the months of August 2001 and September 2001. BPA will have 48 hours to respond to this request and notify Kaiser if i) they will purchase the energy under the terms agreed to between the Parties or ii) facilitate the sale to the PUD.

With regard to the remarketing request, the PUD has requested that Kaiser's offer remain open until 12:00 noon on Tuesday, February 6, 2001 to allow the Board to approve the necessary financing arrangements for payment. This is acceptable, provided that Kaiser has the right to withdraw the offer at any time before the PUD executes a Confirmation Agreement with BPA.

2

Provided Kaiser can secure short-term firm transmission utilizing its PTP transmission agreement with BPA, BPA will deliver the energy to the ALCOA substation or other points as mutually agreed to by the Parties.

The Parties agree that the PUD shall pay to BPA on March 15, 2001 the amount of $83,934,878.00 as shown in the attached monetization table or if a different payment date is mutually agreed to by the Parties then the payment amount shall be adjusted consistent with the attached table.

Sincerely,

*Joseph P. Hoerner*

Joseph P. Hoerner
Energy Supply Manager

Please indicate your acceptance of the terms of this agreement by signing below and returning a copy to me. Fax: (509) 242-1098

_____

_____
Date

cc:   Mr. Dana Zentz, EES Consulting

3



07/18/02  13:22 FAX                                                                                    ☒002

Contract No. 95MS-94861
October 30, 1995

# POWER SALES AGREEMENT
## between the
## UNITED STATES OF AMERICA
## DEPARTMENT OF ENERGY
## acting by and through the
## BONNEVILLE POWER ADMINISTRATION
## and
## KAISER ALUMINUM & CHEMICAL CORPORATION

### Index to Sections

| Section | | Page |
|---|---|---|
| 1. | Effective Date and Term | 3 |
| 2. | Deliveries of Firm Power Between the Effective Date and Commencement Date | 3 |
| 3. | Commencement of Deliveries of Firm Power | 4 |
| 4. | Termination of Prior Contract and Other Contracts | 4 |
| 5. | Termination of This Agreement | 5 |
| 6. | Definitions | 9 |
| 7. | Exhibits; Interpretation | 16 |
| 8. | Contract Revisions and Waivers | 17 |
| 9. | Purchase and Sale of Annual Take-or-Pay Firm Energy | 18 |
| 10. | Monthly, Weekly, Daily, and Hourly Amounts of Firm Power | 19 |
| 11. | Rate Test Compliance | 22 |
| 12. | Rates and Charges | 23 |
| 13. | Billing and Payment | 23 |
| 14. | Relief from Take-or-Pay Obligation | 27 |
| 15. | Unauthorized Increase Charges | 28 |
| 16. | Changes in Firm Power Amounts | 29 |
| 17. | Reserves | 29 |
| 18. | Curtailment or Remarketing | 36 |
| 19. | Load Regulation, Unbundled Products, and Other Transmission Products | 42 |
| 20. | Provisions Relating to Delivery of Firm Power | 45 |
| 21. | Assignment of Agreement | 45 |
| 22. | Dispute Resolution | 45 |
| 23. | Force Majeure | 49 |

07/16 '02  13:22 FAX                                                    ☐003

## Index to Sections

| Section | | Page |
|---|---|---|
| 24. | Notices | 50 |
| 25. | Hold Harmless | 51 |
| 26. | Damages for Failure by BPA to Deliver | 51 |
| 27 | Obligations During Performance of This Agreement | 52 |
| 28 | Third Parties | 52 |
| 29 | Severability | 52 |
| 30 | Entire Agreement | 53 |
| 31. | Signature Clause | 54 |
| | Exhibit A (General Contract Provisions) | 16 |
| | Exhibit B (Fees for Remarketing) | 16 |
| | Exhibit C (Rate Schedule) | 16 |
| | Exhibit D (Monthly Amounts of Firm Power) | 16 |
| | Exhibit E (Points of Delivery) | 16 |
| | Exhibit F (Unrecoverable Costs and Transfer Costs) | 16 |
| | Exhibit G (Stability Reserve Scheme(s)) | 16 |
| | Exhibit H (Arbitration Procedures) | 16 |
| | Exhibit I (Use-of-Facilities Charge) | 16 |

This POWER SALES AGREEMENT, executed  11/6  , 1995, by the UNITED STATES OF AMERICA (Government), Department of Energy, acting by and through the BONNEVILLE POWER ADMINISTRATION (BPA or Bonneville), and KAISER ALUMINUM & CHEMICAL CORPORATION (Company), a corporation incorporated under the laws of the State of Delaware. BPA and the Company are hereinafter sometimes referred to individually as "Party" and collectively as "Parties."

