IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PUBLIC UTILITY NO. 1 OF CLARK COUNTY, d/b/a CLARK PUBLIC UTILITIES,<br><br>Plaintiff,<br><br>vs.<br><br>KAISER ALUMINUM & CHEMICAL CORPORATION,<br><br>Defendant. | Civil Action No. 05-836 |

**RESPONSE OF DEBTOR AND DEBTOR IN POSSESSION KAISER ALUMINUM & CHEMICAL CORPORATION TO MOTION FOR EXPEDITED HEARING FOR EMERGENCY MOTION OF CLARK PUBLIC UTILITIES FOR STAY OF THE DEBTORS' MOTION FOR AN ORDER DISALLOWING CLAIMS**

Kaiser Aluminum & Chemical Corporation ("KACC"), one of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), hereby files this response to the motion for expedited hearing for emergency motion of Clark Public Utilities for stay of the debtors' motion for an order disallowing claims (the "Motion for Expedited Hearing") filed by Public Utility District No. 1 of Clark County d/b/a Clark Public Utilities ("Clark"). In support of this response, KACC respectfully represents as follows:

## Background

Clark has asserted two claims against KACC, each claim arising from Clark's purchase of power for the months of August and September 2001. Prior to the commencement of KACC's chapter 11 case, Clark intervened in a Federal Energy Regulatory Commission ("FERC") proceeding commonly known as the Puget Sound Proceeding and alleged that KACC

had sold power to Clark and in doing so violated the Federal Power Act by charging Clark unjust and unreasonable rates for the August and September 2001 power (the "Unreasonable Rate Claim"). Clark lost on the merits of the Unreasonable Rate Claim before a FERC Administrative Law Judge prior to KACC's filing of its chapter 11 case in February 2002. Almost nine months later, Clark for the first time sought to assert a new theory of liability — that KACC also purportedly violated the Federal Power Act by making a jurisdictional sale of power without obtaining prior FERC authorization (the "Unauthorized Sale Claim"). Specifically, in June 2002, Clark sought relief from the automatic stay to pursue the Unauthorized Sale Claim. The Bankruptcy Court denied that motion, and Clark did not appeal the decision. On June 25, 2003, the FERC issued a final decision in the Puget Sound Proceeding, denying Clark relief on the merits of the Unreasonable Rate Claim. The FERC decision has since been appealed to the Ninth Circuit, but Clark is not a party to that appeal.

In January 2003, prior to the FERC decision, Clark filed two proofs of claim in KACC's bankruptcy case, one for amounts allegedly due if it were successful on the Unreasonable Rate Claim and the other for amounts allegedly due if it were successful on the Unauthorized Sale Claim. The FERC's decision constituted a final judgment on the merits of the Unreasonable Rate Claim, and because the Unauthorized Sale Claim could have been brought in the same proceeding as the Unreasonable Rate Claim but was not, the FERC's decision precludes any attempt by Clark to now litigate the Unauthorized Sale Claim. Accordingly, on October 10, 2005, KACC filed its Verified Motion to Disallow Claims Filed by Clark Public Utilities (the "Motion to Disallow") (D.I. 7480), a straightforward claims objection seeking an order expunging Clark's proofs of claim from the registry. Clark responded by filing (i) an objection to the Motion to Disallow; (ii) a motion to withdraw the reference for the Motion to Disallow (the

"Motion to Withdraw the Reference"); (iii) a motion for determination that the Motion to Disallow was a non—core proceeding; and (iv) an emergency motion to stay proceedings in the Bankruptcy Court relating to the Motion to Disallow pending District Court determination of the motion to withdraw the reference.

At a hearing before the Bankruptcy Court on November 14, 2005, the Bankruptcy Court heard argument regarding (i) the Motion to Disallow; (ii) the motion for determination that the Motion to Disallow is a non-core proceeding; and (iii) the emergency motion to stay. After argument, the Court determined that (i) there was no basis to grant the emergency motion to stay and it should be denied, and (ii) the Motion to Disallow is a core proceeding. The Bankruptcy Court also stated that it would like additional briefing regarding the applicability of res judicata to resolve the Motion to Disallow, and asked KACC to file a motion for summary judgment. A telephonic hearing regarding the motion for summary judgment is scheduled for January 12, 2006.

