IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

PUBLIC UTILITY NO. 1 OF CLARK COUNTY,
d/b/a CLARK PUBLIC UTILITIES,

                **Movant**

vs.

KAISER ALUMINUM & CHEMICAL
CORPORATION,

                **Respondent.**

Jointly Administered

Civ. Action No. 05-00836 (JJF)

ORAL ARGUMENT REQUESTED

RESPONDENT'S REPLY BRIEF IN FURTHER SUPPORT
OF EMERGENCY MOTION OF CLARK PUBLIC UTILITIES TO
STAY FURTHER PROCEEDINGS RELATED TO THE DEBTORS'
MOTION FOR AN ORDER DISALLOWING CLAIMS PENDING
DETERMINATION OF MOTION TO WITHDRAW REFERENCE (Docket No. 6)

JASPAN SCHLESINGER & HOFFMAN LLP

Frederick B. Rosner (ID No. 3995)
913 North Market Street 12th Floor
Wilmington, DE 19801
Tel: (302) 351-8000
Fax: (302) 351-8010

BRACEWELL & GUILIANI LLP

William A. Wood, III, Esq.
(Texas Bar ID 21916050)
*Pro Hac Vice Application pending*
711 Louisiana Street, Suite 2300
Houston, Texas 77002-2781
Tel: (713) 223-2300
Fax: (713) 221-1212

George H. Williams, Esq.
2000 K Street, N.W., Suite 500
Washington, DC 20006
Phone: (202) 828-5800
Fax: (202) 223-1225

and

THACHER PROFFITT & WOOD LLP

Christopher F. Graham, Esq.
Louis A. Curcio, Esq.
Two World Financial Center
New York, New York 10281
Tel: (212) 912-7400
Fax: (212) 912-7751

*Counsel to Public Utility District No.
1 of Clark County d/b/a Clark Public
Utilities*

Table of Contents

TABLE OF AUTHORITIES .............................................................................. ii

I. PRELIMINARY STATEMENT ................................................................... 1

II. ADDITIONAL BACKGROUND................................................................3

III. ARGUMENT ...........................................................................................3

    1.     Likelihood of Success – Neither Traditional *Res Judicata* Principles Nor
          FERC's Version of *Res Judicata* Preclude Clark's Claims ....................................3

         a.  *Traditional Res Judicata Principles*...................................................................3
         b.  FERC's *Version of Res Judicata* ........................................................................5

    2.     It is Inequitable to Bar Clark's Claims by the Doctrine of *Res Judicata*
          Or Otherwise.....................................................................................................8

    3.     Clark will Suffer Irreparable Harm if a Stay is not Granted...................................11
    4      Kaiser will not be Harmed by a Stay ....................................................................11
    5.     The Public Interest is Better Served by Imposition of a Stay................................12

IV. CONCLUSION............................................................................................12

<u>Table of Authorities</u>

Federal Cases

Apaydin v. Citibank Federal Savings Bank, 201 B.R. 716 (Bankr. E.D. Pa. 1996)...................... 4

Bruszewski v. United States, 181 F.2d 419 (3d Cir. 1950) ........................................... 8

Clark-Cowlitz Joint Operating Agency v. FERC, 826 F.2d 1074 (D.C. Cir. 1987).................. 6, 7

Commissioner of Internal Revenue v. Joseph Sunnen, 333 U.S. 591 (1948)................................ 5

Conn. Light & Power Co. v. Federal Power Com'n, 557 F.2d 349 (2d Cir. 1977) .................... 4,6

FCC v. Pottsville Broadcasting Co., 309 U.S. 134 (1940) ............................................ 6

Federal Power Com'n v. Sierra Public Power Co., 350 U.S. 348 (1956) ...................... 6

In re Continental Airlines, Inc., 145 B.R. 404 (D. Del. 1992)........................................... 3

In re Philip Services (Delaware), Inc., 267 B.R. 62 (Bankr. D. Del. 2001) ................................. 4

