# Exhibit 1

Case 1:05-cv-00836-JJF   Document 16-2   Filed 12/22/2005   Page 1 of 16

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: | § Jointly Administered |
| | § Case No. 02-10429 (JKF) |
| KAISER ALUMINUM CORPORATION | § |
| A Delaware Corporation, *et al.*, | § |
| | § |
| Debtors. | § Chapter 11 |
| | § |
| KAISER ALUMINUM & CHEMICAL | § |
| CORPORATION, | § Hearing Date: 01/12/06 @ 9:00 a.m. |
| | § (telephonic) |
| Movant, | § Response Date: 12/22/05 |
| | § Re: Docket No. 7480 |
| vs. | § |
| | § |
| PUBLIC UTILITY NO. 1 OF CLARK | § |
| COUNTY, d/b/a/ CLARK PUBLIC | § |
| UTILITIES, | § |
| | § |
| Respondent. | § |

**BRIEF IN SUPPORT OF RESPONSE AND OBJECTION TO THE MOTION OF
DEBTOR AND DEBTOR IN POSSESSION KAISER ALUMINUM & CHEMICAL
CORPORATION FOR SUMMARY JUDGMENT REGARDING ITS
VERIFIED MOTION FOR AN ORDER DISALLOWING CLAIMS
FILED BY CLARK PUBLIC UTILITIES [DOCKET NO. 7480]**

Frederick B. Rosner (ID No. 3995)
JASPAN SCHLESINGER & HOFFMAN LLP
913 North Market Street 12th Floor
Wilmington, DE 19801
Tel: (302) 351-8000
Fax: (302) 351-8010

William A. Wood, III, Esq. (TX 21916050)
Marcy E. Kurtz (TX 11768600)
BRACEWELL & GIULIANI LLP
711 Louisiana Street, Suite 2300
Houston, Texas 77002-2781
Tel: (713) 223-2300
Fax: (713) 221-1212

Christopher F. Graham, Esq.
Louis A. Curcio, Esq.

                        THACHER PROFFITT & WOOD LLP
                        Two World Financial Center
                        New York, New York 10281
                        Tel: (212) 912-7400
                        Fax: (212) 912-7751

                        *Counsel to Public Utility District No. 1 of*
                        *Clark County d/b/a Clark Public Utilities*

# I.
# SUMMARY[1]

Kaiser's motion for summary judgment fails on its face because Kaiser has failed to meet its initial burden to show that there are no genuine issues of material fact for this Court to determine regarding the allowance or disallowance of Clark's proofs of claims. Among other factual contentions that Kaiser misrepresents, Clark disputes Kaiser's factual assertion that Clark lost on the merits of the Unreasonable Rate Claims before the FERC. Clark also disputes Kaiser's factual assertions that there was a hearing on the merits on Clark's Unauthorized Sale Claim in the Puget Sound Proceeding or that the Unauthorized Sale Claim could have been brought in the Puget Sound Proceeding in the first place. Finally, Clark disputes Kaiser's factual assertion that it did not sell electric power to Clark under the terms of the agreement between Kaiser and Clark. Accordingly, there are substantial and genuine issues of material fact in dispute in this matter, and summary judgment is not appropriate.

Kaiser has filed its Motion for Summary Judgment based upon the premise that the commonly known Puget Sound Proceeding, and FERC's June 25, 2003 order in that proceeding, is *res judicata* as to the two proofs of claim that Clark has filed in this bankruptcy case (previously referred to as the "Unreasonable Rate Claim" and the "Unauthorized Sale Claim"). According to Kaiser, "the FERC's decision constitutes a final judgment on the merits of the Unreasonable Rate Claim and precludes any attempt by Clark to litigate the Unauthorized Sale Claim," and this Court should disallow and expunge those claims. (Debtor's Brief at 3). This begs the question, what exactly did FERC order that would cause Clark's two proofs of claims to be disallowed and expunged without further legal consideration? Answer: FERC did not issue

---

[1] The Affidavit of James L. Sanders in Support of Response and Brief of Clark Public Utilities to Kaiser's Motion for Summary Judgment is included with this Brief and is hereafter cited as the "Clark Dec."

