erroneous assertion that *res judicata* somehow does not apply in FERC proceedings." (Debtor's Brief at 4). Kaiser goes on to recite and to assert that there is a plethora of authority that unquestionably establishes that the common law of doctrine of *res judicata* applies to FERC proceedings. (*See* Debtor's Brief at 4). Apparently, Kaiser would have this Court believe that because there is a doctrine of *res judicata* that may be applied in FERC proceedings that, therefore, *res judicata* would inevitably bar the Unauthorized Sale Claim. This argument is logically incorrect. Of course, Kaiser would have to show that whatever doctrine of *res judicata* is applied by FERC would act to bar the Unauthorized Sale Claim; it is has not done so.

Clark does not assert that notions of *res judicata* do not apply before FERC, but that they do not apply with the same force or effect as in non-FERC fora. Rather, Clark has argued consistently that *res judicata* – per FERC – does not act to bar the Unauthorized Sale Claim in this case. Furthermore, what Clark has consistently argued is that the common law doctrine of *res judicata* as applied to Article III courts, does not apply before the FERC. It is Kaiser, not Clark, who is attempting to adopt the common law doctrine of *res judicata* onto FERC's use of *res judicata* in its own proceedings. For example, Kaiser cites to the Supreme Court decision *U.S. v Utah Construction and Mining Company*. Quoting that case, Kaiser argues "When an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it, which the parties have had an adequate opportunity to litigate, the Courts have not hesitated to apply *res judicata* to enforce repose." (Debtor's Brief at 16 (citing U.S. *Utah Construction & Mining Company*, 384 US 394, 422 (1966)).

What Kaiser presupposes, or hopes that this Court will assume, is that the *Utah* Supreme Court decision applies here. It does not. Most notably, the Puget Sound Proceeding did not resolve disputed issues of fact properly before it. The Puget Sound Proceeding determined only

that it could not resolve the disputed issues of fact before it and that resolution of such issues would be complicated: "even if prices were unjust and unreasonable, the directing of refunds in this proceeding would not result in an equitable resolution of the matter." (Clark Dec. at Exh. 12 at P 53). Also, the Puget Sound proceeding did not give the parties, including Clark, an adequate opportunity to litigate all of their claims that they may have arising from the sale of electric power during the applicable period. To substantiate this fact, this Court need only look to FERC's order issued August 23, 2001, in which FERC ordered that the following issues were to be tried in the Puget Sound proceedings:

> 1.    What where "spot market bilateral sales" in the Pacific Northwest as defined in the Pacific Northwest Electric Power Planning and Conversion Act, 16 U.S.C. § 839a(14), during the period beginning December 25, 2000 through June 20, 2001?

> 2.    May unjust and unreasonable rates have been charged for spot market bilateral sales in the Pacific Northwest for the period December 25, 2000 through June 20, 2001?

> 3.    Are refunds lawful or appropriate for a spot market bilateral sales transaction in the Pacific Northwest for the period December 25, 2000 through June 20, 2001 and what is the extent of any potential refund?

(Clark Dec. at ¶ 21, Exh. 6, Order on Issues Docket Nos. EL01-10-000, EL01-10-001). Therefore the only issue that the Puget Sound proceedings sought to conclude was whether during the period of December 25, through July 20, there were unreasonable rates charged in the Pacific Northwest Spot Bilateral Market. FERC did not open the Puget Sound proceeding to the issue of whether certain sellers of energy during that time period were authorized under the FPA. *Id.*

**B.     The Elements of *Res Judicata* Before FERC Are Not Satisfied and the Unauthorized Sale Claim Is Not Precluded by the Puget Sound Proceeding.**

A claim is barred in a FERC proceeding by administrative *res judicata* if: (1) the prior

proceeding involved the same cause of action as the current proceeding; (2) the same parties are involved in those proceedings; and, (3) there is a final judgment on the merits in the previous action. *Williams Natural Gas*, 83 FERC 63, 015 at P65, 116 (1998). Kaiser cites to this standard in its brief but then completely ignores these proper elements in its analysis and argument and instead, cites to Third Circuit and other case law that interpret the common law doctrine of *res judicata* as applied in Article III Courts. The better method for this Court, in fact the correct method for this Court, to decide the issue of whether *res judicata* even applies in FERC to bar the claims of Clark in this case, would be to look to FERC rulings on *res judicata*.

