Exhibit 4

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | |
| | : | Chapter 11 |
| KAISER ALUMINUM CORPORATION, | : | Case No. 02-10429 (JKF) |
| A Delaware Corporation, et al., | : | |
| | : | Jointly Administered |
| Debtors. | : | |

---

| | | |
|---|---|---|
| KAISER ALUMINUM & CHEMICAL | : | |
| CORPORATION, | : | |
| | : | |
| Movant, | : | |
| | : | |
| v. | : | **Objection Deadline: Pursuant to Local District Court Rules** |
| | : | |
| PUBLIC UTILITY NO. 1 OF CLARK | : | |
| COUNTY, d/b/a CLARK PUBLIC | : | |
| UTILITIES, | : | |
| | : | |
| Respondent. | : | |

## RESPONDENT'S BRIEF IN SUPPORT OF
## MOTION TO WITHDRAW THE REFERENCE OF THE DEBTORS'
## MOTION FOR AN ORDER DISALLOWING CLAIMS [Docket No. 7480]
## FILED BY CLARK PUBLIC UTILITIES FROM THE UNITED STATES
## <u>BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE</u>

## TABLE OF CONTENTS

I. PRELIMINARY STATEMENT ......................................................................................2

II. JURISDICTION ......................................................................................................3

III. BACKGROUND ...................................................................................................4

    A.    The Clark/Kaiser Transaction.............................................................................4

    B.    Clark's Claims Against Kaiser Arising Out of the Transaction. .......................................5

        1.    Clark's Claim for the Unauthorized Sale of Power Claim. ..............................................6

        2.    Clark's Claim Based Upon Kaiser's Unjust and Unreasonable Rates. ...........................8

IV. RELIEF REQUESTED ..........................................................................................11

V. BASIS FOR RELIEF.............................................................................................11

    A.    The Motion Was Timely Filed. .....................................................................12

    B.    Withdrawal is Mandatory Under Section 157(d). ............................................12

        1.    Resolution of Clark's Claims Requires Consideration of the FPA ..............................13

        2.    Consideration of the Federal Power Act Is Substantial and Material...........................14

    C.    The District Court May Also Exercise Discretion and Withdraw the Reference.............17

VI. CONCLUSION ...................................................................................................20

## TABLE OF AUTHORITIES

**Cases**

Electrical District No. 1 v. FERC, 774 F.2d 490 (D.C. Cir. 1985) ..............................................16

Hatzel & Buehler, Inc. v. Orange & Rockland Utilities, Inc., 107 B.R. 34
    (D. Del. 1989).............................................................................................................12, 14

Holland Am. Ins. Co. v. Succession of Roy, 777 F.2d 992 (5th Cir. 1985)..................................18

In re CM Holdings, Inc., 221 B.R. 715 (D. Del. 1998) ...........................................................11, 13

In re Leedy Mortgage Co., Inc., 62 B.R. 303 (E.D. Pa. 1986) .........................................18, 19, 20

In re NDEP Corp., 203 B.R. 905 (D. Del. 1996)..........................................................................17

In re Oil Co., Inc., 140 B.R. 30 (E.D.N.Y. 1992)..........................................................................11

In re Pan Am Corp., et al., 163 B.R. 41 (S.D.N.Y. 1993) ............................................................18

In re Pittsburgh Corning Corp., 277 B.R. 74 (Bankr. W.D. Pa. 2002)...........................................18

In re Pruitt, 910 F.3d 1160 (3d Cir. 1990)....................................................................................17

In re Smith Corona Corp., SCM, 205 B.R. 712 (D. Del. 1996) .................................................3, 12

In re Texaco, Inc., 84 B.R. 911 (S.D.N.Y. 1988)..........................................................................14

In re White Motor Corp., 42 B.R. 693 (N.D. Ohio 1984) ..............................................................12

Mellon v. Del. & Hudson Ry. Co. (In re Del & Hudson Ry. Co.), 122 B.R. 887
    (D. Del. 1991)................................................................................................................17

**Statutes**

16 U.S.C §§ 824 & 825 ................................................................................................................2

16 U.S.C. § 791 ...........................................................................................................................2

16 U.S.C. § 824(b)(1)...............................................................................................................6, 13

16 U.S.C. § 824(c) ......................................................................................................................15

16 U.S.C. § 824(e)-(f)..................................................................................................................16

16 U.S.C. § 824d(a)......................................................................................................................16

16 U.S.C. § 824d(c)........................................................................................................................6

16 U.S.C. § 824d(d)........................................................................................................................6

16 U.S.C. § 824e(a)......................................................................................................................16

16 U.S.C. § 825l...........................................................................................................................10

16 U.S.C. § 825p............................................................................................................................8

28 U.S.C. §  157(d)........................................................................................................................2

28 U.S.C. § 1334(b) ..................................................................................................3

28 U.S.C. § 157(a) ....................................................................................................3

28 U.S.C. § 157(d) ...............................................1, 2, 3, 8, 11, 12, 13, 16, 17

16 U.S.C. § 824(a) ....................................................................................................8

**Rules**

Federal Rule of Bankruptcy Procedure 5011(a) .......................................................3

Delaware Local Rule of Bankruptcy Procedure 5011-1 ...........................................3

**Other Authorities**

105 FERC ¶ 61,183 (2003) ........................................................................................8

106 FERC ¶ 61,109 (2004) ........................................................................................8

57 FERC ¶ 61,083, at 61,304 (1991) .........................................................................7

65 FERC ¶ 61,081 (1993) ..........................................................................................7

84 FERC ¶ 61,020 (1998), aff'd, Automated Power Exchange, Inc. v. FERC, 204 F.3d 1144
    (D.C. Cir. 2000) .................................................................................................14

95 FERC ¶ 61,225, at 61.771 (May 16, 2001) ....................................................6, 14

96 FERC ¶ 61,155, at 61,678-79 (Jul. 27, 2001).................................................6, 14

Automated Power Exchange, Inc. , 82 FERC ¶ 61,287 ...........................................14