### WITNESSETH:

WHEREAS pursuant to section 5(d) of the Pacific Northwest Electric Power Planning and Conservation Act (Northwest Power Act), BPA is authorized to sell power to the Company; and

WHEREAS on August 31, 1981, BPA and the Company entered into Contract No. DE-MS79-81BP-90351, hereinafter referred to as "Prior Contract"; and

WHEREAS this Agreement provides for the termination of the Prior Contract; and

(f) "Demand" means the maximum integrated hourly rate of delivery during each month of each Contract Year for Firm Power deliveries under this Agreement, as specified in Exhibit D.

(g) "Effective Date" means the date that this Agreement is signed by BPA.

(h) "Event" means the period during which BPA restricts service to the Company under this Agreement to obtain Operating Reserves or Stability Reserves. The Event shall commence with the reduction in deliveries to the Company under this Agreement due to a BPA request for Operating Reserves or a transfer trip or signal that initiates Stability Reserves restriction. Unless reinstated as provided herein, the Event shall end when BPA's dispatcher notifies the Company that the load restricted for such reserves can be restored to service. Notwithstanding the foregoing, the Event will end (subject to reinstatement as provided herein) when system conditions occur that would result in tripping the Company for undervoltage or underfrequency load shedding. Any BPA restriction or series of BPA restrictions that make up an SR Event shall be treated as part of a single Event.

After an Event has ended, the Event shall be reinstated and continue as follows:

(1) if the Event Magnitude was less than (Federal Load) × (15 minutes), then the Event shall be reinstated if BPA requests or obtains Reserves from the Company again within 10 hours;

(2) if the Event Magnitude was equal to or greater than (Federal Load) × (15 minutes), then the Event shall be reinstated if BPA requests or obtains Reserves from the Company again within 21 hours;

  (3) if the Event Magnitude was equal to or greater than (Federal Load) x (30 minutes), then the Event shall be reinstated if BPA requests or obtains Reserves again within 42 hours;

  (4) if the Event Magnitude was equal to or greater than (Federal Load) x (60 minutes), then the Event shall be reinstated if BPA requests Reserves again within 84 hours; and

  (5) if the Event Magnitude was equal to or greater than (Federal Load) x (90 minutes), then the Event shall be reinstated if BPA requests or obtains Reserves again within 126 hours.

(i) "Event Duration" means the total cumulative Event Minutes of the Event.

(j) "Event Magnitude" means a value calculated for each Event as the sum of: (Requested Operating Reserves x Event Minutes associated with the use of Operating Reserves) + (Amount of Load Tripped for Stability Reserves x duration of the SR Event in minutes) for each restriction during the Event. The Event Magnitude shall not include loads restricted pursuant to operating reserves and stability reserve rights that BPA has under other contracts.

(k) "Event Magnitude Limit" means the Federal Load multiplied by 90 minutes.

(l) "Event Minute(s)" means the minute(s) of restriction (or any portion thereof) during an Event.

(m) "Excess Firm Energy" means Firm Energy that would have been delivered to the Company for service to its expected Plant Load but is excess due to a reduction in the Company's actual Plant Load.

(n) "Federal Load" means an hourly amount of energy equal to the lesser of (1) 50 percent of the Process Load operating immediately prior to the Event,

or (2) the sum of (A) 50 percent of the Firm Energy either scheduled to the Company, remarketed to other Qualified Purchasers, used by BPA, or any combination thereof, plus (B) 50 percent of the energy scheduled by Washington Water Power Company under its Firm Energy Sale Agreement with BPA, Contract No. 95MS-95104, provided, that the amount under section 6(n)(2)(B) shall not exceed 58 average megawatts.

(o) "FERC" means the Federal Energy Regulatory Commission, or its successor.

(p) "Firm Energy" means the Federal energy that the Company has agreed to purchase from BPA under this Agreement.

(q) "Firm Power" means the monthly amounts of Demand and Firm Energy (HLH and LLH) purchased by the Company under this Agreement.

(r) "Heavy Load Hours" or "HLH" means those hours that begin at 6 a.m. and end at 10 p.m., Monday through Saturday.

(s) "Light Load Hours" or "LLH" means all hours that are not HLH.

(t) "Material Plant Damage" means the inability of the Company to resume industrial production at all or any portion of its plant because of damage to plant production facilities resulting from a restriction; for example, the inability to resume electrolysis in one or more pots without rebuilding or substantially repairing such pot(s).

(u) "Non-Federal Service" means, for the purposes of section 18(a) of this Agreement, the monthly amounts of demand, HLH energy and LLH energy that the Company chooses to acquire from non-Federal entities to serve a portion of its Plant Load during the term of this Agreement. The Company agrees that such amounts must be supplied to the Plant Load. The Company