The Motion to Withdraw the Reference was docketed with this Court on December 5, 2005, and Clark simultaneously filed (i) the Emergency Motion of Clark Public Utilities for Stay of Further Proceedings Related to the Debtors' Motion for an Order Disallowing Claims Pending Determination of Motion to Withdraw Reference (the "Emergency Stay Motion"); (ii) a brief in support of the Emergency Stay Motion; and (iii) the Motion for Expedited Hearing.

In KACC's bankruptcy case, certain of the Debtors, including KACC, filed their Second Amended Joint Plan of Reorganization and an accompanying disclosure statement with the bankruptcy court on September 7, 2005. Voting on the Second Amended Joint Plan of Reorganization has since been completed, and all creditor classes entitled to vote have accepted

the Second Amended Joint Plan of Reorganization by overwhelming majorities. A hearing to consider confirmation of the Second Amended Joint Plan of Reorganization has been scheduled on January 9 and 10, 2006, and distributions to creditors should commence shortly after the plan goes effective.

### No Hearing Is Necessary to Resolve this Dispute, and the Motion for Expedited Hearing, the Emergency Stay Motion and the Motion to Withdraw the Reference Should All Be Summarily Denied

Pursuant to Rule 7.1.4. of the Local Rules of Civil Practice and Procedure of the United States District Court for the District of Delaware, this Court has discretion to grant or deny a motion for a hearing — "An application for oral argument may be granted or denied, in the discretion of the Court." Since a hearing in this matter is wholly unnecessary, this Court should exercise its discretion and deny Clark's request for a hearing.

All of Clark's motions pending before this Court relate to the Motion to Withdraw the Reference. The entire crux of Clark's argument is that the reference for the Motion to Disallow should be withdrawn because the disallowance of the Unauthorized Sale Claim and the Unreasonable Rate Claim requires "that significant issues under the Federal Power Act . . . raised in Clark's proofs of claim, and contested by the [Motion to Disallow], . . . be resolved by this Court." (Motion for Expedited Hearing at 2.) That assertion, however, is unquestionably incorrect. Resolution of the Motion to Disallow and the disallowance of Clark's claims does not require an interpretation of the Federal Power Act or any other federal statute. It merely requires the bankruptcy court to apply well-established principles of bankruptcy law and claim preclusion. Moreover, even if Clark were somehow correct that its claims are not barred at this point by the preclusive effect of the FERC's decision, as Clark itself has previously contended, neither the bankruptcy court nor this Court could fully adjudicate the claims in any event. The

claims would have to be litigated before the FERC. Accordingly, there is no reason whatsoever for this Court to withdraw the reference.

KACC objected to the Unauthorized Sale Claim because it is precluded by principles of res judicata. Where there is "no escaping from the fact that [a plaintiff] has relied on different legal theories to seek redress from the [same defendant] for a single course of wrongful conduct . . . [by] splitting a cause of action," claim preclusion will prohibit the prosecution of the second cause of action. Churchill v. Star Enters., 183 F.3d 184, 194 (3d Cir. 1999). The Unauthorized Sale Claim arises from the same cause of action as the Unreasonable Rate Claim. Since the Unauthorized Sale Claim could have been raised in the Puget Sound Proceeding, but was not, Clark is now precluded from bringing the claim. Clark only concocted the Unauthorized Sale Claim after losing on the merits of the Unreasonable Rate Claim before the ALJ. And Clark cannot be permitted to invent new theories of liability and demand new proceedings on those theories whenever its prior theories are rejected on the merits. Resolving the objection to the Unauthorized Sale Claim clearly does not require any interpretation of the Federal Power Act.

Clark also contends that resolution of KACC's objection to the Unreasonable Rate Claim requires an interpretation of the Federal Power Act. (Motion for Expedited Hearing at 2; Emergency Stay Motion Brief at 20). That contention is nonsense. As mentioned above, the Unreasonable Rate Claim has already been fully adjudicated, and the FERC rejected the Unreasonable Rate Claim on the merits. The bankruptcy court then refused to permit Clark to file a petition for rehearing to appeal the FERC's decision, presumably to bring Clark's claim to an end. The only issue to be determined in the Motion to Disallow is whether the Unreasonable Rate Claim is finally resolved given that Clark is not a party to the appeal or, if the bankruptcy

court did not intend to eliminate the potential ability of Clark to participate in a remanded proceeding if the FERC's decision is reversed, whether the Unreasonable Rate Claim should nonetheless now be disallowed given (a) the extremely remote probability of Clark ever being entitled to a refund, and (b) the potentially lengthy delay in distributions to legitimate creditors that would result from awaiting the possibility of a reversal and remand and further adjudication of Clark's claim in a remanded proceeding. Contrary to Clark's assertion, the resolution of that objection does not require that the bankruptcy court interpret or even apply the Federal Power Act.