In re Worldwide Direct, Inc., 280 B.R. 819 (D. Del. 2002) ........................................... 4

Labelle Processing Co. v. Swarrow, 72 F.3d 308 (3d Cir. 1996) .................................... 4

Mathews v. Eldridge, 424 U.S. 319 (1976) ................................................................ 6

Purter v. Heckler, 771 F.2d 682 (3d Cir. 1985) ...................................................... 4

Stuckey v. Weinburger, 488 F.2d 904 (9th Cir. 1973) ................................................. 6

Federal Statutes

16 U.S.C. §824 (2004) ................................................................................. 6

Other Authorities

Alamito Co., 43 FERC ¶ 61,274 (1988) ................................................................ 7

Central Kansas Power Co., 5 FERC ¶ 61,291 (1978)................................................ 7

Gaviota Terminal Co., 75 FERC ¶ 63,008 (1996) ..................................................... 7

Puget Sound Energy Inc. v. All Jurisdictional Sellers of Energy and/or Capacity
at Wholesale Into Electric Energy and/or Capacity Markets in the Pacific Northwest,
Including Parties to the Western Pool Agreement, 103 FERC ¶ 61,348 (2003) ...................... 3, 8

Western Pool Agreement, 103 FERC ¶ 61,348 (2003)............................................... 3, 10

[TPW: NYLEGAL:412708.1] 19563-00001  12/22/2005 05:33 PM

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

PUBLIC UTILITY NO. 1 OF CLARK COUNTY,
d/b/a CLARK PUBLIC UTILITIES,

        **Movant**

vs.

KAISER ALUMINUM & CHEMICAL
CORPORATION,

        **Respondent.**

Jointly Administered

Civ. Action No. 05-00836 (JJF)

ORAL ARGUMENT REQUESTED

## RESPONDENT'S REPLY BRIEF IN FURTHER SUPPORT
## OF EMERGENCY MOTION OF CLARK PUBLIC UTILITIES TO
## STAY FURTHER PROCEEDINGS RELATED TO THE DEBTORS'
## MOTION FOR AN ORDER DISALLOWING CLAIMS PENDING
## DETERMINATION OF MOTION TO WITHDRAW REFERENCE (Docket No. 6)

Respondent Public Utility District No. 1 of Clark County d/b/a Clark Public Utilities ("Clark"),[1] respectfully submits this reply brief (1) in further support of its emergency motion (Dist. Ct. Docket No. 6; "Motion to Stay") to stay the proceeding commenced by debtor Kaiser Aluminum and Chemical Corporation's ("Kaiser") Motion for an Order Disallowing Claims Filed by Clark Public Utilities, filed on October 10, 2005 (Bankr. Ct. Docket No. 7480) (the "Claims Objection"); and (2) in reply to the brief filed by Kaiser on December 15, 2005 in response thereto (Dist. Ct. Docket No. 13; the "Response").

## I.
## PRELIMINARY STATEMENT

Kaiser's Response, predicated entirely on the doctrine of *res judicata*, is a red herring. Kaiser argues that *res judicata* is a simple legal principle that is applied no differently by the District Court, the Bankruptcy Court or the Federal Energy Regulatory Commission ("FERC"), the agency

---

[1]      Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion to Stay.

with exclusive jurisdiction to regulate the energy market. But Kaiser ignores the settled caselaw that FERC has adopted a broader standard for *res judicata* and whether FERC would apply it at all in this case. Kaiser further ignores that whether and how FERC would apply *res judicata* is itself a question of non-bankruptcy federal law for which the reference must be withdrawn pursuant to 28 U.S.C. §157(d).