an order that resolved the merits of the issues raised by the parties to the Puget Sound Proceeding, but found only that "Based on the totality of the circumstances . . . we conclude that, even if prices were unjust and unreasonable, the directing of refunds in this proceeding would not result in an equitable resolution of the matter. Accordingly, we will not require refunds and terminate this matter without further proceedings." (Clark Dec. at ¶ 32, Exh. 12 at P 53). There is no ruling whatsoever, even a general one such as the foregoing, that remotely addresses whether Kaiser sold electric power to Clark. Moreover, the Puget Sound Proceeding was opened and conducted solely to try issues related to whether unjust and unreasonable rates were charged for spot market bilateral sales in the Pacific Northwest for the period December 25, 2000 through June 20, 2001. (Clark Dec. at ¶¶ 20-21, Exhs. 5 & 6). Thus, Kaiser's Motion for Summary Judgment is predicated only upon the ambiguities of the June 25, 2003 Order (which made no specific findings as to just or reasonable rates in general or as to Clark in particular) and the erroneous belief that the Order, which specifically only addressed market rates, is effective to bar the Unauthorized Sale Claim (which raises the issue of Kaiser's act of making an unauthorized sale of electric power to Clark). As such, Kaiser's legal arguments regarding the *res judicata* effect of the Puget Sound Proceeding fail as must its Motion for Summary Judgment.

## II.
## SUMMARY JUDGMENT STANDARD

The Court may only grant a motion for summary judgment when there is no issue of material fact and the moving party is entitled to a judgment as a matter of law. Fed R. Civ. P. 56(c). The moving party has the burden to show that no genuine issue of material fact exists in its dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 2553 (1986); *U.S. v. Reve*, 241 F. Supp. 2d 470, 475 (D.N.J. 2003). Once the movant has carried its burden, the burden then shifts to the non-movant to show that there is a genuine issue of material fact for trial and

the summary judgment should not be granted. *Celotex Corp.*, 106 S. Ct. at 2553; *Reve*, 241 F. Supp. 2d at 475. If the moving party meets its burden, then the non-movant must set forth specific facts showing the existence of the genuine issue for trial. *Celotex Corp.*, 106 S. Ct. at 2553; *Reve*, 241 F. Supp. 2d at 475.

The substantive law underlying each of the claims and issues identifies which facts are material. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 106 S. Ct. 2505, 2510 (1986). If any such facts are genuinely in dispute, summary judgment is inappropriate. *See id.* ("summary judgment will not lie if the dispute about a material fact is 'genuine'"). A factual dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* At summary judgment stage, the Court's function is not to weigh the evidence and determine the truth of the matter, but only to determine if there is a genuine issue of material fact for trial. *Id.* at 249. The Court must make all factual inferences in favor of a party opposing the motion. *Burtch v. Ganz (In re Mushroom Transp. Co., Inc.)*, 382 F.3d 325, 335 (3d Cir. 2004) (quoting *Fields v. Thompson Printing Co., Inc.*, 363 F.3d 259, 265 (3d Cir. 2004)); *Abraham v. Raso*, 183 F.3d 279, 287 (3d Cir. 1999).

A. **The Debtor's Motion for Summary Judgment Should Be Denied Because There Are Disputed Issues of Material Fact.**

Kaiser has failed to meet its burden of substantiating the lack of any material facts for this court to decide. Also, the only affidavit is biased and from an insider. There is no certification of the true and correct copies of any FERC documents provided by the Debtor to support its Motion for Summary Judgment. Rather, Kaiser has chosen to rely on its own pleadings previously filed in this case as factual support. (Debtor's Brief at n.1). It is beyond all logic that the "facts" of this case would be undisputed simply because they previously appear in the movant's own pleadings and unverified and unsubstantiated supporting documents. Clark has

vehemently objected to Kaiser's allegations each time they have been previously asserted to this Court and has vigorously defended its own opposing position in this case at all times.