1.     **The Unauthorized Sale Claim Is Not Precluded by Res Judicata.**

The doctrine of *res judicata* does not preclude Clark from bringing its Unauthorized Sale Claim. Kaiser's *res judicata* argument is built upon FERC's denial of relief in the *Puget Sound* case of claims that sellers charged unjust and unreasonable rates in the Pacific Northwest. The unauthorized sale claim constitutes <u>a different cause of action</u> than the claim that was heard in the *Puget Sound* case, and thus does not satisfy the most fundamental requirement for *res judicata* application. Nor can it be argued that Clark could have brought the claim in the Puget Sound case. Clark was specifically precluded by the Bankruptcy Court from raising the unauthorized sale claim at FERC.

Furthermore, the doctrine of *res judicata* does not apply to FERC in the same manner as it does to Article III courts. As an administrative agency charged with implementing a statute, FERC acts in the public interest. Hence, FERC cases typically involve more than just the litigants to the case; they also involve the consideration of the public interest. Thus, the doctrine of *res judicata*, which only contemplates the dispute between the litigants immediately at bar, does not apply in the same way to FERC as it does to Article III courts. Moreover, when FERC

does determine that *res judicata* applies, it applies principles of *res judicata* more flexibly than would an Article III court. *See* Clark-Cowlitz Joint Operating Agency v. FERC, 826 F.2d 1074, 1080 n.5, en banc (D.C. Cir. 1987), *cert. denied*, 485 U.S. 913 (1988) (stating, regarding the application of res judicata to FERC proceedings, "as a general matter preclusion principles are to be applied more flexibly to administrative adjudications than to judicial proceedings.") Given these circumstances, FERC – not an outside enterprise such as Kaiser or this court – must decide whether and how this flexibility will be applied in a particular case.

a.      *Unauthorized Sale Claim Constitutes a Separate Cause of Action*

Clark's unauthorized sale claim is not precluded under principles of *res judicata* because the claim has never been presented to, much less decided by, FERC. At FERC, a claim is barred by administrative *res judicata* only if, *inter alia*, "the prior proceeding involved the same cause of action as the current proceeding." *Williams Natural Gas Co.*, 83 FERC ¶ 63,015, at p. 65,116 (1998) quoting *Williams Natural Gas Co.*, 72 FERC ¶ 63,006, at p. 65,135 (1995); *Panhandle Eastern Pipe Line Co.* 38 FERC ¶ 63,030, at p. 65,204 (1987). In one of the cases cited by Kaiser, *Lake Murray Docks, Inc. v. South Carolina Elec. & Gas Co.*, 57 FERC ¶ 61,320 (1991), FERC lays out the test it follows to determine "whether successive proceedings involve the same cause of action." FERC will consider "[1] whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; [2] whether substantially the same evidence is presented in the two actions; [3] whether the two suits involve infringement of the same right...." *Id.* at 62,037 (citing *Greensboro Lumber Co. v. Rayle Elec. Membership Corp.*, 40 FERC ¶ 61,283, at p. 61,918 (1987)).

The unauthorized sale claim constitutes a different cause of action than the unjust and unreasonable rate claim that was at issue in the *Puget Sound* case. The two claims call upon

different elements of the Federal Power Act. The unjust and unreasonable claim, from *Puget Sound*, is premised on the notion that FERC is responsible, under Section 205(a) of the Federal Power Act, to ensure that rates charged for authorized, jurisdictional sales of power are "just and reasonable." 16 U.S.C. § 824d(a) (2004). That determination by FERC involves a host of competing considerations to assure that the rates are as low as possible to the buyer, yet provide a reasonable return to the seller. *FPC v. United Gas Pipeline Co.*, 386 U.S. 237, 243 (1967) ("one of [the FPC's] statutory duties is to determine just and reasonable rates which will be sufficient to permit a company to recover its costs of service and a reasonable return on its investment.")