Cent. Maine Power Co., 56 FERC ¶ 61,200, at 61,817-18 (1991)............................7

Notice of Interim Procedures to Support Industry Reliability Efforts and Request for Comments,
    91 FERC ¶ 61,189 (2000)...................................................................................15

Prior Notice and Filing Requirements Under Part II of the Federal Power Act, 64 FERC ¶
    61,139, at 61,979-80 (1993) ..................................................................................7

Puget Sound Energy, Inc., 96 FERC ¶ 63,044, at 65,300 (2001)..........................7, 9

Removing Obstacles to Increased Electric Generation and Natural Gas Supply in the Western
    United States, 94 FERC ¶ 61,272, at 61,972 (Mar. 14, 2001).....................6, 14, 15

San Diego Gas & Electric, 96 FERC ¶61,120, at 61,520 (July 25, 2002).................9

Western Systems Power Pool Agreement, 103 FERC ¶ 61,348 (2003)................8, 10

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | |
| | : | Chapter 11 |
| KAISER ALUMINUM CORPORATION, | : | Case No. 02-10429 (JKF) |
| A Delaware Corporation, et al., | : | |
| | : | Jointly Administered |
| Debtors. | : | |

----------------------------------------

| | | |
|---|---|---|
| KAISER ALUMINUM & CHEMICAL | : | |
| CORPORATION, | : | |
| | : | |
| Movant, | : | |
| | : | |
| v. | : | **Objection Deadline: Pursuant to Local District Court Rules** |
| | : | |
| PUBLIC UTILITY NO. 1 OF CLARK | : | |
| COUNTY, d/b/a CLARK PUBLIC | : | |
| UTILITIES, | : | |
| | : | |
| Respondent. | : | |

## RESPONDENT'S BRIEF IN SUPPORT OF
## MOTION TO WITHDRAW THE REFERENCE OF THE DEBTORS'
## MOTION FOR AN ORDER DISALLOWING CLAIMS [Docket No. 7480]
## FILED BY CLARK PUBLIC UTILITIES FROM THE UNITED STATES
## BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE

Public Utility District No. 1 of Clark County d/b/a Clark Public Utilities ("Clark"), pursuant to 28 U.S.C. § 157(d), respectfully requests that the United States District Court for the District of Delaware (the "District Court") withdraw the automatic reference to the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") with respect to the proceeding commenced by debtor Kaiser Aluminum and Chemical Corporation's ("Kaiser") Motion for an Order Disallowing Claims Filed by Clark Public Utilities, filed on October 10, 2005 (Docket No. 7480) (copy attached as **Exh. 1**, the "Claims Objection"). Clark offers this Brief in support of its Motion to Withdraw the Reference (the "Motion").

1

# I.
## <u>PRELIMINARY STATEMENT</u>

In order to resolve the substantive issues underlying Clark's proofs of claim filed in this case, the Bankruptcy Court will have to delve deeply into the Federal Power Act. ("FPA") 16 U.S.C. § 791 *et seq.*[1] and certain regulations promulgated pursuant to the FPA by the Federal Energy Regulatory Commission, ("FERC"). Clark moves to withdraw to the District Court, the reference of jurisdiction over the substantive liquidation of its claims which is mandated by 28 U.S.C. § 157(d). In the alternative, Clark moves that the reference to the Bankruptcy Court be withdrawn under the District Court's discretion also pursuant to 28 U.S.C. § 157(d).

Clark has filed two claims against Kaiser arising out of a power sale transaction that occurred in February 2001 -- the height of the energy crisis on the West Coast and in the Pacific Northwest. First, Clark has a claim for "disgorgement" within the meaning of the FPA because Kaiser sold power to Clark without the requisite authority from FERC. Second, Clark is entitled to a "refund" within the meaning of the FPA for the unjust and unreasonable rate Kaiser charged Clark for the power Clark purchased from Kaiser. The precise substantive legal issues that must be decided to resolve these claims are whether Kaiser: (i) was a "seller" of power in a transaction governed by the FPA; (ii) sold power without authority; and (iii) charged an "unjust and unreasonable" rate for such power. Although Clark submits that Kaiser clearly was a seller of power without FERC authority and charged Clark an unjust and unreasonable rate, Clark acknowledges that these legal questions cannot be answered without substantial and material consideration of the FPA, particularly because Kaiser has taken the position both before the Bankruptcy Court and before FERC (in a "generic rate" proceeding referred to as the "Puget Sound Proceeding") that it was *not* a seller of power subject to the FPA and FERC. Therefore,

---

[1] Specifically. 16 U.S.C § § 824 & 825.

resolution of Clark's claims -- and hence the Claims Objection -- requires substantial and material consideration of the FPA, which must and should be performed by the District Court pursuant to 28 U.S.C. § 157(d).

## II.
## JURISDICTION

Under 28 U.S.C. § 1334(b), "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). Section 157(a) authorizes district courts to "provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district." 28 U.S.C. § 157(a). The District Court of Delaware has referred jurisdiction over all title 11 proceedings to the United States Bankruptcy Court pursuant to a Standing Order of Reference dated July 23, 1984.

However, jurisdiction is returned to the District Court by 28 U.S.C. § 157(d), which "provides two mechanisms, one mandatory and one discretionary, by which the referred proceeding can be withdrawn from the bankruptcy court and returned to the district court." *In re Smith Corona Corp., SCM*, 205 B.R. 712, 714 (D. Del. 1996). Further, Federal Rule of Bankruptcy Procedure 5011(a) states that "a motion for withdrawal of a case or proceeding shall be heard by a district judge." Local Rule of Bankruptcy Procedure 5011-1 states that "a motion to withdraw the reference of a matter or proceeding shall be filed with the Clerk."