Furthermore, even if Clark were to somehow prevail in its contention that its claims are not precluded and Clark's claims had to be adjudicated on the merits, neither the bankruptcy court nor this Court could, in any event, fully adjudicate Clark's claims. If there is a violation of the Federal Power Act, only the FERC has the statutory authority and the broad discretion to fashion a remedy. See Niagara Mohawk Power Corp. v. Fed. Power Comm'n, 379 F.2d 153, 158 (D.C. Cir. 1967) (the FERC has broad statutory authority to fashion remedies in the public interest); Connecticut Valley Elec. Co., 208 F.3d 1037, 1044 (D.C. Cir. 2000) (same). Additionally, only the FERC has jurisdiction to determine whether a rate is just and reasonable. Mississippi Power & Light Co. v. Moore, 487 U.S. 354, 371 (1988). In fact, although Clark now represents to this Court that it can adjudicate the Unauthorized Sale Claim and the Unreasonable Rate Claim, Clark previously represented to the bankruptcy court that the FERC has "exclusive jurisdiction" to hear Clark's claims and "[o]nly FERC can decide whether . . . Kaiser violated the FPA by selling the power to Clark Public Utilities." (Memorandum of Law in Support of Motion for Relief From Stay (D.I. 645) at 1, 12.) It is absurd, however, to think that Clark could

commence a new FERC proceeding at this point involving the same transaction, the same parties and the same facts as were involved in the Puget Sound Proceeding.

The bankruptcy court correctly concluded that the Motion to Disallow does not "in any way impinge on the Federal Power Act." (Tr. of Nov. 14, 2005 Hr'g. at 16.) This Court will almost certainly reach the same conclusion and decide that there is no reason to withdraw the reference on what amounts to a straightforward claims objection. The Motion to Withdraw the Reference is a meritless attempt to sidestep the bankruptcy court, which has rightly expressed doubts about the questionable merits of Clark's claims on several occasions, and unnecessarily relitigate claims that have long since been finally adjudicated in the appropriate forum.

Because the Motion to Withdraw the Reference is unquestionably meritless, there is no reason to stay proceedings in the bankruptcy court pending determination of that frivolous motion. Granting the Emergency Stay Motion could require KACC to reserve equity in the reorganized entity sufficient to cover Clark's claims and delay a portion of distributions to legitimate creditors for an extended period of time. There is no reason to grant the Emergency Stay Motion and delay distributions under the Second Amended Joint Plan of Reorganization merely to allow Clark to continue the litigation of a motion that will ultimately be denied.

A hearing is not required to reach this result. The facts are undisputed, and Clark has laid out its arguments repeatedly in a barrage of pleadings filed with this Court and the bankruptcy court. A hearing will add nothing meaningful to the record and will not alter the inevitable result — there is no reason to withdraw the reference for a simple claims objection and there is no reason to stay proceedings in the bankruptcy court and delay distributions to consider the Motion to Withdraw the Reference, which will, in the end, be denied. This Court should exercise its discretion and deny the Motion for Expedited Hearing.

DLI-5965667v1
RLF1-2958579-1

-7-

Dated: December 15, 2005
Wilmington, Delaware

Respectfully submitted,

*/s/ Kimberly D. Newmarch*
Daniel J. DeFranceschi (DE 2732)
Kimberly D. Newmarch (DE 4340)
RICHARDS, LAYTON & FINGER
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

-and-

Gregory M. Gordon (TX 08435300)
Daniel P. Winikka (TX 00794873)
JONES DAY
2727 North Harwood Street
Dallas, Texas 75201
Telephone: (214) 220-3939
Facsimile: (214) 969-5100

ATTORNEYS FOR DEFENDANT KAISER
ALUMINUM & CHEMICAL CORPORATION