So is the ultimate question of Kaiser's liability for its unauthorized sale of electricity during a period of extreme volatility in the Pacific Northwest. And regardless of whether that ultimate question is a bankruptcy claim to be litigated within the confines of Kaiser's bankruptcy cases (as envisioned by Kaiser) or by FERC as part of its normal, exclusive adjudicative process (as argued by Clark), the law resolving the issue undoubtedly is the Federal Power Act (the "FPA") itself and the cases and regulations promulgated in connection with it -- collectively, a federal, non-bankruptcy law governing interstate commerce.

At a minimum, Kasier's Response and all the related pleadings Kaiser filed in this case is a cover-up. Other than an admission in several Securities and Exchange Commission filings, Kaiser has been able, through aggressive litigation tactics, to prevent the facts surrounding its role in the energy crises in the Summer of 2001 from becoming public. But here is what is known: Kaiser and its affiliates and subsidiaries made in excess of $229.2 million -- over $59 million through the sale to Clark -- by, Clark alleges, engaging in unauthorized power sales to the public. Kaiser is using its bankruptcy to escape all responsibility for the consequences of those unauthorized sales.

In sum, these facts and legal arguments warrant imposition of a stay of the Claims Objection by the District Court. The Bankruptcy Court refused to even consider the four-factor test acknowledged by all parties to be the appropriate standard set by Bankruptcy Rule 5011(c) for a stay pending resolution of a motion to withdraw the reference and, incorrectly Clark believes, refused to

stay the proceedings unless so ordered by the District Court.

## II.
## ADDITIONAL BACKGROUND

Kaiser's Response declares that the Puget Sound Proceeding resolved Clark's Unauthorized Sale Claim once and for all. That is incorrect. The sole purpose of the Puget Sound Proceedings was to determine whether rates charged for the sale of energy in the Pacific Northwest during 2000 and 2001 were unjust and unreasonable. *See Puget Sound Energy Inc. v. All Jurisdictional Sellers of Energy and/or Capacity at Wholesale Into Electric Energy and/or Capacity Markets in the Pacific Northwest, Including Parties to the Western Pool Agreement*, 103 FERC ¶ 61,348 at p. 53 (2003); *see also Order on Issues*, Docket Nos. EL01-10-000, EL01-10-001 (Aug. 23, 2001).

Clark's Unauthorized Sale Claim is a separate cause of action -- not having to do with Puget Sound's inquiry into the reasonableness of the rate charged for the transaction -- but rather with Kaiser's selling power without the required FERC authorization to do so. Kaiser's conclusory allegations notwithstanding, the Unauthorized Sale Claim had no place in the Puget Sound Proceeding and was not addressed there.

## III.
## ARGUMENT

1.   Likelihood of Success -- Neither Traditional *Res Judicata* Principles Nor FERC's Version of *Res Judicata* Preclude Clark's Claims _____

   a.   *Traditional Res Judicata Principles*

Clark's claims are not barred by *res judicata*.[2] By way of summary, it is well-established that *res judicata* "precludes parties from contesting matters that they have had a <u>full</u> <u>and</u> <u>fair</u>

_____

[2]    The *res judicata* issue has been briefed to the Bankruptcy Court and Clark's Brief in Support of Response and Objection to the Motion of Debtor and Debtor in Possession Kaiser Aluminum & Chemical Corporation for Summary Judgment Regarding Its Verified Motion for an Order Disallowing Claims Filed by Clark Public Utilities [Docket No. 7480], filed with the Bankruptcy Court simultaneously with this Reply, is incorporated herein and attached hereto as Exhibit 1.

opportunity to litigate." *In re Continental Airlines, Inc.*, 145 B.R. 404, 409 (D. Del. 1992) (emphasis added) (*citing Montana v. United States*, 440 U.S. 147, 153 (1979)). *Res judicata* "is a judicial doctrine which precludes a party from re-litigating claims that were or could have been asserted in an earlier action." *In re Worldwide Direct, Inc.*, 280 B.R. 819, 821 n.3 (D. Del. 2002). *Res judicata* will also bar subsequent suits "where there has been a final judgment on the merits in the prior suit." *Labelle Processing Co. v. Swarrow*, 72 F.3d 308, 313 (3d Cir. 1996). Thus, *res judicata* only precludes further claims when "one has been given the opportunity to fully present his case in a court and the contested issue is decided against him." *Purter v. Heckler*, 771 F.2d 682, 690 (3d Cir. 1985).