The movant's own pleadings cannot possibly operate to set up undisputed material facts. The Debtor primarily cites to its own objection to the Clark's motion for limited relief from the automatic stay (docket 795) and the Declaration of Joseph Patrick Hoerner (the "Hoerner Dec."), which is attached thereto as Exhibit A and all related attachments in support of it's own Motion for Summary Judgment. Their affidavit however is self-serving and, as "evidence," should be weighted accordingly. It was prepared by an employee of Kaiser to support an objection to a motion for relief from stay filed by Clark. The motion for summary judgment standard requires all evidence of the movant to be construed in a light most favorable to the non-movant. *In re Mushroom Transp. Co., Inc.*, 382 F. at 335

Taken in context, the evidence supplied by the Debtor in support of its motion for Summary Judgment cannot meet the Debtor's burden to show that there are no material issues of disputed fact left for this Court to resolve. Therefore, the Debtor's Motion for Summary Judgment fails to meet its burden and should be denied.

1.  **Kaiser Sold Electric Power to Clark.**

Kaiser incorrectly asserts that it did not engage in a sale of power to Clark during the period at issue, and claims that the Bonneville Power Administration ("BPA") elected to sell Clark electric power. (Debtor's Brief at 6-8). However, the documentary evidence alone proves that Kaiser engaged in a sale of power to Clark. Not only does the evidence show that Kaiser controlled the transaction for sale of electric power as to Clark, Kaiser profited substantially from this sale.

Clark is a customer-owned municipal corporation operating under the laws of the state of Washington and providing electricity to approximately 170,000 customers throughout Clark County, Washington. (Clark Dec. at ¶ 3). In 1981, Clark entered into a power contract with the BPA, which expired on June 30, 2001. (Clark Dec. at ¶ 4). In the year 2000, Clark sought to purchase power beyond June 30, 2001. Due to an internal accounting change, BPA would only offer Clark a net requirements contract beginning on October 1, 2001. (Clark Dec. at ¶ 5). Clark was able to find power for the month of July, but faced a looming two-month gap (August and September 2001) in its supply portfolio. (Clark Dec. at ¶ 6). Because of the well publicized and documented volatility in the energy market in early 2001, as well as the prospect that the rates for electrical power could go even higher in August and September 2001, Clark was compelled to fill this gap as soon as possible. (Clark Dec. at ¶ 7).

Consequently, on February 2, 2001, Clark entered into a remarketing letter agreement (the "Remarketing Agreement") with Kaiser. (Clark Dec. at ¶ 8, Exh. 1). Under the Remarketing Agreement, Clark committed to purchase from Kaiser 140 Megawatts of power for the period August 1, 2001 through September 30, 2001, at the rate of $325 per Megawatt hour (the "Transaction"). (Clark Dec. at ¶ 9). In order to meet its supply obligation under the Remarketing Agreement, Kaiser assigned some of its rights to jurisdictional power under a contract it maintained with BPA (the "BPA/Kaiser PSA," copy attached to Clark Dec. as Exh. 2). (Clark Dec. at ¶ 10).

Pursuant to Kaiser's direction and in accordance with the agreement between Kaiser and Clark, BPA delivered certain of Kaiser's excess power to Clark under terms and conditions set by Kaiser.[2] (Clark Dec. at ¶ 11). To complete the Kaiser Transaction, BPA entered into two

---

[2] This excess power was subject to FERC's jurisdiction. Under Section 18(b)(2) of the

confirmation agreements, one with Clark (the "Clark Confirmation Agreement," copy attached to Clark Dec. as Exh. 3) and another with Kaiser (the "Kaiser Confirmation Agreement," copy attached to Clark Dec. as Exh. 4) confirming the terms agreed to by Kaiser and Clark in the Remarketing Agreement. (Clark Dec. at ¶ 12). The Clark Confirmation Agreement stipulated that Clark would pay $64,080,603 to BPA on March 28, 2001 for the remarketed Kaiser power. (Clark Dec. at ¶ 13, Exh. 3 at 2). Thereafter, in accordance with the Kaiser Confirmation Agreement, BPA would transfer $59,842,404 to Kaiser, with the balance of $4,238,199 to be retained by BPA to cover the costs to Kaiser of the remarketed Kaiser power. (Clark Dec. at ¶, 14, Exh. 4 at 1). Kaiser was responsible for the costs of transmitting the remarketed Kaiser power to Clark. (Clark Dec. at ¶ 15, Exh. 4 at 2). Kaiser's actions constitute nothing less than a sale of electric power to Clark. Kaiser orchestrated the transaction and reaped a profit; clearly, it was a seller. However, to the extent that Kaiser avers that it did not sell electric power to Clark, then the issue of whether Kaiser was a seller of electric power is a disputed issue of material fact that must be resolved.