The unauthorized sale claim, on the other hand, works from an entirely different premise–*i.e.*, that the sale was not authorized in the first place. This claim derives from Section 201(a) of the Act, which declares that the business of selling electric energy is affected with a public interest and is subject to federal (FERC) jurisdiction, as well as from Section 205(c), which requires jurisdictional sellers of power to file a schedule of rates for such sale with the Commission. 16 U.S.C. §§ 824a__, 824d(c) (2004). And the remedy sought is quite different: FERC's remedy for an unauthorized sale is complete disgorgement of seller profits -- quite different from the seller/buyer balancing involved in determining just and reasonable rates. Moreover, unauthorized sales involve a measure of FERC-process enforcement (to assure respect for the requirement to seek authorization) not involved in the just and reasonable action. *See El Paso*, 105 FERC ¶ 61,131 at P 36 (2003) ("We do not consider failure to file jurisdictional agreements to be a de minimus violation of Section 205."); *Pacificorp*, 60 FERC ¶ 61,292 at p. 62,036 (1992) ("[T]he prior notice and filing requirement is intended to facilitate the Commission's responsibilities under Section 205 of the FPA to ensure that all rates and charges

for jurisdictional service are just and reasonable and not unduly discriminatory.")

Laying the two claims against FERC's cause of action test yields the following. Hearing the Unauthorized Sale Claim would not destroy nor impair any rights or interests established in the *Puget Sound* case. The only decision FERC made in *Puget Sound* was that, even if prices charged for spot market sales in the Pacific Northwest during the period at issue were unjust and unreasonable, an issue which FERC declined to decide, it was impossible to order refunds in a manner equitable to all the parties involved and, thus, FERC declined to do so. *Puget Sound Energy, Inc.*, 103 FERC ¶ 61,348, at PP 35, 53 (2003). That has nothing to do with whether Kaiser had authority to make the sale in the first place. For FERC to consider whether to subject Kaiser, and only Kaiser, to a remedy of disgorgement for selling power to Clark without FERC authorization to do so, in no way violates any rights conferred by *Puget Sound*.

Different evidence would be presented in a case addressing the unauthorized sale claim. Namely, the evidence would show that Kaiser made the sale without the required authorization. This evidence was not presented in the *Puget Sound* case.

As noted above, the complaint based on the unauthorized sale claim would involve the infringement of a completely separate right than that which was at issue in the *Puget Sound* case. The right at issue in *Puget Sound* was the right of the purchasers of power to buy power at just and reasonable rates. In contrast, the right at issue under this claim is the right to buy power from an entity authorized to sell that power. This is a right that stems from a totally separate section of the Federal Power Act.

Thus, under FERC's own test for determining whether one claim is based on the same cause of action as another claim, Clark's unauthorized sale claim is not based on the same cause of action as the unjust and unreasonable rate claim pursued in *Puget Sound*. The claim is,

therefore, not precluded by *res judicata*.

> b.   *Clark Could Not Have Raised the Unauthorized Sale Claim in the Puget Sound Case.*

Kaiser repeatedly states that because Clark *could have* brought the unauthorized sale claim in the context of the *Puget Sound* proceeding, it is precluded from doing so now. In fact, Clark was not able to bring the claim during *Puget Sound*.

Once Clark became aware of the fact that Kaiser lacked market rate authority for its sale to Clark, after Kaiser had filed for bankruptcy (Clark Dec. at ¶ 34), Clark sought relief from the automatic stay in order to file its unauthorized sale claim with FERC. Kaiser vehemently opposed Clark's efforts and the bankruptcy court denied relief to Clark. As a consequence, and as a direct result of Kaiser's own actions, Clark could not have brought the Unauthorized Sale Claim to FERC. To argue that Clark is now precluded from bringing this claim because it could have done so earlier, when Clark in fact tried to bring the claim and was denied permission to do so, turns the rationale behind the "could have been brought" rule on its head and produces a grossly inequitable result for Clark.

## C.   FERC Must Determine Whether *Res Judicata* Applies.

FERC, not the bankruptcy court, should decide the issue of whether *res judicata* precludes Clark's unauthorized sale claim. While FERC *may* apply the doctrine of *res judicata* if FERC determines that it is appropriate to do so, FERC is not bound to apply the doctrine and, in any event, to date has not done so here. Again, as an administrative agency, FERC acts in the public interest. Therefore, FERC proceedings, including *Puget Sound*, involve more than simply the parties to the proceeding. FERC has the responsibility to do more than just adjudicate parties' interests. It must also consider the impact on the public interest when it considers whether to apply *res judicata*. No other entity or institution other than FERC can make this

determination – not Kaiser, and not this Court.  *See, e.g., Trunkline LNG Co. v. FERC*, 921 F.2d 313 (D.C. Cir. 1990) ("we think it plain, however, that the issue and claim preclusive effects of prior FERC proceedings are matters which FERC should consider in the first instance….")