## III.
## BACKGROUND[2]

A.    The Clark/Kaiser Transaction.

Clark is a customer-owned municipal corporation operating under the laws of the state of Washington and providing electricity to approximately 170,000 customers throughout Clark County, Washington. In 1981, Clark entered into a power contract with the Bonneville Power Administration ("BPA"), which expired on June 30, 2001. In the year 2000, Clark sought to purchase power from BPA beyond June 30, 2001. Due to an internal accounting change, BPA would only offer Clark a net requirements contract beginning on October 1, 2001. Clark was able to find power for the month of July, but faced a looming two-month gap (August and September 2001) in its supply portfolio. Because of the well publicized and documented volatility in the energy market in early 2001, as well as the prospect that the rates for electrical power could go even higher in August and September 2001, Clark was compelled to fill this gap as soon as possible. Consequently, on February 2, 2001, Clark entered into a remarketing letter agreement (the "Remarketing Agreement," copy attached as **Exh. 2**) with Kaiser. Under the Remarketing Agreement, Clark committed to purchase from Kaiser 140 Megawatts of power for the period August 1, 2001 through September 30, 2001, at the rate of $325 per Megawatt hour (the "Transaction").

In order to meet its supply obligation under the Remarketing Agreement, Kaiser assigned some of its rights to jurisdictional power under a contract it maintained with BPA (the "BPA/Kaiser PSA," copy attached as **Exh. 3**). Pursuant to Kaiser's direction, BPA delivered

---

[2] The procedural history surrounding Clark's claims against Kaiser is complex and need not, in Clark's view, be discussed here. In short, Clark sought relief from the automatic stay shortly after Kaiser filed for relief under the Bankruptcy Code. Clark's request was denied without prejudice and later, after Clark renewed its motion for relief, granted for the limited purpose of submitting certain additional discovery and facts to FERC in the Puget Sound Proceeding that is discussed in Section III(B)(2) below.

4

certain of Kaiser's excess power to Clark under terms and conditions set by Kaiser.[3]    To complete the Kaiser Transaction, BPA entered into two confirmation agreements, one with Clark (the "Clark Confirmation Agreement," copy attached as **Exh. 4**) and another with Kaiser (the "Kaiser Confirmation Agreement," copy attached as **Exh. 5**) confirming the terms agreed to by Kaiser and Clark in the Remarketing Agreement.  The Clark Confirmation Agreement stipulated that Clark would pay $64,080,603 to BPA on March 28, 2001 for the remarketed Kaiser power. *See* Exh. 4 at 2.  Thereafter, in accordance with the Kaiser Confirmation Agreement, BPA would transfer $59,842,404 to Kaiser, with the balance of $4,238,199 to be retained by BPA to cover the costs of the remarketed Kaiser power. *See* Exh. 5 at 1.  However, Kaiser was responsible for the costs of transmitting the remarketed Kaiser power to Clark. *See* Exh. 4 at 2.

As a consequence of the extraordinarily high price Clark paid for Kaiser's power, Clark was forced to raise rates to its customers by twenty percent.  Kaiser, on the other hand, profited $59,842,404 from the Transaction.

B.    Clark's Claims Against Kaiser Arising Out of the Transaction.

Clark has two claims against Kaiser arising out of the Transaction.  First, Clark has a claim against Kaiser for Kaiser's unauthorized sale of power to Clark, which is governed by sections 201 and 205 of the FPA.  Second, Clark has a claim against Kaiser for the unjust and unreasonable rate Kaiser charged Clark for the power it sold to Clark, which is governed by section 205 of the FPA.  Clark preserved its claims in Kaiser's bankruptcy case by filing its proofs of claim on or before the claim deadline.  Kaiser has objected to both proofs of claim in

---

[3] This excess jurisdictional power sale was subject to FERC's jurisdiction.  Under Section 18(b)(2) of the BPA/Kaiser PSA, Kaiser had the right to elect to remarket excess power it did not use by finding its own purchaser for such excess power or by requesting that BPA find a purchaser.  (*See* BPA/Kaiser PSA at § 18(b)(2))  If Kaiser found its own purchaser -- as it did in finding Clark -- BPA had a first option to repurchase the power. *Id.* at § 18(b)(4)(B).  However, if BPA did not exercise that option, BPA was required to deliver the power to Kaiser's purchaser on Kaiser's terms and conditions.  BPA did not exercise its option of repurchasing Kaiser's excess power and was therefore obligated to follow Kaiser's direction.

the Claims Objection.

      1.    *Clark's Claim for the Unauthorized Sale of Power Claim.*

      On January 30, 2003, Clark filed Claim No. 7245 (the "Unauthorized Sale Claim"; copy attached as **Exh. 6**), which alleges that Kaiser violated the FPA when it sold Clark 140 megawatts of power for the period August 1, 2001 through September 30, 2001. This power sale was subject to FERC's jurisdiction as a "sale of electric energy at wholesale in interstate commerce" under Section 201(b)(1) of the FPA. 16 U.S.C. § 824(b)(1). As such, it was subject to prior notice and authorization requirements under the FPA. Clark avers that Kaiser's sale of the power violated the FPA by not complying with Section 205(c), which requires public utilities[4] to file schedules "showing all rates and charges for any . . . sale subject to the jurisdiction of the Commission [FERC], and the classifications, practices, and regulations affecting such rates and charges, together with all contracts which in any manner affect or relate to such rates, charges, classifications, and services." 16 U.S.C. § 824d(c). Kaiser also did not comply with Section 205(d) of the FPA, which requires FERC approval of a rate or charge before it can go into effect. 16 U.S.C. § 824d(d).

      As set forth in the Unauthorized Sale Claim, Kaiser made a "jurisdictional" power sale to Clark by assigning Clark its rights to receive power from the BPA under the BPA/Kaiser PSA. According to FERC opinions, a customer such as Kaiser makes a "jurisdictional" sale of power when such customer reduces its power purchases from one party, such as the BPA, and then redirects that jurisdictional power (or assigns the rights to such jurisdictional power) to another party, such as Clark, under terms set by the customer (*i.e.,* Kaiser). *See Removing Obstacles to Increased Electric Generation and Natural Gas Supply in the Western United States*, 94 FERC ¶

---

    [4] A "public utility" is any entity (not otherwise exempt, such as a state or federal instrumentality) that engages in jurisdictional activity under the FPA 16 U.S.C. § 824(e)-(f) (2004). Because Kaiser is not otherwise exempt, it is a public utility subject to the FPA's requirements for purposes of this proceeding.