The Third Circuit has adopted a three-pronged test whereby claims will not be barred by *res judicata* unless the party pleading *res judicata* can demonstrate that there has been:

> (1)    a final judgment on the merits of a prior action;
>
> (2)    involving the same parties or their privies; and
>
> (3)    a subsequent suit based on the same cause of action.

*In re Philip Services (Delaware), Inc.*, 267 B.R. 62, 68 (Bankr. D. Del. 2001) (*citing Board of Trustees of Trucking Employees of New Jersey Welfare Fund, Inc. Pension Fund v. Centra*, 983 F.2d 495, 504 (3d Cir. 1992)). Under the requirements of the Third Circuit's test, *res judicata* "only bars the litigation of claims that could have actually been raised in a prior proceeding." *Apaydin v. Citibank Federal Savings Bank*, 201 B.R. 716, 721 (Bankr. E.D. Pa. 1996).

When a litigant is unable to bring a claim in the first proceeding, "*res judicata* is not a bar to the assertion of that claim in a separate and subsequent law suit." *Id.* Consequently, *res judicata* will not bar a new cause of action even if it arises from the same transaction if that cause of action could not have been raised in the prior suit. *See Labelle Processing Co.* 72 F.3d at 314. *See also Conn.*

4

*Light & Power Co. v. Federal Power Com'n*, 557 F.2d 349, 353 (2d Cir. 1977) (deciding that *res judicata* "is operative only as to facts that were actually litigated and decided. Facts which might have been decided, but were not, are not precluded"); *Commissioner of Internal Revenue v. Joseph Sunnen*, 333 U.S. 591, 598 (1948) ("where the second action between the same parties is upon a different cause or demand . . . the judgment in the prior action operates as an estoppel, not as to matters which might have been litigated and determined, but 'only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered'").

In the Puget Sound Proceeding, FERC addressed only claims under Section 205 of the Federal Power Act related to alleged unjust or unreasonable rates charged for power in the Pacific Northwest power market in 2000 and 2001. *See Order on Issues*, Docket Nos. EL01-10-000, EL01-10-001 (Aug. 23 2001). The relief sought was a refund of charges in excess of the just and reasonable rate. *Direct Case and Demand for Refunds of Clark Public Utilities*, FERC Docket Nos. EL01-10-000, EL01-10-001 (Aug. 17, 2001). Clark's Unauthorized Sale Claim, on the other hand, has nothing to do with "unjust and unreasonable" rates. The Unauthorized Sale Claim asserted here relies on a different statutory basis, Section 201 of the Federal Power Act, which calls for a different remedy (disgorgement of all profit), and is therefore a different cause of action. Even under traditional rules of preclusion, *res judicata* would not apply to the different cause of action represented by the Unauthorized Sale Claim.

b.    *FERC's Version of Res Judicata*

Contrary to Kaiser's assertions, *res judicata* is not applied as rigidly by FERC as it is by Article III courts. Generally, administrative agencies such as FERC operate to carry out the mandates of the federal statutes that grant them their authority. 1 Richard J. Pierce, Jr., <u>Administrative Law Treatise</u> §§ 2.6, 3.1 (4th ed. 2002). To carry out their mandates, administrative agencies function as quasi-judicial entities, as well as rulemaking and investigating bodies. *Id*. at §

5

2.8.  As here relevant, FERC is charged under the FPA with the mandate to serve the public at large, not merely the narrow interests of individual parties (which is different from the purview of Article III courts). *See* Section 201 of the Federal Power Act, 16 U.S.C. §824 (2004); *Federal Power Com'n v. Sierra Public Power Co.*, 350 U.S. 348 (1956) ("that the purpose of the power given the Commission by [statutory mandate] is the protection of the public interest, as distinguished from the private interest … is evidenced by the recital in § 201 of the Act that the scheme of regulation imposed 'is necessary in the public interest'").