As a consequence of the extraordinarily high price Clark paid for Kaiser's power, Clark was forced to raise rates to its customers by twenty percent. Kaiser, on the other hand, profited $59,842,404 from the Transaction. (Clark Dec. at ¶ 17). Kaiser's strong interest in retaining this $60 million in profit is most certainly motivating the Debtor to take the aggressive posture it has in this bankruptcy case.

---

BPA/Kaiser PSA, Kaiser had the right to elect to remarket excess power it did not use by finding its own purchaser for such excess power or by requesting that BPA find a purchaser. (*See* BPA/Kaiser PSA at § 18(b)(2)). If Kaiser found its own purchaser -- as it did in finding Clark -- BPA had a first option to repurchase the power. *Id.* at § 18(b)(4)(B). However, if BPA did not exercise that option, BPA was required to deliver the power to Kaiser's purchaser on Kaiser's terms and conditions. BPA did not exercise its option of repurchasing Kaiser's excess power and was therefore obligated to follow Kaiser's direction and allow Kaiser to sell its excess power to Clark.

### 2. Kaiser Misrepresents the Findings of FERC's June 25th Order.

Kaiser misrepresents FERC's findings of fact and conclusions of law contained in the June 25, 2003 Order. Specifically, FERC did not make a finding on the merits of Clark's Unreasonable Rate Claim, and it further did not make any specific finding or issue any ruling that the rate Kaiser charged to Clark was reasonable. These are the issues that must be decided in the claims allowance process and they raise material disputed facts. Instead, FERC only stated, "Based on the totality of the circumstances . . ., we conclude that, even if prices were unjust and unreasonable, the directing of refunds in this proceeding would not result in an equitable resolution of the matter. Accordingly, we will not require refunds and terminate this matter without further proceedings." (Clark Dec. at ¶ 32, Exh. 12 at P 53). Moreover, FERC did not consider and did not rule on the merits of Clark's Unauthorized Sale Claim – because that claim was not before the FERC in the Puget Sound Proceeding and was a separate cause of action from the reasonableness of rates issue tried before FERC. Clark's claims and the exact nature of the Puget Sound Proceeding are described below.

Likewise, Clark also disputes Kaiser's factual assertions that there was a hearing on the merits on Clark's Unauthorized Sale Claim in the Puget Sound Proceeding or that the Unauthorized Rate Claim placed the legal question before FERC of whether Kaiser was a "seller" of power (Debtor's Brief at 3.). As outlined below, the Puget Sound Proceeding did not consider the issue of whether specific parties were "authorized" sellers under the Federal Power Act ("FPA"), and did not invite such specific arguments for trial. (Clark Dec. at ¶ 21, Exh. 6). Moreover, the June 25th Order did not make a general finding of whether any parties were authorized sellers under the FPA, nor did the Order make a finding that Kaiser was or was not a seller under the FPA. It simply did not consider or address such an issue. (Clark Dec. at ¶ 32, Exh. 12 at P 53). Thus, Kaiser's factual contention that the issue of whether Kaiser was an

authorized seller was considered by the FERC as part of Clark's Unreasonable Rate Claim – or that the FERC considered the merits of the Unreasonable Sale Claim as part of the Puget Sound Proceeding – is a disputed issue of material fact.