Moreover, while the doctrine may apply to FERC decisions under the appropriate circumstances, it is applicable in a more flexible way, as noted by courts and evidenced by FERC's own decisions.  As discussed in Clark's reply regarding its motion to withdraw the reference, and ignored by Kaiser in its brief on its motion for summary judgment, the D.C. Circuit has said that "as a general matter preclusion principles are to be applied more flexibly to administrative adjudications than to judicial proceedings."  *Clark-Cowlitz Joint Operating Agency v. FERC*, 826 F.2d 1074, 1080 n.5, *en banc* (D.C. Cir. 1987), *cert. denied*, 485 U.S. 913 (1988).

That *res judicata* applies to FERC more flexibly than to Article III courts has been reiterated by FERC itself.  In *Utah Power & Light Co.*, 27 FERC ¶ 61,258 (1984), FERC stated that "it is a truism that *res judicata* has only limited application in administrative proceedings, and will be applied only where the reasons for its existence are present in full force."  *Id*. at p. 61,485.  In *Utah Power*, FERC determined that "we cannot find such reasons here.  Although the issue … was previously litigated, we are faced in this proceeding with a new rate increase application and, more importantly, new evidence on the issue."  *Id*.  FERC went on to explain that "although it is fair in the context of a civil proceeding to bar the same parties from relitigating the same issue, we find no justice here in precluding Sierra from obtaining a Commission opinion on the substantial new evidence that it has offered…."  *Id*. at p. 61,485-61,486.

The cases cited by Kaiser for the proposition that *res judicata* applies to FERC

demonstrate the same flexible approach. In *Williams Natural Gas Co.*, 83 FERC ¶ 63,015 (1998), which concerned natural gas pipelines' recovery of costs through transportation contracts, FERC acknowledged that its final determination regarding Williams' prudence in entering into certain contracts would have preclusive effect for the parties involved in that case. However, FERC clarified that its own order and subsequent rulings "contemplated cost recovery for contracts that remain eligible based on a pipeline's ongoing efforts to renegotiate its contract and to minimize its costs," and that its earlier determination as to prudence "will have no *res judicata* effect regarding Williams' ongoing efforts at contract reformation nor on Williams' ongoing cost minimization efforts." *Id.* at p. 65,121. Both *Utah Power* and *Williams* show that while FERC applies *res judicata* where appropriate, the unique nature of the types of proceedings that FERC adjudicates require that the traditional rules of *res judicata* be applied more flexibly than would be the case in regular Article III courts.

Similarly, in *Southwest Gas Corp. and Paiute Pipeline Co.*, 44 FERC ¶ 61,165, at p. 61,546 (1988), FERC distinguished the case at bar, which was barred by *res judicata*, from other cases, in which "significant changes occurred that made the doctrine of *res judicata* inappropriate because the changes served to alter the basis on which the original decisions were made" (referring to *Utah Power*, discussed above, and to *Montana Power Co.*, 5 FERC ¶ 61,212 (1978)). Likewise, in *Algonquin Gas Transmission Co.*, 64 FERC ¶ 63,014, at p. 65,052 (1993), FERC distinguished parties to an earlier rate proceeding, who were barred under *res judicata* from relitigating an issue with the pipeline company that arose there, from parties involved in a new rate proceeding, who were not precluded from litigating the same issue against the same pipeline company.[9] Again, the unique nature of the cases brought before FERC requires that

---

[9] The quote Kaiser selects from *Algonquin Gas*, which states that "Colonial and Providence are barred now under res judicata [sic] from attempting to relitigate a burden of proof question here," actually

FERC apply *res judicata*, when appropriate to do so, in a more flexible manner than would an Article III court.

In its response to Clark's motion to withdraw the reference, Kaiser cited to several FERC cases as examples of instances where FERC employed a policy against parties relitigating issues. *See Alamito Co.*, 43 FERC ¶ 61,274 (1988); *Gaviota Terminal Co.*, 75 FERC ¶ 63,008 (1996); *Cent. Kansas Power Co.*, 5 FERC ¶ 61,291 (1978). In its brief, Kaiser expands on its interpretation of these cases to argue that FERC's policy against relitigation of issues acts as a backstop when *res judicata* is unavailable. However, in none of those cases does FERC state this premise. FERC's only mention of *res judicata* in these cases is to explain that its decisions are based not on *res judicata*, but on this policy.[10] Rather than evidencing an established procedure whereby FERC first tries to apply *res judicata* and then, if it cannot do so, applies the policy against relitigation, these cases instead demonstrate the flexible nature of FERC's use of *res judicata*: FERC may decide to apply the doctrine when it would be appropriate under the circumstances, or it may decide to apply its own policy. The decision is FERC's to make.