61,272, at 61,972 (Mar. 14, 2001), *order on rehearing*, 95 FERC ¶ 61,225, at 61,771 (May 16, 2001), *order on rehearing*, 96 FERC ¶ 61,155, at 61,678-79 (Jul. 27, 2001) ("Removing Obstacles Orders").

The appropriate remedy for the unauthorized sale of power is for the seller to disgorge to the buyer all revenues in excess of costs. *See Cent. Maine Power Co.*, 56 FERC ¶ 61,200, at 61,817-18 (1991), *rehearing denied in part*, 57 FERC ¶ 61,083, at 61,304 (1991) (announcing that FERC would strictly enforce its filing requirement and ensure compliance by requiring sellers that did not meet such requirements to refund all amounts collected in excess of costs); *see also Prior Notice and Filing Requirements Under Part II of the Federal Power Act*, 64 FERC ¶ 61,139, at 61,979-80 (1993), *order on rehearing*, 65 FERC ¶ 61,081 (1993) (implementing disgorgement remedy of revenues collected for time period during which rate was collected without FERC's authorization). In this case, due to the instability of the West Coast and Pacific Northwest power markets in 2001, Clark paid $64,080,603 to Kaiser for power that cost Kaiser only $4,200,000. As such, Clark is entitled to a claim for disgorgement of $59,706,317 plus interest of $4,010,000, as of February 12, 2002, the date Kaiser filed its bankruptcy petition (the "Petition Date") for a total of $63,716,317.[5]

Kaiser has claimed that BPA, not Kaiser, was the "seller" of jurisdictional power to Clark and argues that the Confirmation Agreement between Clark and BPA creates a sale by BPA to Clark. *Comments of Kaiser Aluminum & Chemical Corp.*, submitted in FERC Docket No. EL01-10 (Oct. 31, 2001), copy attached as **Exh. 7** at 4-5; *Prepared Answering Testimony of*

---

[5] Contrary to the allegations in Kaiser's Claims Objection, the Puget Sound Proceeding has nothing to do with Kaiser's unauthorized sale of power that forms the basis for proof of claim no. 7245. The Puget Sound Proceeding only concerns whether market dysfunctions in the Pacific Northwest resulted in "unjust and unreasonable" rates being charged by sellers in jurisdictional sales. *See Puget Sound Energy, Inc.*, 96 FERC ¶ 63,044, at 65,300 (2001). The Puget Sound Proceeding does *not* address whether sellers such as Kaiser were authorized to make "jurisdictional" power sales in the first place.

*Joseph P. Hoerner for Kaiser*, submitted in FERC Docket No. EL01-10 (Mar. 20, 2003), copy attached as **Exh. 8** at 5. Kaiser also asserts that it "cannot . . . resell federal power. " Exh. 7 at 4. In the alternative, Kaiser has argued that if the transaction took place between Kaiser and Clark, and not between BPA and Clark, Kaiser did not make a "sale" to Clark, but rather "reduce[d] its load," therefore never taking title to the power. Exh. 7 at 6. Yet, Kaiser admits receiving nearly $60 million from the power sale.

Legal resolution of the disparate arguments between Clark and Kaiser requires substantial and material interpretation and implementation of the FPA, FERC's prior rulings, FERC's rules, and the policy considerations surrounding the federally regulated energy market; such interpretation and implementation should be performed by the District Court pursuant to 28 U.S.C. § 157(d).

2.    *Clark's Claim Based Upon Kaiser's Unjust and Unreasonable Rates.*

On January 30, 2003, Clark also filed claim no. 3122, seeking a refund of the unjust and unreasonable rate Kaiser charged Clark for power, (the "Unreasonable Rate Claim"; copy attached as **Exh. 9**). The Unreasonable Rate Claim alleges that the $325 per Megawatt hour that Kaiser charged Clark was an unjust and unreasonable rate under the FPA and FERC regulations. The legal determination of whether a seller of electrical power has charged a just and reasonable rate under the FPA falls within FERC's exclusive jurisdiction.[6] The specific determination of whether the rate Kaiser charged Clark under the Transaction was just and reasonable is currently before the Court of Appeals for the Ninth Circuit. *See Puget Sound Energy, Inc. v. All Jurisdictional Sellers of Energy and/or Capacity at Wholesale into Electric Energy and/or*

---

[6] Federal Courts have exclusive jurisdiction over violations of the FPA. *See Cal Ex Rel Lockyer v Transcanada Power, L.P.*, 110 Federal Appx. 839, 841 (9th Cir. Oct. 12, 2004) (citing 16 U.S.C. § 825p). Within the federal courts, FERC itself has the "exclusive authority to determine the reasonableness of wholesale [electricity] rates" under the FPA. 16 U.S.C. § 824(a) & (c); *Cal. Ex. Rel. Lockyer,* 110 Fed. Appx. at 841.

*Capacity Markets in the Pacific Northwest, Including Parties to the Western Systems Power Pool Agreement,* 103 FERC ¶ 61,348 (2003), *order denying rehearing*, 105 FERC ¶ 61,183 (2003), *order denying request for rehearing*, 106 FERC ¶ 61,109 (2004), *appeal docketed*, No. 03-74139 (9th Cir. Nov. 14, 2003).