Because FERC is an agency and operates in a quasi-judicial sphere, the rules that apply to more traditional courts do not necessarily apply to matters brought before FERC.  *Mathews v. Eldridge*, 424 U.S. 319, 348 (1976) (noting that differences in the origin and function of administrative agencies "preclude wholesale transplantation of the rules of procedure, trial, and review which have evolved from the history and experience of courts" (quoting *FCC v. Pottsville Broadcasting Co.*, 309 U.S. 134, 143 (1940)).  Kaiser fails to recognize that because FERC is a quasi-judicial agency, it is not bound by *res judicata* in the same fashion as Article III courts.  *Stuckey v. Weinberger*, 488 F.2d 904, 911 (9th Cir. 1973) ("when applied to administrative decisions, the *res judicata* doctrine is not as rigid as it is with courts; there is much flexibility which is intended to adapt the doctrine to the unique problems of administrative justice").  *See also Conn. Light & Power Co.*, 557 F.2d at 353 (finding that because "the conclusive effect of an administrative determination is limited to the purpose for which it was made," *res judicata* did not apply to a later hydroelectric license application that presented different issues than were presented by an earlier application for the same project).

The distinction between the application of *res judicata* to administrative proceedings versus Article III courts is confirmed in *Clark-Cowlitz Joint Operating Agency v. FERC*, 826 F.2d 1074, *en*

6

*banc* (D.C. Cir. 1987), *cert. denied* 485 U.S. 913 (1988). In *Clark-Cowlitz*, the United States Court of Appeals for the D.C. Circuit, sitting *en banc*, explained that "as a general matter preclusion principles are to be applied more flexibly to administrative adjudications than to judicial proceedings." *Id*. at 1080 n.5. Indeed, the Court in *Clark-Cowlitz* concluded that the doctrine of *res judicata* does not bar FERC from applying, in a subsequent proceeding, a new interpretation of the same law, involving the same parties, the same factual context, and the same cause of action. *Id*. at 1079.

FERC itself has made clear that traditional court principles of *res judicata* do not apply to FERC. For example, in *Alamito Co.*, 43 FERC ¶ 61,274 (1988), which Kaiser has cited in a brief filed with the Bankruptcy Court, FERC states as the basis for barring litigation of an issue that could have been raised in an earlier proceeding was: "not the doctrine of *res judicata*, collateral estoppel, *stare decisis*, or law of the case, but the fact that it is contrary to sound administrative practice and a waste of resources to relitigate issues in succeeding cases once those issues have been fully determined." *Id*. at 61,753 (emphasis added). Similarly, in *Gaviota Terminal Co.*, 75 FERC ¶ 63,008 (1996), FERC explained that it would deny relitigation of already decided issues "not [on] the doctrine of *res judicata* . . ." but on considerations of sound administrative practice and waste. *Id*. at 65,027. *Central Kansas Power Co.*, 5 FERC ¶ 61,291 (1978) is to the same effect. In that case, a utility litigated in one proceeding a proposed rate increase to a particular customer. In a subsequent proceeding, the same utility proposed another rate increase to the same customer. FERC declined to hear some of the claims of the utility, not on the grounds on *res judicata*, but rather because it "would ill serve the goal of administrative efficiency." *Id*. at 61,621.

In all of these cases (each of which were cited by Kaiser), FERC's decision not to consider issues was not based on *res judicata*, but rather based on administrative concerns. Thus, as it applies

7

to FERC, claim preclusion is a matter peculiarly within the agency's bailiwick, and is not capable of being imputed by Kaiser on this court.