Clark has two claims against Kaiser. First, Clark has a claim against Kaiser for Kaiser's unauthorized sale of power to Clark, which is governed by sections 201 and 205 of the FPA. Second, Clark has a claim against Kaiser for the unjust and unreasonable rate Kaiser charged Clark for the power it sold to Clark, which is governed by section 205 of the FPA. Clark preserved its claims in Kaiser's bankruptcy case by filing two proofs of claim on or before the bar date. Kaiser has objected to both proofs of claim in the Claims Objection.

      a.    ***Clark's Unauthorized Sale of Power Claim.***

On January 30, 2003, Clark filed Claim No. 7245 (the "Unauthorized Sale Claim"), alleging that Kaiser violated the FPA when it sold Clark 140 Megawatts of power for the period August 1, 2001 through September 30, 2001. (Clark Dec. at ¶ 27, Exh. 10). This power sale was subject to FERC's jurisdiction as a "sale of electric energy at wholesale in interstate commerce" under Section 201(b)(1) of the FPA. 16 U.S.C. § 824(b)(1). As such, the Transaction was subject to notice and authorization requirements under the FPA. Kaiser's sale of the power violated the FPA by not complying with Section 205(c), which requires public utilities[3] to file schedules "showing all rates and charges for any . . . sale subject to the jurisdiction of the Commission, and the classifications, practices, and regulations affecting such rates and charges, together with all contracts which in any manner affect or relate to such rates, charges, classifications, and services." 16 U.S.C. § 824d(c). (Clark Dec. at ¶ 28). Kaiser also did not

---

[3] A "public utility" is an entity (not otherwise exempt, such as a state or federal instrumentality) that engages in jurisdictional activity under the FPA. 16 U.S.C. § 824(e)-(f). Because Kaiser is not otherwise exempt, it is a public utility for purposes of this proceeding.

comply with Section 205(d), which requires FERC approval of a rate or charge before it can go into effect. 16 U.S.C. § 824d(d). (Clark Dec. at ¶ 29).

Contrary to the allegations in Kaiser's Motion for Summary Judgment, the Puget Sound Proceeding has nothing to do with Kaiser's unauthorized sale of power that forms the basis for Claim No. 7245. The Puget Sound Proceeding only concerns whether market dysfunctions in the Pacific Northwest resulted in "unjust and unreasonable" rates being charged by sellers in jurisdictional sales. (Clark Dec. at ¶¶ 20-21). *See Puget Sound Energy, Inc.,* 96 FERC ¶ 63,044, at 65,300 (2001). The Puget Sound Proceeding does *not* address whether sellers such as Kaiser were authorized to make "jurisdictional" power sales in the first place. *Id.*

As set forth in the Unauthorized Sale Claim, Kaiser made a "jurisdictional" power sale to Clark by assigning Clark its rights to receive power from the BPA under the BPA/Kaiser PSA. According to FERC opinions, a customer such as Kaiser makes a "jurisdictional" sale of power when such customer reduces its power purchases from one party, such as the BPA, and then redirects that jurisdictional power (or assigns the rights to such jurisdictional power) to another party, such as Clark, under terms set by the customer (i.e., Kaiser). *See Removing Obstacles to Increased Electric Generation and Natural Gas Supply in the Western United States,* 94 FERC ¶ 61,272, at 61,972 (Mar. 14, 2001), *order on rehearing,* 95 FERC ¶ 61,225, at 61,771 (May 16, 2001), *order on rehearing,* 96 FERC ¶ 61,155, at 61,678-79 (Jul. 27, 2001) ("Removing Obstacles Orders").

The appropriate remedy for the unauthorized sale of power is for the seller to disgorge to the buyer all revenues in excess of costs. *See Cent. Maine Power Co.,* 56 FERC ¶ 61,200, at 61,817-18 (1991), *rehearing denied in part,* 57 FERC ¶ 61,083, at 61,304 (1991) (announcing that FERC would strictly enforce its filing requirement and ensure compliance by requiring

sellers that did not meet such requirements to refund all amounts collected in excess of costs); *see also Prior Notice and Filing Requirements Under Part II of the Federal Power Act,* 64 FERC ¶ 61,139, at 61,979-80 (1993), *order on rehearing,* 65 FERC ¶ 61,081 (1993) (implementing, for failure to timely file market based rates, a remedy of disgorgement of the time value of the revenues collected for the time period during which the rate was collected without FERC's authorization). In this case, due to the instability of the West Coast and Pacific Northwest power markets in 2001, Clark paid $64,080,603 to Kaiser for power that cost Kaiser only $4,200,000. (Clark Dec. at ¶ 16). As such, Clark is entitled to a claim for disgorgement of $59,706,317 plus interest of $4,010,000, as of February 12, 2002, the date Kaiser filed its bankruptcy petition (the "Petition Date") for a total of $63,716,317. (Clark Dec. at ¶ 18).