Kaiser goes on to selectively quote from another FERC case: "the Commission has held that [*res judicata* and collateral estoppel] ... may apply in appropriate circumstances in Commission proceedings, and the Commission has held that, as a matter of policy, relitigation of

---

refers to the parties to the earlier proceeding. FERC found that the parties involved in *this* case were not barred from litigating the issue of burden of proof. Kaiser mistakenly termed Colonial and Providence "the plaintiffs."

[10] Kaiser notes the circumstances present in each of those cases that, according to Kaiser, prohibited FERC from applying *res judicata*, and required FERC to resort to the anti-relitigation policy. Regarding *Central Kansas*, Kaiser quotes "a final Commission decision had not been issued in Docket No. E-8755." Docket No. E-8755, however, was not the docket at issue in this Central Kansas case. Rather, it was the docket number for the earlier Central Kansas rate case that prompted first the Presiding Judge, and then the full Commission affirming his decision, to conclude that certain issues common to both proceedings should not be decided again due to concerns for administrative efficiency. *Central Kansas*, 5 FERC at p. 61,121. So this quote fails to serve the purpose for which Kaiser selected it – to show that since the case was not yet final, FERC could not apply *res judicata* and had to resort to its own policies – and merely states the procedural posture of an earlier case.

issues already decided on the merits is not sound administrative practice." *Iroquois Gas Transmission System, L.P.*, 87 FERC ¶ 61,268, at p. 62,092 (1999) (emphasis added). Kaiser constructs from *Iroquois* the same two-step test for determining whether to adjudicate a claim that simply does not exist at FERC. Again, the flexibility FERC employs in determining whether to hear a claim is broader than Kaiser suggests. *Res judicata*, as it applies to FERC, and FERC's policy against relitigation are separate methods for determining whether to examine an issue, not two parts of a set formula of inquiry. FERC may decide – "in appropriate circumstances" – not to hear a claim based on *res judicata*, or it may decide based on the relitigation policy, whichever it deems appropriate.[11]

Furthermore, Kaiser neglected to include in its brief the next sentence in *Iroquois*: "however, these policies apply only where the issues were fully litigated and decided on the merits, and no new evidence or new circumstances would justify relitigation." *Iroquois*, 87 FERC at p. 62,092. In Clark's case, the issue at hand – that the sale of power by Kaiser was unauthorized – was not only not fully litigated, it was not litigated at all, and the fact of Kaiser's lack of authorization constitutes new evidence that was not heard in the *Puget Sound* case.

In any event, whether or not *res judicata* would apply to the Unauthorized Sale Claim <u>is FERC's determination to make</u>. Clark is not attempting to bring the Unauthorized Sale Claim in this court or the district court; rather, Clark simply wants to bring the claim in its rightful jurisdictional home – FERC. FERC should have the opportunity to decide whether Clark is able

---

[11] The *Iroquois* case cites for support FERC's decision in *Transcontinental Gas Pipe Line Corp.*, 85 FERC ¶ 61,357 (1998). In that decision, FERC determined both that *res judicata* did not apply at all, and that even if it did apply, the cause of action at bar was different from that litigated previously. FERC stated that "*res judicata* generally does not bar relitigation of issues in rate cases based on new facts or arguments." *Id*. at p. 62,386. *See also San Diego Gas & Elec. Co.*, 86 FERC ¶ 61,253, 61,912 (1999) ("Res judicata does not apply here. This doctrine generally does not bar litigation of the justness and reasonableness of rates based on new facts … or arguments, as is the case here….")

to bring the claim, based on the rationale it deems appropriate under the circumstances, whether that be *res judicata* or administrative concerns. It is not for this court to ascertain whether and how FERC would apply the doctrine of *res judicata* to the Unauthorized Sale Claim.