On or about October 26, 2000, Puget Sound Energy Inc., another utility company affected by electrical power market volatility in the Pacific Northwest, filed a complaint with FERC pursuant to Section 206 of the FPA for an order capping the prices for power and capacity sales in the Pacific Northwest during the period of December 1, 2000 through June 20, 2001. This action was captioned *Puget Sound Energy, Inc. v. All Jurisdictional Sellers of Energy and/or Capacity at Wholesale Into Electric Energy and/or Capacity Markets in the Pacific Northwest, Including Parties to the Western Pool Agreement,* Docket No. EL01-10-000, *et al.* In response to this complaint, FERC instituted a generic proceeding (the "Puget Sound Proceeding") to determine whether sellers of electrical power in the Pacific Northwest charged buyers unjust and unreasonable rates for such power and to determine the just and reasonable rate (a so-called "ceiling price") for all spot market sales in the Pacific Northwest from December 2000 through June 2001.[7]

Clark intervened in the Puget Sound Proceeding and alleged that Kaiser charged Clark unjust and unreasonable rates for the power it purchased from Kaiser pursuant to the Remarketing Agreement. Clark sought an order from FERC requiring Kaiser to pay to Clark a refund in an amount equal to the excess price charged by Kaiser over just and reasonable electricity rates.

---

[7] Exactly what constitutes a "spot market sale" was left for resolution in the *Puget Sound Proceeding.*

9

In 2001, FERC ordered "a preliminary evidentiary proceeding" to explore settlement and to establish "the extent of potential refunds."[8] The preliminary evidentiary proceeding was referred to an Administrative Law Judge, who ultimately closed the proceeding with a recommended finding that no refunds were justified because there was no market manipulation.[9] On December 19, 2002, the Commissioners of FERC issued an Order on Motions to Reopen Evidentiary Record (the "December 19th Order") in the Puget Sound Proceeding, which reopened that proceeding for the submission of additional evidence. FERC issued the December 19th Order because new information regarding alleged intentional manipulation of the western power markets had come to light since the record in the Puget Sound Proceeding was closed by the Administrative Law Judge. Clark was able to participate in the new evidentiary submission to a very limited degree.[10]

On June 25, 2003, FERC issued a decision terminating the Puget Sound Proceedings and denying refunds to any party based on the broad policy that FERC considered it impossible to order a remedy that would be equitable to all entities that participated in the Pacific Northwest market  *Puget Sound Energy, Inc.,* 103 FERC ¶ 61,348, at 62,367 (2003). FERC's decision did not address the specifics of Clark's claim against Kaiser. The Puget Sound Proceedings have been appealed to the Ninth Circuit. Clark is not a party to the appeal, because the Bankruptcy Court did not permit Clark to file a request for a rehearing with FERC (*see* Docket No. 2616),

_____

[8] San Diego Gas & Electric, 96 FERC ¶61,120, at 61,520 (July 25, 2002).

[9] 96 FERC ¶ 63,044, at 65,383-85 (2001). The Administrative Law Judge did not take up the issue of whether Kaiser was an authorized Seller under the FPA; this issue was outside the ambit of the general Puget Sound Proceeding.

[10] After the December 19th Order was issued, on January 7, 2003, Clark filed an Emergency Motion for Limited Relief from the Automatic Stay Protecting Kaiser to permit Clark to conduct additional discovery and submit modified proposed findings of fact in the Puget Sound Proceedings. The Bankruptcy Court denied Clark's emergency motion, but allowed Clark to seek clarification from FERC as to whether the December 19th Order applied to Clark's claims against Kaiser. On February 23, 2003 FERC clarified that it would be appropriate for Clark to seek additional discovery, which the bankruptcy court allowed, but greatly curtailed. Clark's discovery was generally limited to Clark's transaction with Kaiser. Furthermore, the Bankruptcy Court allowed Kaiser to comment on Clark's discovery and accepted all of Kaiser's comments and revisions. *See* Bankruptcy Case Docket No. 2000

which is a prerequisite to an appeal.  FPA § 313, 16 U.S.C. § 825l (2004).  This does not, however, effect Clark's right to relief as an affected entity under any FERC order on remand from the Ninth Circuit if it grants the appeal of the Puget Sound Proceeding.  Therefore, Clark submits that its Unreasonable Rate Claim must be decided by the District Court or preserved until such time as FERC both decides that the Transaction is properly before it in the Puget Sound proceeding and establishes the just and reasonable rate.

## IV.
## RELIEF REQUESTED

By this Motion, Clark seeks to withdraw the reference of jurisdiction to the Bankruptcy Court so that the Claims Objection will be heard and ruled upon, or referred to FERC, by the District Court.  The substance of the disputed claims is governed by federal non-bankruptcy law affecting interstate commerce: the FPA.  Withdrawal is appropriate in this case under both the permissive and mandatory standards in 28 U.S.C. § 157(d).

## V.
## BASIS FOR RELIEF

Section 157(d) of title 28 provides for both mandatory and permissive withdrawal of the reference.  Under the mandatory standard, section 157(d) provides that "[t]he district court *shall*, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce."  28 U.S.C. § 157(d) (emphasis added).  Section 157(d) also provides for permissive withdrawal: the "district court *may* withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown."  28 U.S.C. § 157(d) (emphasis added).

11

A.    The Motion Was Timely Filed.

Timeliness of a motion to withdraw a reference is governed from the point of time when the debtor filed its objection to Clark's claims. *See In re CM Holdings, Inc.*, 221 B.R. 715, 720 (D. Del. 1998); *In re Oil Co., Inc.*, 140 B.R. 30, 33 (E.D.N.Y. 1992) (finding that motion for withdrawal of reference made six weeks from time debtor filed its objection was timely filed). Kaiser filed its Claims Objection on October 10, 2005, and Clark's response deadline is October 25, 2005. This Motion was filed prior to the response deadline; as such, this Motion has been filed in a timely manner within the meaning of 28 U.S.C. § 157(d).