Under the courts' and FERC's clear standards, *res judicata* should not bar either the Unauthorized Sale Claim or the Unreasonable Rate Claim because barring those claims would neither contradict sound administrative practice nor waste resources for FERC or the District Court because FERC never heard the Unauthorized Sale Claim and never reached the substance of the Unreasonable Rate Claim.

To the extent this Court would decide the issue itself and not refer the entire matter to FERC for resolution, then, Clark submits, the administrative concerns FERC ordinarily considers in deciding preclusion arguments are themselves issues of federal, non-bankruptcy law further warranting withdrawal of the reference and, in turn, a stay of the Claims Objection.

2.    It Is Inequitable to Bar Clark's Claims by the Doctrine of *Res Judicata* or Otherwise.

In any event, equity also favors adjudicating Clark's claims on their actual merits. The Third Circuit has rejected *res judicata* defenses to claims where "some overriding consideration of fairness to a litigant dictates a different result in the circumstances of a particular case." *See, e.g. Bruszewski v. United States*, 181 F.2d 419, 421 (3d Cir. 1950). Ultimately, *res judicata* "is a rule of fundamental and substantial justice . . . rather than a technical rule." *Purter*, 771 F.2d at 690.

As noted above, FERC in the Puget Sound Proceedings denied refunds of unjust and unreasonable rates without an examination of the claims' merits due to the inherent complexities of granting refunds with such a broad stroke. The FERC ruling did not expressly mention Clark or any of the merits or details of Clark's unjust and unreasonable claim or Kaiser's conduct. *Puget Sound*, 103 FERC at 62,367. Other parties to the Puget Sound Proceeding have appealed FERC's decision to the United States Court of Appeals for the Ninth Circuit; however, the Bankruptcy Court denied Clark's request for relief from the automatic stay to participate in the appeals process; Clark should

8

not now be prejudiced by that decision as it was not allowed to appeal.

Just as Clark notes in its Response to the Verified Motion of Debtor and Debtor in Possession Kaiser Aluminum & Chemical Corporation for an Order Disallowing Claims Filed by Clark Public Utilities (Bankr. Ct. Docket No. 7593; copy attached as Exhibit 2), the Official Committee of Unsecured Creditors' (the "Committee") and Kaiser's attempts to squash Clark's attempt to have its claims determined on their merits are inequitable given their past procedural posture in this case. Since the beginning of the bankruptcy case, Clark has adamantly tried to preserve its right to litigate and liquidate its claims against Kaiser before FERC.  Clark filed no fewer than three motions to lift the automatic stay so that it could participate fully in the Puget Sound Proceeding, in which FERC considered whether sellers of electrical power in the Pacific Northwest charged unjust and unreasonable rates for such power from December 2000 through June 2001.[3]  At every turn, Kaiser and the Creditors' Committee vehemently objected and sought to limit Clark's claims.

In fact, Kaiser argued before the Bankruptcy Court that Clark should wait until the resolution of the Puget Sound Proceeding and the Bankruptcy Court objection process to take up Clark's claims.  According to Kaiser's pleadings dated July 16, 2002:

> Furthermore, at a minimum the stay should be maintained until the FERC rules in the Puget Sound Proceeding.  The ruling will certainly affect Clark's new theory for its claims and *could completely moot the need for a new proceeding (e.g., if the FERC rules that KACC was not the seller).  There is likewise no need for Clark to rush to liquidate its [Unauthorized Sale Claim] at this early stage of the Debtor's chapter 11 cases*.  No claims bar date has been set and given the complicated issues involved . . . the Debtors' restructuring and claim resolution process will take a substantial period of time.  Maintenance of the stay until the FERC at least has the opportunity to rule in