    b.  *Clark's Claim Based Upon Kaiser's Unjust and Unreasonable Rates.*

On January 30, 2003, Clark also filed claim no. 3122, seeking a refund of the unjust and unreasonable rate Kaiser charged Clark for power (the "Unreasonable Rate Claim"). (Clark Dec. at ¶ 30, Exh. 11). The Unreasonable Rate Claim alleges that the $325 per Megawatt hour that Kaiser charged Clark was an unjust and unreasonable rate under the FPA and FERC regulations. (Clark Dec. at ¶ 31). The legal determination of whether a seller of electrical power has charged a just and reasonable rate under the FPA falls within FERC'S exclusive jurisdiction.[4] Clark asked FERC to determine whether the rate that Kaiser charged Clark was just and reasonable under the FPA, as a participant in the "Puget Sound Proceeding" (to the extent this Court has allowed Clark to participate in that proceeding) that is described below.

---

[4] Federal Courts have exclusive jurisdiction over violations of the FPA. *See Cal. Ex. Rel Lockyer v. Transcanada Power, L.P.*, 110 Federal Appx. 839, 841 (9th Cir. Oct. 12, 2004) (citing 16 U.S.C. § 825p). Within the federal courts, FERC itself has the "exclusive authority to determine the reasonableness of wholesale [electricity] rates" under the FPA. 16 U.S.C. § 824(a) & (c); *Cal. Ex. Rel. Lockyer,* 110 Fed. Appx. at 841.

### c. *The Scope of the Puget Sound Proceeding.*

On or about October 26, 2000, Puget Sound Energy Inc., another utility company affected by electrical power market volatility in the Pacific Northwest, filed a complaint with FERC pursuant to Section 206 of the FPA for an order capping the prices for power and capacity sales in the Pacific Northwest during the period of December 1, 2000 through June 20, 2001. This action was captioned *Puget Sound Energy, Inc. v. All Jurisdictional Sellers of Energy and/or Capacity at Wholesale Into Electric Energy and/or Capacity Markets in the Pacific Northwest, Including Parties to the Western Pool Agreement,* Docket No. EL01-10-000, *et al.* In response to this complaint, FERC instituted a generic proceeding (the "Puget Sound Proceeding") to determine whether sellers of electrical power in the Pacific Northwest charged buyers unjust and unreasonable rates for such power and to determine the just and reasonable rate (a so-called "ceiling price") for all spot market sales in the Pacific Northwest from December 2000 through June 2001.[5] (Clark Dec. at ¶ 19). On July 25, 2001, FERC ordered "a preliminary evidentiary proceeding" to explore settlement and to establish "the extent of potential refunds."[6] (Clark Dec. at ¶ 20, Exh. 5). Clark intervened in the Puget Sound Proceeding on August 7, 2001 (FERC granted the motion to intervene on August 21, 2001) and alleged that Kaiser charged Clark unjust and unreasonable rates for the power it purchased from Kaiser pursuant to the Remarketing Agreement. (Clark Dec. at ¶ 22). Clark sought an order from FERC requiring Kaiser to pay to Clark a refund in an amount equal to the excess price charged by Kaiser over just and reasonable electricity rates. (Clark Dec. at ¶ 22). However,

---

[5] Exactly what constitutes a "spot market sale" was left for resolution in the *Puget Sound Proceeding.*
[6] San Diego Gas & Electric, 96 FERC ¶61,120, at 61,520 (July 25, 2002).

FERC did not take up the issue of whether Kaiser was an authorized Seller under the FPA; this issue was outside the ambit of the general Puget Sound Proceeding. (Clark Dec. at ¶ 32).