**D.    Kaiser's Argument Regarding Clark's Decision Not to Appeal the Denials of Its Various Motions to Lift Stay Is Irrelevant.**

Finally, Kaiser's makes much to do about nothing regarding this Court's denial of its numerous motions to lift the automatic stay, and Clark's decisions not to appeal those rulings. Kaiser implies that the non-appeal of these orders, in particular, this Court's order related to Clark's motion to lift the stay to allow Clark to bring its unauthorized sale claim (Docket No. 1090), constitutes a waiver of Clark's right to fully litigate its claims before the FERC. However, this is clearly a red herring argument and demonstrates a complete misunderstanding of the law. The denial of a motion to lift stay is generally an interlocutory order from which parties need not appeal. This is particularly true in the circumstance of this Court's order denying Clark's motion for relief from stay to bring the Unauthorized Sale Claim (Docket No. 1090). The Court issued that Order without findings of fact and without prejudice. *See* Order at Docket No. 1090. To the contrary, Clark was within its rights to wait for the claims objection process to resolve such a claim. Even if Clark made the decision not to appeal this Court's various orders denying its stay requests, such a decision does not alter the fact that it was Kaiser, the Committee and this Court's very orders that blocked Clark from fully litigating its claims before FERC. To argue that these claims are now barred by *res judicata* because there was a trial on the merits is illogical, unequitable and untrue.

**V.**
**KAISER INAPPROPRIATELY SEEKS TO END RIPE LITIGATION**

Kaiser argues that Clark's Unreasonable Rate Claim should be wholly disallowed

because, in Kaiser's clearly biased view, it is "highly unlikely" that the Ninth Circuit will reverse and remand the PSC (Debtor's Brief at 4). Kaiser also argues that Clark should simply sit on its rights with respect to its claims against Kaiser because to do otherwise stymies this "Court's efforts to end the litigation." *Id.*

The first argument totally lacks merit and demonstrates some lack of understanding of basic bankruptcy law. If Kaiser were able to truly demonstrate that some actual harm has resulted or could result for the Debtor because of the Ninth Circuit's delay in issuing a ruling, the appropriate remedy for the Debtor would be to request a claim estimation hearing–not a dismissal of the claim in its entirety. The latter would clearly deny Clark due process.

Kaiser's second argument is not only baseless, it is arrogant and offensive. The argument is baseless as there simply is no law even remotely suggesting that Clark should not pursue its claims against Kaiser simply because that would make life easier for Kaiser–which is essentially Kaiser's argument. Moreover, the argument is crafted in such a way as to imply that the Court would or should on Kaiser's request abdicate its legal duties to fully and fairly consider ripe legal issues so as not to inconvenience Kaiser with unwanted litigation.

Clark has filed two proofs of claim. They each assert claims against Kaiser that are ripe for consideration and which have not been previously decided by this or any other Court. However unwanted these claims may be for Kaiser, it should (finally) be forced to address them on the merits. The claims allowance process in this Court is precisely the proper forum for this to occur.

## VII.
## CONCLUSION

Public Utility District No. 1 of Clark County d/b/a Clark Public Utilities requests that this Court deny the Motion of Debtor and Debtor in Possession Kaiser Aluminum & Chemical

Corporation for Summary Judgment Regarding its Verified Motion for an Order Disallowing Claims Filed by Clark Public Utilities and grant any other relief to which Clark Public Utilities may be entitled at law or at equity.

Respectfully submitted:

December 22, 2005

JASPAN SCHLESINGER & HOFFMAN LLP

Frederick B. Rosner
Frederick B. Rosner (No. 3995)
913 North Market Street 12th Floor
Wilmington, DE 19801
Tel: (302) 351-8000
Fax: (302) 351-8010

and

BRACEWELL & GIULIANI LLP

William A. Wood, III, Esq.
(Texas Bar ID 21916050)
711 Louisiana Street, Suite 2300
Houston, Texas 77002-2781
Tel: (713) 223-2300
Fax: (713) 221-1212

George H. Williams, Esq.
2000 K Street, N.W., Suite 500
Washington, DC 20006
Phone: (202) 828-5800
Fax: (202) 223-1225

and

THACHER PROFFITT & WOOD LLP

Christopher F. Graham, Esq.
Louis A. Curcio, Esq.
Two World Financial Center
New York, New York 10281

Tel: (212) 912-7400
Fax: (212) 912-7751

*Counsel to Public Utility District No. 1 of
Clark County d/b/a Clark Public Utilities*