B.    Withdrawal is Mandatory Under Section 157(d).

Withdrawal of the reference over the Claims Objection is mandated by section 157(d). The District Court has noted that the mandatory withdrawal provision "requires . . . the withdrawal of a case or proceeding if resolution of that action necessitates consideration of Title 11 and non-Bankruptcy Code law which affects interstate commerce." *Hatzel & Buehler, Inc. v. Orange & Rockland Utilities, Inc*, 107 B.R. 34, 37 (D. Del. 1989) (mandatory withdrawal was required where the bankruptcy court would have been required to interpret provisions of OSHA and EPA regulations). This district has adopted the standard that withdrawal is mandatory if two conditions are met: (1) "consideration of non-Bankruptcy Code law is necessary for the *resolution* of a case or proceeding" and (2) "that substantial and material consideration of those non-bankruptcy statutes must be involved to resolve the proceeding." *Id.* at 38 (citing *In re White Motor Corp.*, 42 B.R. 693, 704 (N.D. Ohio 1984)). The District Court recognizes that "[a]pplication of this standard furthers the underlying policy of Section 157(d), which is to withdraw matters requiring the application of non-bankruptcy law from the relatively less experienced bankruptcy court to the more experienced district court." *In re Smith Corona Corp., SCM*, 205 B.R. 712, 714 (D. Del. 1996) (*citing In re St. Mary Hosp.*, 115 B.R. 495, 497 (E.D. Pa.

12

1990)).

1.    *Resolution of Clark's Claims Requires Consideration of the FPA*

In order to meet the first condition for mandatory withdrawal, "all that is required is a necessary consideration of Federal law outside the Bankruptcy Code to resolve the proceeding." *In re CM Holdings, Inc.* 221 B.R. 715, 721 (D. Del. 1998). Section 157(d) requires that the non-bankruptcy law regulate organizations or activities affecting interstate commerce. 28 U.S.C. § 157(d). For example, in the case of *In re CM Holdings*, the IRS moved to withdraw the reference of a claims objection filed against the IRS because the IRS' claims involved the applicability of two sections of the Federal Tax Code. 221 B.R. at 721. The *CM Holdings* court found that the first condition for mandatory withdrawal was met simply because "the Federal Tax Code must be consulted in order to determine the validity of the IRS' claims." *Id.*

Similarly here, both the Unauthorized Sale Claim and the Unreasonable Rate Claim can only be resolved after consulting the FPA and FERC decisions and regulations pursuant thereto. Indeed. whether Kaiser was a "seller," whether Kaiser was authorized to sell power, and whether the rate charged by Kaiser was "just and reasonable" are all issues that can only be decided after interpreting and considering the FPA and FERC regulations. As the Bankruptcy Court reasoned: "the appropriate place to take a look at whether this transaction is within FERC's jurisdiction and whether it really is a bilateral sales contract is [FERC]. They're the regulatory agency with the expertise and I really think the issue belongs there." *Transcript of* March 17, 2003 Hearing at 21-22. There is no question that the FPA is a federal non-bankruptcy law of the United States regulating interstate commerce under 28 U.S.C. § 157(d). The FPA applies to the "transmission of electric energy at wholesale in interstate commerce and to the sale of electric energy in interstate commerce." 16 U.S.C. § 824(b)(1). Thus, resolution of the claims objection meets the prima facie requirement of section 157(d).

2.    *Consideration of the Federal Power Act Is Substantial and Material.*

The reference must be withdrawn if consideration of the FPA is "substantial and material, such that there is a meaningful consideration of the federal law and not just a straightforward simple application of federal law to the facts of the case." *In re CM Holdings, Inc.* 221 B.R. at 721. Courts have recognized that "[t]he ambiguity of the phrase 'substantial and material consideration' leaves it open to dispute in each withdrawal of the reference proceeding." *In re Texaco, Inc.*, 84 B.R. 911, 921 (S.D.N.Y. 1988). As such, the District Court requires that the consideration of federal law is substantial and material for "issues requiring significant *interpretation* of federal laws that Congress would have intended to have decided by a district judge rather than by a bankruptcy judge." *Hatzel & Buehler, Inc.*, 107 B.R. at 38 (citing *In re Johns-Manville Corp.*, 63 B.R. 600, 602 (S.D.N.Y. 1986)). In *Hatzel & Buehler*, the District Court of Delaware granted a motion to withdraw the reference where the moving party demonstrated that the debtor violated applicable provisions of the Occupational Safety and Health Act and regulations of the Environmental Protection Agency. 107 B.R. at 39 ("in order to determine whether the [movant's] termination of the contract and subcontracts was not wrongful, this Court must necessarily interpret the OSHA and EPA regulations").

In this case, resolution of the Claims Objection rests solely on Clark and Kaiser's factual and legal arguments under the FPA and related FERC regulations. Pursuant to repeated FERC rulings, the remarketing of power is a "sale" within the jurisdiction of FERC. *See Removing Obstacles to Increased Electric Generation and Natural Gas Supply in the Western United States*, 94 FERC ¶ 61,272 (March 14, 2001), *order on rehearing,* 95 FERC ¶ 61,225 (May 16, 2001), *order on rehearing,* 96 FERC ¶ 61,155, at 678-79 (July 27, 2001) (collectively, all three orders are referred to as the "Removing Obstacle Orders"). FERC has also held that the entity that designates the buyer of power and determines the terms and conditions of the transaction is

14

the jurisdictional seller of power at issue. *See Automated Power Exchange, Inc.* , 82 FERC ¶ 61,287 ("APX"), *reh. denied* 84 FERC ¶ 61,020 (1998), *aff'd, Automated Power Exchange, Inc v. FERC,* 204 F.3d 1144 (D.C. Cir. 2000).[11] Here, Kaiser designated the purchaser, Clark, determined the terms and conditions (price, delivery etc.) under which the power sale would be made, *and* realized a $59.7 million profit for such sale. Consequently, Kaiser's assignment and release of the power due to it under the BPA/Kaiser PSA to Clark constituted a "sale" under the FPA subject to FERC's jurisdiction in which Kaiser is the seller. *See Notice of Interim Procedures to Support Industry Reliability Efforts and Request for Comments,* 91 FERC ¶ 61,189 (2000) and the Removing Obstacles Orders, (specifically 94 FERC at 61,972), (secondary market releases [involving a sale by a customer of the right to receive power] are subject to FERC's jurisdiction.)[12] Although Clark believes there is no doubt that Kaiser was a seller of power within the meaning of the FPA, this factual and legal decision can be made only after the FPA is interpreted in light of FERC's decisions set forth above. Clark submits that such interpretation will be "substantial and material" as set forth in the decisions of *In re CM Holdings, Inc.* and *Hatzel & Buehler, Inc.*