---

[3]       On June 14, 2002, Public Utility District No. 1 of Clark County filed its Motion of Public Utility District No. 1 of Clark County for Limited Relief from the Automatic Stay Protecting Kaiser Aluminum and Chemical Corporation found at Docket No. 644.
        On January 7, 2003, Public Utility District No. 1 of Clark County filed its Emergency Motion of Public Utility District No. 1 of Clark County for Limited Relief from the Automatic Stay Protecting Kaiser Aluminum and Chemical Corporation found at Docket No. 1555.
        On July 18, 2003, Public Utility District No. 1 of Clark County filed its Emergency Motion of Public Utility District No. 1 of Clark County for Limited Relief from the Automatic Stay Protecting Kaiser Aluminum and Chemical Corporation found at Docket No. 2598.

the Puget Sound Proceeding will not prejudice Clark.

*See* Objection of the Debtor and Debtor in Possession Kaiser Aluminum and Chemical Corporation to Motion of Public Utility District No. 1 of Clark County for Limited Relief from the Automatic Stay (D.I. 644) (dated July 16, 2002) (Docket No. 795) at ¶ 38 (emphasis added).  In a final blow to Clark's attempts to maintain its full panoply of non-bankruptcy rights in the Puget Sound Proceeding, Kaiser objected (on July 23, 2003) to Clark's request[4] to perfect its right to bring an appeal of the June 25th Decision rendered by FERC in the Puget Sound Proceeding,[5] which found that the issue of whether providers of electrical power in the Pacific Northwest charged unjust and unreasonable rates was simply too complicated to untangle and, therefore, no refunds would be awarded.[6]  The Bankruptcy Court granted Kaiser's objection and denied Clark's motion for relief on July 23, 2003.  FERC never reached the decision of whether Kaiser was a seller of power and Clark was never able to argue that Kaiser sold power without FERC's authorization.

Of equal importance, Clark's Unauthorized Sale Claim is distinct from the claims asserted in the Puget Sound Proceedings.  Clark's Unauthorized Sale Claim is based on a completely different legal cause of action (Clark need not prove that the rates Kaiser charged were unjust and unreasonable) and a different remedy (not refunds for charges in excess of unjust rates, but disgorgement of all profit).  In order to compel Kaiser to disgorge profits, there only needs to be a finding that Kaiser sold power without FERC's authority.  Kaiser has made it clear in SEC filings and Annual Reports that it did sell power and has not demonstrated or referred to any evidence that suggests that its power sales were legally authorized.

---

[4]     *See* Emergency Motion of Public Utility District No. 1 of Clark County for Limited Relief from the Automatic Stay (Docket No. 2598) (dated July 18, 2003).

[5]     *See* Objection of Debtor and Debtor in Possession Kaiser Aluminum & Chemical Corporation to Emergency Motion of Public Utility District No. 1 of Clark County for Limited Relief from the Automatic Stay (Docket No. 2612).

[6]     FERC chose not to issue any refunds because it did not want to untangle the complex transactions that had taken place among numerous participating parties and the adverse consequences such action would have on the market. FERC specifically ruled that "even if prices were unjust and unreasonable, it is not possible to fashion a remedy that would be equitable to all the participants in the Pacific Northwest market." 103 FERC ¶ 61,348, at P 53 (2003).

In light of Kaiser's repeated waffling -- urging Clark to file its proofs of claim and wait for the claims resolution process, while simultaneously arguing that the Puget Sound Proceeding would be the determinative forum, yet objecting to all of Clark's claims and objecting to all of Clark's requests to participate in that forum -- its current *res judicata* argument is disingenuous.  As Clark noted in its response to Kaiser's objection to its claims, Kaiser should be bound by the Puget Sound Proceeding in this claims resolution process to the same extent it has argued Clark should be bound. The Puget Sound Proceeding did not make any legal determinations of Clark's claims on the merits and, therefore, does not have *res judicata* effect as to any of Clark's claims.