On December 19, 2002, the Commissioners of FERC issued an Order on Motions to Reopen Evidentiary Record (the "December 19th Order") in the Puget Sound Proceeding, which reopened that proceeding for the submission of additional evidence. (Clark Dec. at ¶ 24, Exh. 8). FERC issued the December 19th Order because new information regarding alleged intentional manipulation of the western power markets had come to light since the record in the Puget Sound Proceeding was closed by FERC. (Clark Dec. at ¶ 25). Clark was only able to participate in the new evidentiary submission to a very limited degree because of restrictions imposed by this Court.[7] (Clark Dec. at ¶ 26, Exh. 9).

On June 25, 2003, FERC issued a decision terminating the Puget Sound Proceedings and denying refunds to any party based on the broad view that FERC considered it impossible to order a remedy that would be equitable to all entities that participated in the Pacific Northwest market (the "June 25th Decision Order"). *Puget Sound Energy, Inc.*, 103 FERC ¶ 61,348, at P 35 (2003). (Clark Dec. at ¶ 32, Exh. 12). FERC's decision did not address the specifics of Clark's claim against Kaiser. Notably, the June 25th Decision Order arising out of the Puget Sound Proceeding has not resolved the issue. Currently, the June 25th Decision Order sits before the

---

[7] After the December 19th Order was issued, on January 7, 2003, Clark filed an Emergency Motion for Limited Relief from the Automatic Stay Protecting Kaiser to permit Clark to conduct additional discovery and submit modified proposed findings of fact in the Puget Sound Proceedings. The Bankruptcy Court denied Clark's emergency motion, but allowed Clark to seek clarification from FERC as to whether the December 19th Order applied to Clark's claims against Kaiser. On February 23, 2003 FERC clarified that it would be appropriate for Clark to seek additional discovery, which the bankruptcy court allowed, but greatly curtailed. Clark's discovery was generally limited to Clark's transaction with Kaiser. Furthermore, the Bankruptcy Court allowed Kaiser to comment on Clark's discovery before it was filed with FERC and accepted all of Kaiser's comments and revisions. *See* Docket No. 2000.

Court of Appeals for the Ninth Circuit. *See Puget Sound Energy, Inc. v. All Jurisdictional Sellers of Energy and/or Capacity at Wholesale into Electric Energy and/or Capacity Markets in the Pacific Northwest, Including Parties to the Western Systems Power Pool Agreement,* 103 FERC ¶ 61,348 (2003), *order denying rehearing,* 105 FERC ¶ 61,183 (2003), *order denying request for rehearing,* 106 FERC ¶ 61,109 (2004), *appeal docketed,* No. 03-74139 (9th Cir. Nov. 14, 2003).

Clark is not a party to the appeal, because the Bankruptcy Court did not permit Clark to file a request for a rehearing with FERC (*see* Docket No. 2616), which is a prerequisite to an appeal. *See* 16 U.S.C. § 8251 (2004). This does not, however, preclude Clark from benefitting as an affected entity under any FERC order on remand from the Ninth Circuit if it grants the appeal of the Puget Sound Proceeding. Therefore, Clark's Unreasonable Rate Claim must be preserved until such time as FERC both decides that the Clark/Kaiser transaction is properly before it in the Puget Sound proceeding and establishes the just and reasonable rate or the Ninth Circuit upholds the June 25th Decision. The simple fact that the Ninth Circuit has not yet ruled or even that it may not rule in a manner favorable to Clark is not, in itself, a basis for deciding that the Unreasonable Rate Claim should be summarily dismissed by this Court.[8]

### IV.
### RES JUDICATA IS IMPROPER

A.   **Kaiser Misunderstands the Availability and Application of the Doctrine of *Res Judicata* in Administrative Law Proceedings Before FERC.**

Kaiser has mischaracterized Clark's argument on the issue of *res judicata*. According to Kaiser, "Clark's principal argument that the Unauthorized Sale Claim is not precluded is Clark's

---

[8] If anything, this Court should either abstain from deciding the Unreasonable Rate Claim until such time as the appeal of the June 25th Order becomes final or conduct its own claim estimation hearing if it elects not to abstain. Dismissal of a claim by the Court is simply not the appropriate legal remedy for the impatience of a party.

HOUSTON\1916028                                    15