Resolution of Clark's Unauthorized Sale Claim also requires interpretation and application of Section 205(c) of the FPA, which requires "public utilities" to file schedules showing all rates and charges for any . . . or sale subject to the jurisdiction of FERC, and the

---

[11] As noted previously, Kaiser has vigorously argued that it was not a "seller" of power within the meaning of the FPA because it merely remarketed the BPA's power and obtained a "credit" from the BPA for doing so. However, the issue whether Kaiser was a seller of power under the FPA has never been decided by FERC or an ALJ. FERC has not ruled on whether Kaiser was a seller of power in the Puget Sound Proceeding because that proceeding focused on the determination of just and reasonable rates for the interested parties.

[12] Kaiser has also admitted it "sold" power in the Pacific Northwest. *See* Kaiser's Statement of Consolidated Income issued on April 12, 2002 which reports $229.2 million in "net gains from power *sales*" during 2001 (emphasis added) (copy attached as **Exh. 10**); *see also* Kaiser's 2000 annual report on page 4 which states in part "Recognizing the opportunity provided by skyrocketing energy prices in western North America, the company aggressively curtailed smelting capacity in the Pacific Northwest, executed power *sales* amounting to $208 million, and received those proceeds in 2000 and early 2001. During the first quarter of 2001, we *sold* the majority of our remaining Northwest power for an additional $260 million." (copy attached as **Exh. 11**) (emphasis added).

15

classifications, practices, and regulations affecting such rates and charges, together with all contracts which in any manner affect or relate to such rates, charges, and services. 16 U.S.C. § 824(c) (1994). Because Kaiser sold power that was subject to FERC jurisdiction, Kaiser is a "public utility" and therefore required to file rates and schedules for power sales transactions -- which it did not do. *See* 16 U.S.C. § 824(e)-(f) (2004). The issue of whether Kaiser engaged in an unauthorized sale will not be decided in the Puget Sound Proceeding.

Further, Clark's Unreasonable Rate Claim may only be resolved after substantial and material consideration of Section 205(a) of the FPA, which requires that sales be at rates determined by FERC to be "just and reasonable." 16 U.S.C. § 824d(a) (1994). The FPA requires that FERC determine whether rates are just and reasonable in advance of the sale because

> [Section 205] must be read in light of the FPA's primary purpose of protecting the utility's customers. The wholesale purchasers of electricity cannot plan their activities unless they know the cost of what they are receiving, particularly if they are retailers, who must calculate their appropriate resale rates, but also if they are large-scale purchasers-users. Providing the necessary predictability is the whole purpose of the well established "filed rate" doctrine which forbids a regulated entity to charge rates for its services other than those properly filed with the appropriate federal regulatory authority.

*Electrical District No. 1 v FERC*, 774 F.2d 490, 493 (D.C. Cir. 1985) (*citing Arkansas Louisiana Gas Co. v. Hall*, 453 U.S. 571, 577, 101 S.Ct. 2925, 2930, 69 L. Ed. 2d 856 (1981)) (citations omitted)  *See also* Order No. 888-A, [1996-2000 Regs. Preambles] FERC Stats. & Regs. ¶ 31,048 at 30,306. ("Electricity is not just any commercial good or service. Rather, Congress in the Federal Power Act has charged [FERC] with ensuring that sales for resale or transmission of electricity in interstate commerce by public utilities take place under terms and conditions that are just and reasonable."). If FERC finds that prices are unjust and unreasonable, FERC "shall determine the just and reasonable rate . . . to be thereafter observed and in force."

16 U.S.C. § 824e(a). Clark submits that the congressional policy is clear and supports its claims under the FPA.

In summary, resolution of the Claims Objection requires substantial and material interpretation of the FPA, a law of the United States affecting interstate commerce. Therefore, this Court must withdraw the reference pursuant to 28 U.S.C. § 157(d).

C.    The District Court May Also Exercise Discretion and Withdraw the Reference.

In the alternative, this Court may permissively withdraw the reference. As noted earlier, Section 157(d) also provides that the "district court *may* withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for *cause shown.* " 28 U.S.C. § 157(d) (emphasis added). Section 157(d) does not define or provide examples of "cause shown," but the United States Court of Appeals for the Third Circuit has advised that the district court should consider the goals of:

> (1) promoting uniformity in bankruptcy administration;
> (2) reducing forum shopping and confusion;
> (3) fostering the economical use of the debtors' resources; and
> (4) expanding the bankruptcy process.

*See In re Pruitt*, 910 F.3d 1160, 1168 (3d Cir. 1990) (*citing Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 999 (5th Cir. 1985)). The District Court has subsequently included "a number of other factors, stressing that an initial determination should be whether the claim is a core bankruptcy proceeding or whether it is non-core." *In re NDEP Corp.*, 203 B.R. 905, 908 (D. Del. 1996) (withdrawing the reference because the movant's adversary claim for breach of contract and negligent misrepresentation was non-core and because judicial economy favored withdrawing the reference) (*citing In re Orion Pictures Corp.*, 4 F.3d 1095, 1101 (2d Cir.

17

1993)).[13]

But whether a proceeding is core or non-core does not end the inquiry. District courts have also considered whether the nature of the dispute concerns matters "included in the typical administration of a bankrupt estate." *In re Leedy Mortgage Co., Inc.*, 62 B.R. 303, 306 (E.D. Pa. 1986). In such cases, the reference may be withdrawn for core proceedings "but for the filing of the bankruptcy petition, [the proceeding] could have been brought . . . in the district court." *Id.* In *Leedy*, the District Court for the Eastern District of Pennsylvania withdrew the reference to the bankruptcy court for a core adversary proceeding brought by the bankruptcy trustee against the debtor's former accountants (who were also creditors of the bankruptcy estate). *Id.* at 305-6.