3.    Clark will Suffer Irreparable Harm if a Stay is not Granted

Kaiser responds to Clark's assertions that Clark will suffer irreparable harm if the Motion to Stay is not granted by arguing, among other things, that only FERC can grant the relief Clark requests.  Not only does such a position completely contradict prior arguments Kaiser made to prevent Clark from going to FERC, but it misses the point.  The purpose of the Motion to Withdraw is so that the significant issues under the FPA raised by Clark's claims -- including whether the FERC is the exclusive forum for resolution -- can be decided by this Court or FERC, as this Court sees fit.  Indeed, 28 U.S.C. § 157(d) was designed to have such issues decided by an Article III court and not an Article I court, such as the Bankruptcy Court.  Clark will suffer irreparable harm if the Bankruptcy Court adversely decides the Claims Objection before this Court rules on the Motion to Withdraw notwithstanding Congress' clear intention to have the issues raised in the Motion to Withdraw decided by an Article III court.

4.    Kaiser will not be Harmed by a Stay

Kaiser's argument that it will be harmed by a stay because it might delay a portion of distributions to other creditors is absurd.  First, Kaiser's Plan is *designed* to allow distributions to

creditors whose claims Kaiser does not challenge, while reserving sufficient stock for those whose claims Kaiser does oppose. To say Kaiser would suffer prejudice as a result of a Plan provision it engineered is disingenuous. In any event, Kaiser carefully crafts its argument in this regard to hide the fact that it does not know when distributions will be made to creditors. Indeed, distributions cannot be made until the confirmation order, if entered, becomes final and all the conditions necessary for the occurrence of the Effective Date are satisfied. At a minimum, then, the Effective Date can be no sooner than January 21, 2006, assuming the Bankruptcy Court enters the confirmation order the final day of the confirmation hearing (January 10, 2006) and each of the numerous conditions precedent have been satisfied or waived. There is, therefore, sufficient time for this Court to Withdraw the Reference and determine if it or FERC will resolve Clark's claims.

5.    The Public Interest is Better Served by Imposition of a Stay

Kaiser incomprehensively argues that the public interest is not implicated by the Motion to Stay because only the FERC can decide the issue. As stated above, that position is inconsistent with Kaiser's prior assertions that Clark's claims are simple bankruptcy claims that could be decided by the Bankruptcy Court. In addition, the public interest is best served in having an Article III court decide the issue of whether FERC should resolve the matter or, if the District Court is so inclined, to decide the issue itself. Finally, the public interest is best served by having all the facts and circumstances surrounding market manipulation and dysfunctions in the Pacific Northwest in the Summer of 2001 known to entities with the authority to and jurisdiction to rectify it -- either the District Court or FERC.

## IV.
## CONCLUSION

For all of the foregoing reasons, Clark respectfully further requests entry of an Order: (i) staying all proceedings in Kaiser's bankruptcy case related to its Claims Objection; and (ii) granting

such other relief as is just and proper.

Dated: Wilmington, Delaware
        December 22, 2005

JASPAN SCHLESINGER & HOFFMAN LLP

Frederick B. Rosner
Frederick B. Rosner (ID No. 3995)
913 North Market Street 12th Floor
Wilmington, DE 19801
Tel: (302) 351-8000
Fax: (302) 351-8010

BRACEWELL & GUILIANI LLP

William A. Wood, III, Esq.
(Texas Bar ID 21916050)
*Pro Hac Vice Application pending*
711 Louisiana Street, Suite 2300
Houston, Texas 77002-2781
Tel: (713) 223-2300
Fax: (713) 221-1212

George H. Williams, Esq.
2000 K Street, N.W., Suite 500
Washington, DC 20006
Phone: (202) 828-5800
Fax: (202) 223-1225

and

THACHER PROFFITT & WOOD LLP

Christopher F. Graham, Esq.
Louis A. Curcio, Esq.
Two World Financial Center
New York, New York 10281
Tel: (212) 912-7400
Fax: (212) 912-7751

*Counsel to Public Utility District No. 1 of Clark
County d/b/a Clark Public Utilities*