Further, the District Court may withdraw the reference for both core and non-core proceedings when doing so would be "essential to preserve a higher interest." *In re Pittsburgh Corning Corp.*, 277 B.R. 74, 78 (Bankr. W.D. Pa. 2002); *In re Pan Am Corp., et al.*, 163 B.R. 41, 43 (S.D.N.Y. 1993) (*quoting In re DeLorean Motor Co.*, 49 B.R. 900, 912 (Bankr. E.D. Mich. 1985)). In *Pittsburgh Corning*, the Bankruptcy Court for the Western District of Pennsylvania recommended that the district court withdraw the reference to the debtor's claims objection in order to determine the validity and value of a creditor's age discrimination claim that had not been adjudicated prior to the debtor filing for bankruptcy. *Id.* at 78. These decisions follow the general policy outlined by the Fifth Circuit, which has noted that

> The cumulative effect of the grant of original jurisdiction to the
> district court and its right to withdraw the reference in a
> bankruptcy case or related matter . . . leaves little doubt that the

---

[13] In connection with this Motion, Clark will file a motion with the Bankruptcy Court to determine whether the resolution of the Claims Objection is a core or non-core proceeding. Courts in this district have determined that for purposes of a motion to withdraw the reference of jurisdiction, the Bankruptcy Court should determine whether the contested issue is core or non-core. *See Mellon v Del. & Hudson Ry. Co. (In re Del & Hudson Ry. Co.)*, 122 B.R. 887, 892 (D. Del. 1991). Clark believes that, while allowance or disallowance of its proofs of claim is a core matter, the substantive determination of the underlying legal issues -- which require substantial and material consideration of the FPA -- does not fall within the Bankruptcy Court's jurisdiction over core matters.

> district court may exercise jurisdiction broadly, even over "core"
> bankruptcy matters.

*Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 998 (5th Cir. 1985).

As in *Leedy* and *Pittsburgh Corning*, the District Court should exercise discretion to withdraw the reference here because the substantive issues underlying Clark's claims are not normally considered in the administration of a bankruptcy proceeding. Indeed, Clark's claims against Kaiser (like those in *Leedy*) are in no way connected to bankruptcy law or Kaiser's role as a debtor in the bankruptcy proceedings. Moreover, the validity and value of Clark's claims against Kaiser require the interpretation of specific sections of the FPA. In *Leedy*, the District Court determined that the reference should be withdrawn in part because bankruptcy courts do not typically determine accounting malpractice claims. *Leedy*, 62 B.R. at 306. Similarly, bankruptcy courts do not consider violations of Sections 824 and 825 of the FPA. Furthermore, permissive withdrawal of the reference is appropriate because withdrawal will promote judicial efficiency. Resolution of the issues underlying Clark's claims will require substantial consideration of non-Bankruptcy Code federal statutory law. The District Court -- and, indeed even FERC -- are better positioned to take up these discrete, yet material issues and are accustomed to handling these issues outside the bankruptcy process. Also, by removing determination of these claims from the Bankruptcy Court's docket, it will be have more time to devote to resolution of those bankruptcy matters well within its purview. Withdrawal of the reference will not result in any duplication of effort for the Bankruptcy Court, the Debtor or Clark. Based on consideration of these factors, the District Court may withdraw the reference to the Bankruptcy Court for Clark's claims and Kaiser's objections thereto. Clark submits that the District Court should exercise its discretion and withdraw the reference.

## VI.
## CONCLUSION

For all of the foregoing reasons, Clark respectfully requests entry of an Order: (i) withdrawing the reference to the Bankruptcy Court of the Claims Objection; (ii) staying all proceedings in Kaiser's bankruptcy case related to its Claims Objection; and (iii) granting such other relief as is just and proper.

Dated: Wilmington, Delaware
October 24, 2005

JASPAN SCHLESINGER & HOFFMAN LLP


/s/ Frederick B. Rosner
Frederick B. Rosner (3995)
913 North Market Street 12th Floor
Wilmington, DE 19801
Tel: (302) 351-8000
Fax: (302) 351-8010

BRACEWELL & GUILIANI LLP

William A. Wood, III, Esq.
(Texas Bar ID 21916050)
*Pro Hac Vice Application pending*
711 Louisiana Street, Suite 2300
Houston, Texas 77002-2781
Tel: (713) 223-2300
Fax: (713) 221-1212

George H. Williams, Esq.
2000 K Street, N.W., Suite 500
Washington, DC 20006
Phone: (202) 828-5800
Fax: (202) 223-1225

and

THACHER PROFFITT & WOOD LLP

Christopher F. Graham, Esq.
Louis A. Curcio, Esq.
Two World Financial Center
New York, New York 10281
Tel: (212) 912-7400
Fax: (212) 912-7751

*Counsel to Public Utility District No. 1 of
Clark County d/b/a Clark Public Utilities*

SUMMARY OF EXHIBITS

| Exh. | Name |
|------|------|
| 1 | Motion for an Order Disallowing Claims Filed by Clark Public Utilities, filed on October 10, 2005 (Docket No. 7480) |
| 2 | February 2, 2001 Remarketing Agreement |
| 3 | BPA/Kaiser PSA Agreement |
| 4 | Clark Confirmation Agreement |
| 5 | Kaiser Confirmation Agreement |
| 6 | Unauthorized Sale Claim |
| 7 | *Comments of Kaiser Aluminum & Chemical Corp.*, submitted in FERC Docket No. EL01-10 (Oct. 31, 2001) |
| 8 | *Prepared Answering Testimony of Joseph P. Hoerner for Kaiser*, submitted in FERC Docket No. EL01-10 (Mar. 20, 2003) |
| 9 | Unreasonable Rate Claim |
| 10 | Kaiser's Statement of Consolidated Income issued on April 12, 2002 |
| 11 | Kaiser's 2000 annual report |